# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Vladimir Kushnir and
V-4 Management LLC

## DEFENDANTS

Aviva Life & Annuity Company

**(b)** County of Residence of First Listed Plaintiff    Montomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Foehl & Eyre, P.C., 27 E. Front St., Media, PA 19063,
610-566-5926

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Med. Malpractice | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 365 Personal Injury - |    of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability |    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |    Property Damage |    Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury | |    & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment |    Sentence | ☐ 791 Empl. Ret. Inc. |    or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** |    Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations | ☐ 530 General | |    26 USC 7609 |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |    Under Equal Access |
| |    Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | |    to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |    Alien Detainee | | ☐ 950 Constitutionality of |
| |    Other | | ☐ 465 Other Immigration | |    State Statutes |
| | ☐ 440 Other Civil Rights | |    Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. 2201, 73 P.S. 201-1 et seq., 42 Pa.C.S.A. 8371

Brief description of cause:
Declaratory Relief, Violation of PA UTPCPL, Bad faith, Breach of contract, Fraud, Recision

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** over $150,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE

12/16/2011

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Vladimir Kushnir, individually and as Trustee of the V-4 Management LLC & V-4 Management LLC | : | CIVIL ACTION |
| v. | : | |
| Aviva Life & Annuity Company | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X)


| December 16, 2011 | Robert B. Eyre, Esquire | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-566-5926 x 115 | 610-892-9307 | rob@foehllaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __334 Carson Terrace, Huntingdon Valley, PA  19006__

Address of Defendant: __7700 Mills Civic Parkway, West Des Moines, Iowa  50266-3862__

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, __Robert B. Eyre, Esquire__, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: __December 16, 2011__   _____   __#41990__
                                        Attorney-at-Law                    Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __December 16, 2011__   _____   __#41990__
                                        Attorney-at-Law                    Attorney I.D.#

CIV. 609 (6/08)

## UNITED STATED DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VLADIMIR KUSHNIR, individually and as Trustee of the V-4 Management LLC Defined Benefit Pension Plan & Trust 334 Carson Terrace Huntingdon Valley, PA 19006 | : : : : : : : |
| and | : : CIVIL ACTION |
| V-4 Management, LLC, 337 Basswood Circle Langhorne, PA 19053, | : : CASE NO. : : |
| Plaintiffs | : JURY TRIAL DEMANDED : |
| v. | : : |
| AVIVA LIFE & ANNUITY COMPANY 7700 Mills Civic Parkway West Des Moines, Iowa 50266-3862 Defendant | : COMPLAINT : : : : |

Plaintiffs, Vladimir Kushnir and V-4 Management, LLC, by and through their undersigned counsel, Foehl & Eyre, P.C., hereby complain of Defendant, Aviva Life & Annuity Company, as follows:

### PARTIES

1.     Plaintiff Vladimir Kushnir ("Kushnir") is an individual and citizen of the Commonwealth of Pennsylvania, residing at 334 Carson Terrace, Huntingdon Valley, PA 19006.

2.     Kushnir asserts claims herein in his individual capacity and in his capacity as Trustee of the V-4 Management, LLC Defined Benefit Pension Plan and Trust (the "V-4 Plan"), described in more detail below.

3.     Plaintiff V-4 Management, LLC is a limited liability company organized and certificated in the Commonwealth of Pennsylvania with a principal place of business at 337 Basswood Circle, Langhorne, PA 19053.

4.     Defendant Aviva Life and Annuity Company ("Aviva") is an Iowa insurance company, with a principal place of business at 7700 Mills Civic Parkway, West Des Moines, Iowa 50266-3862.

5.     Aviva is successor by merger to Indianapolis Life Insurance Company ("Indianapolis Life"), effective September 30, 1998, and successor insurer on the whole life insurance policy at issue herein (the "Kushnir Policy," described below), initially issued by Indianapolis Life.  References hereinafter to "Defendant" shall refer to Aviva and its predecessor, Indianapolis Life.

6.     At all times relevant hereto, Defendant has been engaged in the business of selling life insurance products and services to individual consumers, including in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

7.     This is an action for declaratory relief pursuant to 28 U.S.C.A. §2201 to enforce a whole life insurance policy (the "Kushnir Policy," described below); and, in addition or in the alternative, to obtain damages and related relief against Defendant for breach of contract, for violation of Pennsylvania's insurer bad faith law (42 Pa.C.S.A. § 8371), for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection

2

Law (73 P.S. § 201-1 *et seq*) ("UTPCPL"), and/or for common law fraud in the marketing, sale and administration of the Kushnir Policy by Defendant.

8.      Not asserted herein, and expressly reserved, are distinct claims that Plaintiffs may assert against Defendant and/or other parties named or to be named in an action commenced by Writ of Summons filed on June 24, 2011 in the Philadelphia County Court of Common Pleas, at June Term 2011, No. 2413 (the "Writ of Summons Action"), for, *inter alia*, damages incurred as a result of the illegal and abusive character of the "412i plan" funded by the Kushnir Policy.

9.      This court has subject matter jurisdiction in this matter pursuant to 28 U.S.C.A. §1332, as an action between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

10.     Defendant is subject to personal jurisdiction in this court in that, at all times relevant hereto, Defendant regularly conducted business in the Commonwealth of Pennsylvania, including within the Eastern District of Pennsylvania, maintaining substantial and continuous contacts within this Commonwealth and District and engaging in specific acts and omissions giving rise to the claims asserted herein.

11.     Venue is proper in this court pursuant to 28 U.S.C. §1391(a)(1) and (2).

## FACTUAL BACKGROUND

### 1.    Marketing and Sale of the Kushnir Policy by Defendant and its Agents.

12.     For some time before and after 2002, Defendant, as Indianapolis Life, marketed insurance products used to fund so-called "412i plans."

3

13.     412i plans are insurance-funded defined benefit pension plans, named for a section (28 U.S.C. §412i) of the Internal Revenue Code ("IRC") that authorizes and regulates the Federal income tax benefits of such plans.

14.     Among the 412i products marketed by Defendant was a whole life insurance policy called a Vista PenPro ("PenPro") policy.

15.     The "Kushnir Policy" at issue herein is a PenPro policy, identified as Indianapolis Life Policy No. 000100098974, issued by Defendant effective February 23, 2003, with a death benefit of $4,614,517.00, naming Kushnir as the insured and the V-4 Plan as the initial owner.

16.     The Kushnir Policy was marketed and sold to Kushnir as part of an investment and tax planning strategy that would utilize the Policy to fund a 412i plan established for the benefit of Kushnir contemporaneously with the issuance of the Kushnir Policy.

17.     The creation of a 412i plan and use of Defendant's PenPro product were recommended to Kushnir by investment, tax and pension consultants employed by or otherwise affiliated with a group of companies known as "Pension Professionals."

18.     These consultants included at least five authorized sales agents of Defendant: a principal of Pension Professionals named Dennis Cunning ("D.Cunning"), Jeffery Cunning, Roger K. Fuller ("Fuller"), Todd Nelson ("Nelson"), and Scott Ridge ("Ridge").

19.     These consultants also included two other individuals, T.J. Agresti ("Agresti") and David Strong ("Strong"), who (on information and belief) were also

4

agents and/or collaborating with Pension Professionals and Defendant in the promotion of 412i plans and associated insurance products.

20.     On information and belief, D.Cunning and his companies, Pension Professionals, had a close working relationship with Defendant and had collaborated with Defendant in the design and promotion of insurance products like the PenPro policy to fund 412i plans.

21.     On information and belief D.Cunning, Fuller, Ridge, J.Cunning and Nelson received commissions from Defendant for the sale of the Kushnir Policy—a fact not disclosed or known to Plaintiffs until July 26, 2010, when a complete copy of the Policy and Policy Application was produced by Aviva.

22.     Defendant knew of the efforts of Pension Professionals and its associates, D.Cunning, Fuller, Agresti, J.Cunning, Nelson, Strong and Ridge, to promote 412i plans and intended, supported and encouraged such efforts in order to market its own insurance products, like the PenPro product, to consumers like Kushnir.

23.     At all times relevant hereto, Pension Professionals and its associates, D.Cunning, Fuller, Agresti, J.Cunning, Nelson, Strong and Ridge (referred to collectively herein as "Defendant's Agents") were authorized agents of Defendant acting within the scope of their actual and apparent authority as such.

24.     Certain of Defendant's Agents, on information and belief, Agresti, Nelson, Strong and/or Fuller, came to Philadelphia twice in 2002 to promote the 412i plan concept and solicit Kushnir's purchase of insurance—once to meet with Kushnir's accountants and second time to meet with Kushnir.

25.     In these meetings, the Defendant's Agents provided Kushnir with a written summary of the recommended 412i investment strategy (the "412i Plan Summary"), a true and correct copy of which is attached hereto as Exhibit "1."

26.     On information and belief, the 412i Plan Summary was prepared by D. Cunning and Pension Professionals and intended by them for use by the Defendant's Agents to promote the 412i investment strategy and sale of insurance for which all or some of them would earn commissions.

27.     D. Cunning and Pension Professionals, assisted by Fuller and Ridge, would eventually take the lead in implementing the 412i investment strategy for Kushnir, including (without limitation) recommending and/or assisting Kushnir in the following:

        a.  Applying for and securing the issuance of the Kushnir Policy by Defendant, to be owned by the V-4 Plan pending the exercise of certain purchase and conversion options by Kushnir;

        b.  Establishing the V-4 Plan, for the purpose of securing the benefits of a defined benefit pension plan under IRC §412i for Kushnir;

        c.  Administering the V-4 Plan and assuring compliance with applicable legal and tax filings for the Plan and Kushnir; and

        d.  Advising Kushnir concerning his rights and obligations under the V-4 Plan and Kushnir Policy, including concerning the payment of premiums and the exercise of his rights to purchase and/or convert the Kushnir Policy to maximize his personal tax and investment benefits.

28.     In connection with the application for and issuance of the Kushnir Policy, Defendant, through Pension Professionals and other of Defendant's Agents, provided Kushnir with certain Policy Illustrations, including two dated October 16, 2002 and February 6, 2003, to illustrate the Kushnir Policy to Kushnir.  Copies of the October 16, 2002 and February 6, 2003 Policy Illustrations are attached hereto as Exhibits "2" and "3," respectively.

29.     In connection with his application for the Kushnir Policy, and as a condition of issuance of same, Defendant required Kushnir to sign and return written acknowledgment of the October 16, 2002 and February 6, 2003 Policy Illustrations.

30.     Consistent with the 412i Plan Summary (Exhibit "1" hereto), the Policy Illustrations reflected the intention and expectation of both Kushnir and Defendant that Kushnir would make five out-of-pocket premium payments of $190,118.10 each, one in each of the first five years of the Policy, with the annual premium in at least each of the next six years (that is, in years 6 through 12 of the Policy) being paid from the Policy's accumulated cash value or loans against same, in either case without further out-of-pocket premium payments required so long as cash values were sufficient for such purposes.

31.     In all other written and oral explanations of the Kushnir Policy to Plaintiffs, both before and after the issuance and delivery of the Policy, Defendant and its agents consistently represented that the Policy would require only five out-of-pocket premium payments of $190,118.10 each in years one through five of the Policy, with the annual premiums in at least each of the next six years (that is, in years 6 through 12 of the Policy) being paid from the Policy's accumulated cash value or loans against same.

7

32.     The Policy Illustrations also reflected what is sometimes referred to as "springing value" feature of policies like the Kushnir Policy used to fund 412i plans of the sort designed and marketed by Defendant's Agents.

33.     This "springing value" feature was the result of the application of charges referred to as "surrender charges" to the cash surrender value, which "surrender charges" would remain high (at $641,417.86) during the first five years of the Kushnir Policy, but decline sharply thereafter (by $128,283.57 annually) until eliminated in year ten of the Policy, resulting in a correspondingly sharp increase of the Policy's cash surrender value in and after year six.

34.     This "springing value" feature was the reason behind the timing of the "buy-out" and "exchange" options reflected in the 412i Plan Summary (Exhibit "1" hereto), referring to the expected purchase of the Policy out of the V-4 Plan by Kushnir in year six of the Policy and exchange or conversion to another insurance product in year eight.

35.     In reliance on the foregoing, and other representations by Defendant and its agents, Kushnir proceeded to apply for and purchase the Kushnir Policy as described further below.

## 2.     Irregularities in the Issuance of the Kushnir Policy.

36.     Attached hereto as Exhibit "4" is a copy of the Kushnir Policy as delivered to Kushnir on or after March 11, 2003, including the Policy Declaration and Provisions, the Policy Application dated November 7, 2002, and two Amendments to the Policy Application dated March 5 and March 7, 2003, respectively.

8

37.    As described below, the completion of the Policy Application and issuance of the Kushnir Policy were fraught with irregularity, the extent of which was not known to Plaintiffs until on or after July 26, 2010, when Defendant produced a more complete copy to Plaintiffs' counsel.

38.    For example, the Defendant's Agents procured Kushnir's signature to a blank Policy Application on November 7, 2002, and much of the information on the Policy Application form included in Exhibit "4" was filled in by others, presumably Ridge or Fuller, after Kushnir signed the form, and not returned to Kushnir until on or after March 11, 2003, when he received his bound copy of the Policy and Application.

39.    While the Policy Application suggests it was signed in the presence of agent Fuller in Arizona, Kushnir has never been to Arizona and signed the blank Policy Application in Philadelphia, Pennsylvania.

40.    The Policy Application form was apparently approved for use in connection with a Policy to be issued in the State of Arizona, while the Policy Illustrations refer to Pennsylvania as the state of issue and the Policy was, in fact, sold and delivered to Kushnir in Pennsylvania.

41.    The bound copy of the Kushnir Policy delivered to Kushnir on or after March 11, 2003 did not include page 5 of the Policy Application—the "Agent's Report"—which was never seen by Plaintiffs until production of the more complete file by Aviva on July 26, 2010.  A copy of page 5 of the Policy Application, found in the Aviva file (labeled Aviva 277)[1] is attached hereto as Exhibit "5" and discloses (for the first time to Plaintiffs) that commissions were paid to D.Cunning, and Fuller.

---

[1] The labels, "Aviva 1," etc. were added by Plaintiff's counsel to identify the documents as produced by Aviva on July 26, 2010.

9

42.    The bound copy of the Kushnir Policy returned to Plaintiffs on or after March 11, 2003 was also missing pages FOUR through FOURTEEN of the Policy Provisions—containing material provisions concerning premium payment, lapse and reinstatement (§4), conversion rights (§5), policy values and loans (§6) and transfer of ownership (§7). Attached hereto as Exhibit "6" are copies of the missing pages of the Policy Provisions (labeled Aviva 10 – 19) from the file produced by Aviva on July 26, 2010.

### 3.    Relevant Terms and Conditions of the Kushnir Policy.

43.    As issued, the Kushnir Policy provided for the payment of annual premiums in the amount of $190,118.10, with the first payment due on or before the delivery of the Policy and subsequent payments due on each subsequent anniversary of the issue date of February 3, 2003.

44.    Consistent with the representations made by Defendant and its agents in connection with the marketing and sale of the Kushnir Policy, the Policy Provisions provided at least two options to out-of-pocket premium payments on the Policy:

> a.   The partial surrender of cash values to pay such premiums under section 6.6 of the Policy, and
>
> b.   Premium loans against cash values under sections 4.3 and/or 6.15 of the Policy.

45.    In accordance with section 6.6 of the Kushnir Policy, Kushnir provided Defendant with written notice of the Plaintiffs' intention to exercise the option of partial surrender of the Policy's accumulated cash value in and after year six of the Policy by

signing and returning his acknowledgment of the written Policy Illustrations confirming such intention.

46.     Kushnir also elected the automatic premium loan option in accordance with section 4.3 of the Kushnir Policy in that the Policy Application form submitted for the Policy deemed such option exercised unless declined by checking "NO" in section 7 of the Policy Application, and Kushnir did not so decline.

47.     Also, and consistent with the representations made by Defendant and its agents in connection with the marketing and sale of the Kushnir Policy, section 2 of the Policy, as issued, imposed surrender charges in the amount of $641,417.86 during years 1 through 5 of the Policy, declining thereafter until eliminated in year 10—thus incorporating the so-called "springing value" feature into the Policy.

### 4.     Dispute over Terms and Status of the Kushnir Policy.

48.     Between February 3, 2003 and February 12, 2007 V-4 timely paid, on behalf of Kushnir, the first five annual premiums on the Kushnir Policy, in the amount of $190,118.10 each, for a total out-of-pocket premium investment of $950,590.50 in the Policy.

49.     In addition, Plaintiffs have at all times been and are now in compliance with all other material terms and conditions of the Kushnir Policy, entitling them to the full value and benefits of the Policy.

50.     Despite the foregoing, Defendant claims to have placed the Kushnir Policy on "reduced paid up" (or "RPU") status, as of March 27, 2008, for alleged failure of Kushnir to pay the annual premium due on February 3, 2008 (the "Alleged Default").

51.     The effect of the RPU status was to reduce the death benefit by some $3.8 million, deprive Kushnir and V-4 of the benefit of the automatic reduction of $641,318 in surrender charges in years six through ten of the Policy, thus depriving the "springing value" feature, and dramatically reducing the cash surrender value and other benefits under the Policy as of February 3, 2008.

52.     Defendant further claims to have provided various notices relating to the Alleged Default in and after February 2008 (the "Alleged Default Notices").

53.     As described below, Plaintiffs were unaware of the Alleged Default and its effect on the benefits under the Kushnir Policy until January 2010, and were unable, despite repeated requests to Defendant, to obtain basic information concerning the Alleged Default and Alleged Default Notices until October 29, 2010.

54.     In September 2009, Defendant's Agents, D.Cunning and Pension Professionals, recommended Plaintiff Kushnir exercise the "buy-out" option under V-4 Plan and Kushnir Policy.

55.     In January 2010, in the course of obtaining information to value the Kushnir Policy for exercise of the "buy-out" option, Plaintiff's valuation expert was advised that the option could not be exercised because the Policy was on RPU status.

56.     Defendant's Agents, D.Cunning and Pension Professionals, immediately assured Plaintiffs the RPU status was an error and that they would obtain prompt reinstatement of full Policy benefits.

57.     For the next six months, Plaintiffs relied on the advice and counsel of Defendant and its agents, D.Cunning and Pension Professionals, to obtain reinstatement of full Policy benefits.

58.     On or about April 29, 2010, on the advice and recommendation of Pension Professionals, Kushnir completed the form attached hereto as Exhibit "7" (the "Premium Authorization Form") re-stating the intention already expressed in the Policy Application and Policy Illustrations to have policy values applied to pay premiums.

59.     On information and belief, the Premium Authorization Form was submitted to Defendant by Pension Professionals with a request for retroactive application of policy values to premiums, but this request was denied.

60.     On or about May 5, 2010, Defendant and its agents, Pension Professionals, represented that Defendant would reinstate the Policy upon completion of a new medical examination by Defendant and, in reliance on this representation and the advice of Pension Professionals, Kushnir completed and submitted to Defendant an application for reinstatement of the Policy (the "Reinstatement Application," a copy of which is attached hereto as Exhibit "8") and cooperated in a medical examination by Defendant's appointed examiner, on May 17, 2010.

61.     By letter dated June 8, 2010 from Defendant's Underwriting Department, Plaintiffs were advised that the Reinstatement Application was denied "due to [Kushnir's] lab results," without further explanation.

62.     Plaintiffs' repeated, subsequent requests for an explanation of why the lab results justified denial of the Reinstatement Application have been ignored by Defendant.

63.     By letter to Defendant dated July 2, 2010 (the "July 2, 2010 Letter," a copy of which is attached hereto as Exhibit "9"), Defendant's own agent, Pension Professionals, requested reinstatement of the Kushnir Policy, specifically emphasizing

13

the intention reflected, *inter alia*, in Defendant's own Policy Illustrations, that policy values were to be applied to premium payments after year 5.

64.     The July 2, 2010 Letter also noted that neither Kushnir, Pension Professionals or "the agent" for the Policy (on information and belief, a reference to Ridge) had received notification of premiums due, RPU status or other correspondence relating to the Alleged Default, and requested copies of any such communications from Defendant.

65.     On information and belief, no response was ever received to the July 2, 2010 Letter, nor did Defendant provide any documentation of any notices or correspondence regarding the Alleged Default as requested by Pension Professionals.

66.     By letter dated July 14, 2010 from Plaintiffs' counsel, Foehl & Eyre, P.C. (the "July 14, 2010 Demand Letter," a copy of which is attached hereto as Exhibit "10"), Plaintiffs disputed the Alleged Default and demanded reinstatement of the Kushnir Policy.

67.     The requests in the July 14, 2010 Demand Letter were repeated in letters from Plaintiffs' counsel dated July 20 and July 26, 2010, before a response was received by letter from Defendants' in-house counsel, Christopher McDonald, Esquire, dated July 26, 2010 (the "July 26, 2010 Response Letter," a copy of which, without enclosures, is attached hereto as Exhibit "11").

68.     Defendant's July 26, 2010 Response Letter refused to reinstate the Kushnir Policy, contending that Plaintiffs failed to pay the sixth annual premium due on February 23, 2008.

69.     Defendant's July 26, 2010 Response Letter also contended that Defendant had provided proper notice of the premium due and a second notice prior to the end of the grace period under the Policy (the "Alleged Default Notices"), purporting to enclose the "complete policy file...", including the Alleged Default Notices, with the letter.

70.     Contrary to Defendant's July 26, 2010 Response Letter, however, none of the Alleged Default Notices were included in the "complete policy file" enclosed with the letter and neither Plaintiff, nor (on information and belief), servicing agent Ridge, had received such notices.

71.     In any event, contrary to Defendant's July 26, 2010 Response Letter and as alleged above, Plaintiffs did not fail to pay the sixth annual premium payment due on February 23, 2008 because: (i) Kushnir had in fact elected to have policy values applied to the payment of that and subsequent premiums, by electing to surrender cash values in accordance with section 6.6 of the Kushnir Policy and (ii) Kushnir had also elected the option of automatic premium loans in accordance with sections 4.3 and 6.6 of the Policy; and (iii) and there was more than sufficient value in the Policy for those purposes as of and after February 3, 2008.

72.     In September of 2010, after repeated requests for further explanation (including the Alleged Default Notices), Plaintiffs were advised the matter had been referred to Defendant's outside counsel, John T. Clendenin, Esquire ("Clendenin"), for response.

73.     By letter dated October 28, 2010 to Clendenin (the "October 28, 2010 Demand," a copy of which is attached hereto (without enclosures) as Exhibit "12"),

Plaintiffs' counsel repeated the demand for reinstatement, specifically noting (on page 1)

that, in addition to the lack of evidence of the Alleged Default Notices,

> [T]he Policy could not lapse for failure to pay a premium as
> it was always intended that the Net Cash Value of the
> Policy be applied to premiums after year five, and there
> was more than sufficient value to cover all premiums to
> date. The Policy was designed and marketed by
> Indianapolis Life and its agents on this premise, as
> indicated by the enclosed Policy Illustration prepared for
> Mr. Kushnir in connection with his application.

74.     Defendant responded, by email from Clendenin dated October 29, 2010

(the "October 29, 2010 Response," a copy of which is attached hereto (with enclosures)

as Exhibit "13."), again claiming the Policy had lapsed due to failure to pay the sixth

annual premium and enclosing, for the first time to Plaintiffs, the Alleged Default

Notices.

75.     Plaintiffs deny receipt of the Alleged Default Notices prior to receipt of

the October 29, 2010 Response and, in any event, deny their relevance to any Alleged

Default.

76.     To the contrary, as set forth above, Plaintiffs did not fail to pay the sixth

annual premium payment due on February 23, 2008 because: (i) Kushnir had in fact

elected to have policy values applied to the payment of that and subsequent premiums, by

electing to surrender cash values in accordance with section 6.6 of the Kushnir Policy and

(ii) Kushnir had also elected the option of automatic premium loans in accordance with

sections 4.3 and 6.6 of the Policy; and (iii) and there was more than sufficient value in the

Policy for those purposes as of and after February 3, 2008.

77.     Indeed, in addition to the representations of Defendant and its agents in

connection with the marketing and sale of the Kushnir Policy, Defendant—in an In-Force

Policy Illustration issued on December 31, 2007—expressly represented, affirmed and acknowledged its own agreement and intention to apply policy values to pay the premium due on February 3, 2008 and thereafter through year 12 of the Policy, and that policy values were sufficient for this purpose. A true and correct copy of this "In-Force Policy Illustration" is attached hereto as Exhibit "14."

## CAUSES OF ACTION

### COUNT I
### Declaratory Relief

78.     Plaintiffs hereby incorporate paragraphs 1 through 77 as though same were fully set forth herein at length.

79.     This Count I sets forth a claim by Plaintiff Kushnir, individually and as Trustee of the V-4 Plan, for declaratory judgment pursuant to Title 28, United States Code, § 2201, for the purpose of determining a question of actual controversy between the parties.

80.     As described above, Defendant issued the Kushnir Policy, effective February 3, 2003, to the V-4 Plan and Kushnir, promising to pay to Kushnir's designated beneficiaries the sum of $4,614,517 upon his death, and to provide other rights and benefits to the V-4 Plan and Kushnir in the meantime.

81.     As represented and sold to Kushnir, the Kushnir Policy required the cash outlay payment of $190,118.10 for each of the first five years, after which time the value of the policy was to be used to pay additional premiums.

82.     The Kushnir Policy provided for the application of policy values to annual premiums by electing to surrender policy values to pay premiums in accordance with

17

section 6.6 of the Policy and/or by electing to take loans against cash values under sections 4.3 and/or 6.15 of the Policy to premiums.

83.    Kushnir properly elected to surrender policy values to pay premiums in and after year 6 in accordance with section 6.6 of the Kushnir Policy, including (*inter alia*) by his written acknowledgement of the intention to do so in the Policy Illustrations, and otherwise in connection with his Policy Application.

84.    Kushnir also properly elected in connection with the Policy Application, the option of automatic premium loans to pay in accordance with section 4.3 of the Kushnir Policy.

85.    V-4, on behalf of Kushnir, paid the required annual premiums by out of pocket payments of $190,118.10 in each of the first five years of the Kushnir Policy.

86.    As a result of the premium payments made in each of the first five years, and the actual earnings under the Kushnir Policy, policy values were more than sufficient on and after February 3, 2008 to fund premium payments under either section 6.6, 4.3 and/or 6.15.

87.    Based on the foregoing, Plaintiffs were at all times current on payment of premiums under the Kushnir Policy.

88.    Defendant's failure and refusal to apply policy values to the payment of premiums in and after year six of the Kushnir Policy was wrongful and in breach of the terms of the Kushnir Policy.

89.    Defendant's declaration of Alleged Default and placement of the Policy of RPU status was wrongful and in breach of the terms of the Kushnir Policy.

90.     In the event it is determined to the contrary that the Kushnir Policy required an out of pocket premium payment in year six and could be deemed to have lapsed for failure to pay same, is it alleged in the alternative that:

      a.   Defendant nonetheless failed to provide proper notice of premium payments due in or after year six of the Policy, notice of failure to make such payments, notice of rights to apply policy values to such premiums and/or notice of rights to reinstate the Policy by late premium payments;

      b.   Defendant, by its conduct and that of its agents, waived and/or should be estopped from asserting the Alleged Default; and/or

      c.   Defendant's assertion of the Alleged Default, placement of the Kushnir Policy on RPU status and failure to reinstate the Policy are unconscionable, contrary to public policy and in breach of the implied covenant of good faith and fair dealing.

91.     As a direct and proximate result of Defendant's above-described wrongful conduct and breaches of the Kushnir Policy, Plaintiffs have suffered or will suffer loss in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor: (i) declaring the Defendant's assertion of lapse and reduction of benefits under the Kushnir Policy on account of the Alleged Default to be wrongful and the Policy to be in full force and effect, retroactive to February 3, 2008; (ii) allowing Kushnir to exercise any and all

19

rights and options under the Policy, including any buy-out and exchange options, without limitation or adverse consequence due to the delay of exercise since February 3, 2008; (iii) awarding Plaintiffs counsel fees and costs of the suit; and/or (iv) granting such other relief as this Court deems equitable and just.

## COUNT II
### Damages for Breach of Contract

92.     Plaintiffs hereby incorporate paragraphs 1 through 91 as though same were fully set forth herein at length.

93.     This Count II sets forth claims by Plaintiff Kushnir, individually and as Trustee of the V-4 Plan, for damages caused by Defendant's breach of the Kushnir Policy.

94.     Defendant breached the Kushnir Policy as set forth above, including by:

        a.   Failing to apply policy values to the premiums due in and after year six of the Policy;

        b.   Declaring the Policy lapsed and on RPU status on the basis of the Alleged Default;

        c.   Failing to provide proper notice of premiums due, lapse and right to make late payment of the premiums due in and after year six;

        d.   Misleading and misrepresenting the terms and status of the Kushnir Policy to Kushnir;

        e.   Failing and refusing to reinstate the Policy despite repeated and justified demands; and

        f.   Breaching the implied covenant of good faith and fair dealing under the Policy.

20

95.     As a direct and proximate result of the foregoing breaches, Plaintiffs have suffered damages in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant (i) for damages in excess of $75,000, together with costs of this suit and/or (ii) such other relief as this Court deems equitable and just.

## COUNT III
### Bad Faith (42 Pa.C.S.A. § 8371)

96.     Plaintiffs hereby incorporate paragraphs 1 through 95 as though same were fully set forth herein at length.

97.     This Count III sets forth claims by Plaintiff Kushnir, individually and as Trustee of the V-4 Plan, pursuant to 42 Pa.C.S.A. §8371 ("§8731"), on account of Defendant's bad faith denial, delay and refusal to reinstate benefits under the Kushnir Policy.

98.     As set forth above, Defendant has wrongfully reduced and denied benefits due Plaintiffs under the Kushnir Policy, benefits.

99.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiffs have suffered damages in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

100.    Defendant's actions were intentional, reckless and/or so unreasonable so as to constitute actionable bad faith under §8371 entitling Plaintiffs to interest on its claims, damages, punitive damages, attorney fees and costs of suit.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant for damages, including interest, punitive damages, attorneys fees and costs under 42 Pa.C.S.A. §8371, and/or such other relief as this Court deems equitable and just

## COUNT IV
### Violation of UPTCPL

101.    Plaintiffs hereby incorporate paragraphs 1 through 100 as though same were fully set forth herein at length.

102.    This Count IV sets forth additional and alternative claims by Plaintiff Kushnir, individually and in his capacity as Trustee of the V-4 Plan, pursuant to 73 P.S. § 201-1 *et seq*) ("UTPCPL").

103.    Kushnir purchased the Kushnir Policy for personal, family and household purposes, to obtain personal investment, tax, insurance and compensation benefits for himself and his household.

104.    As set forth above, Defendant has engaged in unfair and deceptive trade practices in its administration and enforcement of the Kushnir Policy, in violation of UTPCPL §201-2 (4) (vii), (xiv) and (xxi), including by:

> a.  intentionally or recklessly misleading Kushnir and misrepresenting that the Policy was lapsed and on RPU status on account of the Alleged Default while knowing and/or consciously disregarding the true intention of the Policy as sold and issued;

> b.  intentionally and/or recklessly failing to explain or disclose material facts and information concerning the Policy, including by failing to disclose all the terms and conditions of the Policy;

    c.   intentionally and/or recklessly withholding and delaying material information concerning the Alleged Default and notices relating to same; and

    d.   engaging in other fraudulent or deceptive conduct in its communications with Plaintiffs concerning the Alleged Default and Kushnir's rights under the Policy for the purpose of discouraging, delaying and/or preventing Kushnir's assertion and realization of those rights.

105.    As a direct and proximate result of the unfair and deceptive trade practices described in the foregoing paragraph, Kushnir has suffered or will suffer actual loss in the form of delay and/or permanent loss of rights and benefits under the Policy, such as the buy-out and exchange options, and attorneys fees and costs.

106.    In the alternative, in the event the Defendant's interpretation of the Kushnir Policy terms is deemed proper and the Policy is deemed to have lapsed, then Defendant has engaged in unfair and deceptive trade practices in the marketing and sale of the Policy to Kushnir, in violation of UTPCPL §201-2 (4) (ii), (iii), (v), (vii), (ix), (xiv) and (xxi), including by:

    a.   intentionally or recklessly misleading Kushnir and misrepresenting the terms of the Policy concerning payment of premiums;

    b.   intentionally or recklessly failing to disclose or adequately explain the Policy provisions concerning payment of premiums and the exercise of rights to apply policy values to premiums;

    c.  intentionally or recklessly failing to disclose or adequately explain Defendant's affiliation with the Defendant's Agents and their interests in commissions; and/or

    d.  other fraudulent or deceptive conduct in the marketing and sale of the Kushnir Policy, described above, that was likely to, and did in fact, create confusion and misunderstanding by Kushnir concerning his rights and benefits under the Policy.

107.    As a direct and proximate result of the unfair and deceptive trade practices described in the foregoing paragraph, Plaintiffs will have suffered damages in excess of $75,000, exclusive of interest and costs, including (without limitation) loss in the amount of the greater of (i) the difference between the value of the Kushnir Policy with full rights and benefits and its value on RPU status, or (ii) the amount of the premiums paid in reliance on the foregoing unfair and deceptive trade practices.

108.    Pursuant to UTPCPL §201-9.2, Plaintiff requests an award of treble damages and attorneys fees as costs.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant for damages in excess of $75,000, treble damages, attorney fees and costs; and/or such other relief as this Court deems equitable and just..

<div align="center">

**COUNT V**
**Common Law Fraud**

</div>

109.    Plaintiffs hereby incorporate paragraphs 1 through 108 as though same were fully set forth herein at length.

110.    This Count V sets forth claims by Plaintiffs for common law fraud based on Defendant's misrepresentation of the Kushnir Policy, directly and through

<div align="center">24</div>

Defendant's Agents, which misrepresentations were relied upon by Plaintiffs to their detriment.

111.   The claims set forth in this Count V are alleged in the alternative to the claims in the foregoing Counts I through III and in the event that the Defendant's interpretation of the Kushnir Policy to have lapsed for failure to pay the premium on February 3, 2008, is sustained and the Kushnir Policy deemed to have been properly placed on RPU status as of that date.

112.   In such event, it is alleged that Defendant, directly and through Defendant's Agents, has engaged in fraud and deceit in the sale, administration, and enforcement of the Kushnir Policy including by:

    a.   intentionally or recklessly misleading Plaintiffs and misrepresenting the terms of the Policy concerning payment of premiums;

    b.   intentionally or recklessly failing to disclose or adequately explain the Policy provisions concerning payment of premiums and the exercise of rights to apply policy values to premiums

    c.   intentionally or recklessly failing to disclose or adequately explain Defendant's affiliation with the Defendant's Agents and their interests in commissions;

    d.   Intentionally misrepresenting the policy to Plaintiff to entice him to purchase the life insurance policy generating high commissions to the agents and eventually a windfall to the insurance company

when the Policy is put on RPU status after Kushnir has already contributed $950,590.50 in annual premiums.

e.  intentionally and/or recklessly withholding and delaying disclosure of material information concerning the Alleged Default and notices relating to same; and

f.  engaging in other fraudulent or deceptive conduct in its communications with Plaintiffs concerning the Alleged Default and Plaintiffs rights under the Policy for the purpose of discouraging, delaying and/or preventing Plaintiffs' assertion and realization of those rights.

g.  Engaging in other fraudulent or deceptive conduct in written communication to Plaintiffs just prior to the alleged lapse in sending an In-Force Illustration dated December 31, 2007 showing the values in the policy if the premiums are paid out of the policy values as expected in the illustration.

113.  Defendant intended for Plaintiffs to rely on the foregoing misrepresentations and deceitful conduct in order to induce Plaintiffs to purchase the Kushnir Policy and pay Defendant $950,590.50 in premiums before declaring the Policy to have lapsed and securing a windfall in profits for itself and its agents.

114.  As a direct and proximate result of the Defendants fraud and deceit, Plaintiffs will have suffered damages in excess of $75,000, exclusive of interest and costs, including (without limitation) loss in the amount of the greater of (i) the difference

26

between the value of the Kushnir Policy with full rights and benefits and its value on RPU status, or (ii) the amount of the premiums paid for the Policy.

115.   Defendant's conduct was willful, malicious and outrageous, warranting an award of punitive damages to Plaintiffs.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant for damages in excess of $75,000, punitive damages, attorney fees and costs, and/or granting such other relief as this Court deems equitable and just.

## COUNT VI
### Rescission

116.   Plaintiffs hereby incorporate paragraphs 1 through 115 as though same were fully set forth herein at length.

117.   This Count VI sets forth claims by Plaintiffs for rescission of the Kushnir Policy and return of all premiums paid toward same.

118.   The claims set forth in this Count VI are alleged in the alternative to the claims in the Counts I through III and in the event that the Defendant's interpretation of the Kushnir Policy to have lapsed for failure to pay the premium on February 3, 2008, is sustained and the Kushnir Policy deemed to have been properly placed on RPU status as of that date.

119.   In such event, it is alleged that the Defendant has engaged in fraudulent and inequitable conduct, and has been unjustly enriched thereby and to the Plaintiffs' detriment, including by its receipt of $950,590.50 in annual premiums by means of its fraudulent, inequitable and unconscionable conduct.

120.   In addition, its is believed and therefore averred that Defendant was not licensed to market or issue the Kushnir Policy in Pennsylvania and its issuance of the

Policy to Kushnir here was accordingly contrary to the laws and public policy of the Commonwealth of Pennsylvania.

121.    These circumstances warrant rescission of the Kushnir Policy and reimbursement of all or a portion of the premiums paid to prevent the unjust enrichment of Defendant.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant and rescind the life insurance policy, refunding to Plaintiff all or such portion of the money paid toward the policy as the Court determines to be equitable and just.

FOEHL & EYRE, P.C.

12/15/11

By_____
Robert B. Eyre, Esquire
Laurie A. McCarthy, Esquire
227 East Front Street
Media, PA 19063
610-566-5926
rob@foehllaw.com
laurie@foehllaw.com

28

# EXHIBIT "1"

# 412(i) "Fully Insured" Defined Benefit Plan



# EXHIBIT "2"

# INDIANAPOLIS LIFE INSURANCE COMPANY

**Home Office - 2960 North Meridian Street**
**Indianapolis, Indiana 46208**
**1-800-428-7031**

### LIFE INSURANCE ILLUSTRATION

Prepared for:

Vladimir  Kushnir

Prepared by:

## DENNIS  CUNNING
Pension Professionals of America LLC
5133 N. Central Ave. Suite 224
Phoenix, Arizona 85012
1 800 608 8520
E-Mail:  dennis@pensionprofessionals.com

## INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

**POLICY/RIDERS**

|  | FACE AMOUNT | ANNUAL PREMIUM |
|---|---|---|
| Base Policy | $5,595,000 | $190,118.10 |
| **TOTAL** | $5,595,000 | $190,118.10 |

Interest Adjusted Indexes based on a 5.00% rate for the basic policy.

| --NON - GUARANTEED-- | | | | |
|---|---|---|---|---|
| Life Insurance Net Payment Cost Index | 10 Yrs: | 19.05 | 20 Yrs: | 16.59 |
| Life Insurance Surrender Cost Index | 10 Yrs: | 6.12 | 20 Yrs: | 7.23 |

| --GUARANTEED-- | | | | |
|---|---|---|---|---|
| Life Insurance Net Payment Cost Index | 10 Yrs: | N/A | 20 Yrs: | N/A |
| Life Insurance Surrender Cost Index | 10 Yrs: | N/A | 20 Yrs: | N/A |

Cost Indexes are useful only for comparison of the related costs of two or more similar policies.
An explanation of the intended use of these indexes is provided in the "Life Insurance Buyer's Guide".
Cost Indexes are determined from the values on the Basic Ledger.

## NARRATIVE SUMMARY

PenPro is an interest sensitive whole life insurance policy. This type of plan is also sometimes referred to as a whole life policy with current interest or a fixed premium adjustable life policy. This product provides for level premiums and guaranteed coverage for the lifetime of the insured, provided the necessary premiums are paid. The illustration that follows is designed to illustrate how premiums paid to the PenPro insurance policy result in cash values and death benefits. The cash value and death benefits shown are based on premium outlays and surrenders made on the policy and reflect both guaranteed and non-guaranteed values.

This illustration assumes that the currently illustrated non-guaranteed elements will continue unchanged for all years shown. The illustration also assumes all premium outlays are paid as shown. Unless otherwise stated, all values shown are determined as of the end of the policy year. All values are based on the actual Modal Premium Payment selected. The non-guaranteed benefits and values are based on assumptions that are subject to change by Indianapolis Life. Actual results will likely differ and may be more or less favorable. Please refer to your Statement of Understanding for additional important information regarding this illustration and the policy shown.

An asterisk (*) in the Premium Outlay column indicates that, based on the interest rate illustrated, no out-of-pocket cash outlay is planned in these years. Even though the out-of-pocket cost to you is reduced, contractually, the premium is still required in all years. If current charges or interest rates change, additional premiums may be required to keep this policy in force.

A pound sign (#) in any cash value or death benefit column indicates the policy will terminate under these assumptions, unless additional out-of-pocket premiums are paid.

**The descriptions provided in the illustration are intended to provide only a conceptual overview of the policy. For a complete description of the benefits and conditions, please refer to your policy.**

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

ASSUMPTIONS:
Vladimir  Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount                                    Initial Annual Contract Premium: $190,118.10

## DESCRIPTION OF ADDITIONAL BENEFITS

The policy as illustrated includes the following riders. Riders provide additional benefits that are not available through the base policy. Note that riders that have a monthly charge will reduce the surrender value otherwise available to the contract owner without the rider.

CARING FOR TODAY BENEFIT (Form Number TABR-93) Terminal Illness Accelerated Benefit Rider is automatically available at no additional charge. This benefit allows insureds who are diagnosed with a terminal illness to receive up to one-half of their policy face amount (up to $250,000).

## DEFINITIONS OF KEY TERMS

ANNUAL OUTLAY is the amount of annual out-of-pocket premiums a contract owner plans to pay under the assumptions used in this illustration. The amounts shown in this column have been adjusted by withdrawals and loans.

AMOUNT SURRENDERED is the amount of money a contract owner may elect to take out of the policy to pay premiums. Surrenders will reduce the amount of death benefit and cash values payable.

NET AFTER TAX OUTLAY is the amount of out-of-pocket premiums a contract owner plans to pay under the assumptions used in this illustration. The amounts shown in this column have been adjusted by assumed taxes and withdrawals.

ANNUAL LOANS reflect the loans a contract owner may take from the policy. These loans reduce the policy's surrender values and death benefits. The policy will terminate if the loans taken exceed the surrender value. The illustration assumes policy loans and loan repayments occur at the beginning of the policy year.

LOAN INTEREST is the amount of interest we will charge on any outstanding policy loan you may take. See Narrative Summary for additional information.

STATEMENT OF UNDERSTANDING is a brief one or two page statement designed to help you understand your illustration.

## DEFINITIONS OF COLUMN HEADINGS

## NUMERIC SUMMARY PAGE and TABULAR DETAIL PAGE

POLICY YEAR shows the age of the policy in years.

ATTAINED AGE shows the insured's age at the end of the policy year.

CONTRACT PREMIUM is all annual premiums that are required to keep this policy and illustrated rider(s) in force.

PREMIUM OUTLAY is the amount of annual out-of-pocket premiums the contract owner plans to pay minus withdrawals.

GUARANTEED NET CASH VALUE is the guaranteed cash value less any surrender charges that apply. This is the guaranteed amount available to the contract owner upon surrender of the policy.

## INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

**GUARANTEED TOTAL DEATH BENEFIT** is the amount of Death Benefit we promise to pay upon the death of the insured.

**MIDPOINT NET CASH VALUE** shows a hypothetical surrender value based on non-guaranteed elements approximately midway between the guaranteed values and the current values.

**MIDPOINT DEATH BENEFIT** shows a hypothetical death benefit based on non-guaranteed elements approximately midway between the guaranteed values and the current values.

**CURRENT ACCUMULATED VALUE (NON-GUARANTEED)** is the amount of cash value that will be in your policy reduced by any withdrawals assuming you pay your scheduled premiums on time, current charges are deducted and the current interest rate is credited. This cash value is **not** guaranteed and is subject to change.

**CURRENT NET CASH VALUE (NON-GUARANTEED)** is the current accumulated value less any surrender charges that apply. This is the amount available to the contract owner upon surrender of the policy. This surrender value is **not** guaranteed and is subject to change.

**CURRENT DEATH BENEFIT (NON-GUARANTEED)** is the amount of Death Benefit payable upon the death of the insured. This death benefit is **not** guaranteed and is subject to change.

## ADDITIONAL INFORMATION

Policy Owner: Trust

The Accumulated Values are subject to a surrender charge in the first nine years.

The conditional premium payment plan allows for values in the policy to be surrendered to pay premiums as long as there remain sufficient values in the policy. Numbers appearing in the Annual Outlay column show the amount of out-of-pocket premiums expected to be paid by the policyowner under the assumptions used in this illustration. A zero appearing in this column indicates that premiums are being paid from existing policy values. Changes in current interest rate, current monthly expense charges, or current risk rates may result in the need to pay additional out-of-pocket premiums that may not be reflected in this illustration.

•   THIS POLICY HAS BEEN CHECKED AGAINST THE 7-PAY TEST

The illustration may not reflect your actual tax consequences. Modified Endowment Contract review in this illustration is only based on activity illustrated in the first year. Activity illustrated in later years could result in this case becoming a Modified Endowment Contract. We suggest that you consult your professional tax advisor for the interpretation of current and proposed tax law.

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

## NUMERIC SUMMARY

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Midpoint Net Cash Value | Midpoint Death Benefit | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 44 | 190,118.10 | 190,118 | 190,006 | 5,595,000 | 190,006 | 5,595,000 | 190,006 | 5,595,000 |
| 10 | 49 | 190,118.10 | 0* | -# | -# | -# | -# | 955,783 | 5,595,000 |
| 20 | 59 | 190,118.10 | 190,118 | -# | -# | -# | -# | 1,818,620 | 5,595,000 |
| 31 | 70 | 190,118.10 | 190,118 | -# | -# | -# | -# | 3,043,761 | 5,595,000 |

The policy may lapse prior to maturity (age 100). The coverage under each of the scenarios illustrated above will:

Guaranteed: Terminate at age 45          Midpoint: Terminate at age 46          Current: Remain in force to maturity

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed. I have also received and read the Statement of Understanding which is part of the illustration.

_____
Signature of Applicant (Policyowner)

_____
Date

I certify that this illustration has been presented to the applicant in its entirety, that I have explained the significance of non-guaranteed elements, and that no representations have been made that are inconsistent with this illustration.

_____
Signature of Agent

_____
Agent Code

_____
Date

☐ Original Illustration          ☐ Revised Illustration

\* -# See Narrative Summary

Issue State: Pennsylvania
Form Number A9-96

Page 5  of 12

Wednesday, 10/16/2002
Version: 002.006(I)

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

ASSUMPTIONS:
Vladimir  Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

### TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 190,118.10 | 190,118 | 0 | 5,595,000 | 14,368 | 0 | 5,595,000 |
| 2 | 41 | 190,118.10 | 190,118 | 0 | 5,595,000 | 198,037 | 0 | 5,595,000 |
| 3 | 42 | 190,118.10 | 190,118 | 49,404 | 5,595,000 | 391,820 | 49,404 | 5,595,000 |
| 4 | 43 | 190,118.10 | 190,118 | 118,614 | 5,595,000 | 596,363 | 118,614 | 5,595,000 |
| 5 | 44 | 190,118.10 | 190,118 | 190,006 | 5,595,000 | 842,225 | 190,006 | 5,595,000 |
|  |  | 950,590.50 | 950,591 |  |  |  |  |  |
| 6 | 45 | 190,118.10 | 0* | -# | -# | 838,970 | 306,326 | 5,595,000 |
| 7 | 46 | 190,118.10 | 0* | -# | -# | 866,659 | 467,176 | 5,595,000 |
| 8 | 47 | 190,118.10 | 0* | -# | -# | 895,353 | 629,031 | 5,595,000 |
| 9 | 48 | 190,118.10 | 0* | -# | -# | 925,071 | 791,910 | 5,595,000 |
| 10 | 49 | 190,118.10 | 0* | -# | -# | 955,783 | 955,783 | 5,595,000 |
|  |  | 1,901,181.00 | 950,591 |  |  |  |  |  |
| 11 | 50 | 190,118.10 | 0* | -# | -# | 956,223 | 956,223 | 5,595,000 |
| 12 | 51 | 190,118.10 | 0* | -# | -# | 955,015 | 955,015 | 5,595,000 |
| 13 | 52 | 190,118.10 | 0* | -# | -# | 951,722 | 951,722 | 5,595,000 |
| 14 | 53 | 190,118.10 | 190,118 | -# | -# | 1,147,972 | 1,147,972 | 5,595,000 |
| 15 | 54 | 190,118.10 | 0* | -# | -# | 1,152,010 | 1,152,010 | 5,595,000 |
|  |  | 2,851,771.50 | 1,140,709 |  |  |  |  |  |
| 16 | 55 | 190,118.10 | 190,118 | -# | -# | 1,355,693 | 1,355,693 | 5,595,000 |
| 17 | 56 | 190,118.10 | 0* | -# | -# | 1,367,195 | 1,367,195 | 5,595,000 |
| 18 | 57 | 190,118.10 | 190,118 | -# | -# | 1,578,769 | 1,578,769 | 5,595,000 |
| 19 | 58 | 190,118.10 | 0* | -# | -# | 1,598,356 | 1,598,356 | 5,595,000 |
| 20 | 59 | 190,118.10 | 190,118 | -# | -# | 1,818,620 | 1,818,620 | 5,595,000 |
|  |  | 3,802,362.00 | 1,711,063 |  |  |  |  |  |
| 21 | 60 | 190,118.10 | 0* | -# | -# | 1,847,246 | 1,847,246 | 5,595,000 |
| 22 | 61 | 190,118.10 | 0* | -# | -# | 1,873,761 | 1,873,761 | 5,595,000 |
| 23 | 62 | 190,118.10 | 190,118 | -# | -# | 2,101,134 | 2,101,134 | 5,595,000 |
| 24 | 63 | 190,118.10 | 0* | -# | -# | 2,136,185 | 2,136,185 | 5,595,000 |
| 25 | 64 | 190,118.10 | 190,118 | -# | -# | 2,372,255 | 2,372,255 | 5,595,000 |
|  |  | 4,752,952.50 | 2,091,299 |  |  |  |  |  |

* -# See Narrative Summary

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

ASSUMPTIONS:
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

## TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 26 | 65 | 190,118.10 | 0* | -# | -# | 2,415,739 | 2,415,739 | 5,595,000 |
| 27 | 66 | 190,118.10 | 0* | -# | -# | 2,456,171 | 2,456,171 | 5,595,000 |
| 28 | 67 | 190,118.10 | 190,118 | -# | -# | 2,698,210 | 2,698,210 | 5,595,000 |
| 29 | 68 | 190,118.10 | 0* | -# | -# | 2,747,606 | 2,747,606 | 5,595,000 |
| 30 | 69 | 190,118.10 | 0* | -# | -# | 2,794,090 | 2,794,090 | 5,595,000 |
|  |  | 5,703,543.00 | 2,281,417 |  |  |  |  |  |
| 31 | 70 | 190,118.10 | 190,118 | -# | -# | 3,043,761 | 3,043,761 | 5,595,000 |
| 32 | 71 | 190,118.10 | 0* | -# | -# | 3,100,836 | 3,100,836 | 5,595,000 |
| 33 | 72 | 190,118.10 | 0* | -# | -# | 3,153,363 | 3,153,363 | 5,595,000 |
| 34 | 73 | 190,118.10 | 190,118 | -# | -# | 3,411,129 | 3,411,129 | 5,595,000 |
| 35 | 74 | 190,118.10 | 0* | -# | -# | 3,475,329 | 3,475,329 | 5,595,000 |
|  |  | 6,654,133.50 | 2,661,653 |  |  |  |  |  |
| 36 | 75 | 190,118.10 | 0* | -# | -# | 3,535,145 | 3,535,145 | 5,595,000 |
| 37 | 76 | 190,118.10 | 0* | -# | -# | 3,589,814 | 3,589,814 | 5,595,000 |
| 38 | 77 | 190,118.10 | 190,118 | -# | -# | 3,851,798 | 3,851,798 | 5,595,000 |
| 39 | 78 | 190,118.10 | 0* | -# | -# | 3,921,320 | 3,921,320 | 5,595,000 |
| 40 | 79 | 190,118.10 | 0* | -# | -# | 3,988,685 | 3,988,685 | 5,595,000 |
|  |  | 7,604,724.00 | 2,851,772 |  |  |  |  |  |
| 41 | 80 | 190,118.10 | 0* | -# | -# | 4,053,795 | 4,053,795 | 5,595,000 |
| 42 | 81 | 190,118.10 | 0* | -# | -# | 4,116,162 | 4,116,162 | 5,595,000 |
| 43 | 82 | 190,118.10 | 0* | -# | -# | 4,174,989 | 4,174,989 | 5,595,000 |
| 44 | 83 | 190,118.10 | 190,118 | -# | -# | 4,451,920 | 4,451,920 | 5,595,000 |
| 45 | 84 | 190,118.10 | 0* | -# | -# | 4,540,892 | 4,540,892 | 5,595,000 |
|  |  | 8,555,314.50 | 3,041,890 |  |  |  |  |  |
| 46 | 85 | 190,118.10 | 0* | -# | -# | 4,633,387 | 4,633,387 | 5,595,000 |
| 47 | 86 | 190,118.10 | 0* | -# | -# | 4,730,664 | 4,730,664 | 5,643,683 |
| 48 | 87 | 190,118.10 | 0* | -# | -# | 4,832,090 | 4,832,090 | 5,697,034 |
| 49 | 88 | 190,118.10 | 0* | -# | -# | 4,935,436 | 4,935,436 | 5,754,718 |
| 50 | 89 | 190,118.10 | 0* | -# | -# | 5,040,021 | 5,040,021 | 5,821,224 |
|  |  | 9,505,905.00 | 3,041,890 |  |  |  |  |  |

* -# See Narrative Summary

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
**Issue Age 39 Standard No Tobacco**
**$5,595,000 Selected Face Amount**

Initial Annual Contract Premium: $190,118.10

## TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 51 | 90 | 190,118.10 | 0* | -# | -# | 5,148,040 | 5,148,040 | 5,884,210 |
| 52 | 91 | 190,118.10 | 0* | -# | -# | 5,258,776 | 5,258,776 | 5,958,193 |
| 53 | 92 | 190,118.10 | 0* | -# | -# | 5,374,530 | 5,374,530 | 6,030,223 |
| 54 | 93 | 190,118.10 | 0* | -# | -# | 5,496,651 | 5,496,651 | 6,106,780 |
| 55 | 94 | 190,118.10 | 0* | -# | -# | 5,626,379 | 5,626,379 | 6,189,017 |
|  |  | 10,456,495.50 | 3,041,890 |  |  |  |  |  |
| 56 | 95 | 190,118.10 | 0* | -# | -# | 5,765,602 | 5,765,602 | 6,272,975 |
| 57 | 96 | 190,118.10 | 0* | -# | -# | 5,913,988 | 5,913,988 | 6,363,451 |
| 58 | 97 | 190,118.10 | 0* | -# | -# | 6,074,106 | 6,074,106 | 6,450,700 |
| 59 | 98 | 190,118.10 | 0* | -# | -# | 6,244,752 | 6,244,752 | 6,544,500 |
| 60 | 99 | 190,118.10 | 0* | -# | -# | 6,426,729 | 6,426,729 | 6,645,237 |
|  |  | 11,407,086.00 | 3,041,890 |  |  |  |  |  |
| 61 | 100 | 190,118.10 | 0* | -# | -# | 6,634,310 | 6,634,310 | 6,766,997 |
|  |  | 11,597,204.10 | 3,041,890 |  |  |  |  |  |

* -# See Narrative Summary

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

## BASIC LEDGER

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 1 | 40 | 190,118.10 | 0.00 | 190,118 | 14,368 | 0 | 5,595,000 |
| 2 | 41 | 190,118.10 | 0.00 | 190,118 | 198,037 | 0 | 5,595,000 |
| 3 | 42 | 190,118.10 | 0.00 | 190,118 | 391,820 | 49,404 | 5,595,000 |
| 4 | 43 | 190,118.10 | 0.00 | 190,118 | 596,363 | 118,614 | 5,595,000 |
| 5 | 44 | 190,118.10 | 0.00 | 190,118 | 812,225 | 190,006 | 5,595,000 |
|  |  | 950,590.50 |  | 950,591 |  |  |  |
| 6 | 45 | 190,118.10 | 190,118.10 | 0* | 838,970 | 306,326 | 5,595,000 |
| 7 | 46 | 190,118.10 | 190,118.10 | 0* | 866,659 | 467,176 | 5,595,000 |
| 8 | 47 | 190,118.10 | 190,118.10 | 0* | 895,353 | 629,031 | 5,595,000 |
| 9 | 48 | 190,118.10 | 190,118.10 | 0* | 925,071 | 791,910 | 5,595,000 |
| 10 | 49 | 190,118.10 | 190,118.10 | 0* | 955,783 | 955,783 | 5,595,000 |
|  |  | 1,901,181.00 |  | 950,591 |  |  |  |
| 11 | 50 | 190,118.10 | 190,118.10 | 0* | 956,223 | 956,223 | 5,595,000 |
| 12 | 51 | 190,118.10 | 190,118.10 | 0* | 955,015 | 955,015 | 5,595,000 |
| 13 | 52 | 190,118.10 | 190,118.10 | 0* | 951,722 | 951,722 | 5,595,000 |
| 14 | 53 | 190,118.10 | 0.00 | 190,118 | 1,147,972 | 1,147,972 | 5,595,000 |
| 15 | 54 | 190,118.10 | 190,118.10 | 0* | 1,152,010 | 1,152,010 | 5,595,000 |
|  |  | 2,851,771.50 |  | 1,140,709 |  |  |  |
| 16 | 55 | 190,118.10 | 0.00 | 190,118 | 1,355,693 | 1,355,693 | 5,595,000 |
| 17 | 56 | 190,118.10 | 190,118.10 | 0* | 1,367,195 | 1,367,195 | 5,595,000 |
| 18 | 57 | 190,118.10 | 0.00 | 190,118 | 1,578,769 | 1,578,769 | 5,595,000 |
| 19 | 58 | 190,118.10 | 190,118.10 | 0* | 1,598,356 | 1,598,356 | 5,595,000 |
| 20 | 59 | 190,118.10 | 0.00 | 190,118 | 1,818,620 | 1,818,620 | 5,595,000 |
|  |  | 3,802,362.00 |  | 1,711,063 |  |  |  |
| 21 | 60 | 190,118.10 | 190,118.10 | 0* | 1,847,246 | 1,847,246 | 5,595,000 |
| 22 | 61 | 190,118.10 | 190,118.10 | 0* | 1,873,761 | 1,873,761 | 5,595,000 |
| 23 | 62 | 190,118.10 | 0.00 | 190,118 | 2,101,134 | 2,101,134 | 5,595,000 |
| 24 | 63 | 190,118.10 | 190,118.10 | 0* | 2,136,185 | 2,136,185 | 5,595,000 |
| 25 | 64 | 190,118.10 | 0.00 | 190,118 | 2,372,255 | 2,372,255 | 5,595,000 |
|  |  | 4,752,952.50 |  | 2,091,299 |  |  |  |
| 26 | 65 | 190,118.10 | 190,118.10 | 0* | 2,415,739 | 2,415,739 | 5,595,000 |
| 27 | 66 | 190,118.10 | 190,118.10 | 0* | 2,456,171 | 2,456,171 | 5,595,000 |
| 28 | 67 | 190,118.10 | 0.00 | 190,118 | 2,698,210 | 2,698,210 | 5,595,000 |
| 29 | 68 | 190,118.10 | 190,118.10 | 0* | 2,747,606 | 2,747,606 | 5,595,000 |
| 30 | 69 | 190,118.10 | 190,118.10 | 0* | 2,794,090 | 2,794,090 | 5,595,000 |
|  |  | 5,703,543.00 |  | 2,281,417 |  |  |  |

This illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

♦  See Narrative Summary page for important information and Tabular Detail Page for Guaranteed Values.

Issue State: Pennsylvania
Form Number A9-96

Page 9  of 12

Wednesday, 10/16/2002
Version: 002.006(I)

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

**ASSUMPTIONS:**
Vladimir   Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

### BASIC LEDGER

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 31 | 70 | 190,118.10 | 0.00 | 190,118 | 3,043,761 | 3,043,761 | 5,595,000 |
| 32 | 71 | 190,118.10 | 190,118.10 | 0* | 3,100,836 | 3,100,836 | 5,595,000 |
| 33 | 72 | 190,118.10 | 190,118.10 | 0* | 3,153,363 | 3,153,363 | 5,595,000 |
| 34 | 73 | 190,118.10 | 0.00 | 190,118 | 3,411,129 | 3,411,129 | 5,595,000 |
| 35 | 74 | 190,118.10 | 190,118.10 | 0* | 3,475,329 | 3,475,329 | 5,595,000 |
|   |   | 6,654,133.50 |   | 2,661,653 |   |   |   |
| 36 | 75 | 190,118.10 | 190,118.10 | 0* | 3,535,145 | 3,535,145 | 5,595,000 |
| 37 | 76 | 190,118.10 | 190,118.10 | 0* | 3,589,814 | 3,589,814 | 5,595,000 |
| 38 | 77 | 190,118.10 | 0.00 | 190,118 | 3,851,798 | 3,851,798 | 5,595,000 |
| 39 | 78 | 190,118.10 | 190,118.10 | 0* | 3,921,320 | 3,921,320 | 5,595,000 |
| 40 | 79 | 190,118.10 | 190,118.10 | 0* | 3,988,685 | 3,988,685 | 5,595,000 |
|   |   | 7,604,724.00 |   | 2,851,772 |   |   |   |
| 41 | 80 | 190,118.10 | 190,118.10 | 0* | 4,053,795 | 4,053,795 | 5,595,000 |
| 42 | 81 | 190,118.10 | 190,118.10 | 0* | 4,116,162 | 4,116,162 | 5,595,000 |
| 43 | 82 | 190,118.10 | 190,118.10 | 0* | 4,174,989 | 4,174,989 | 5,595,000 |
| 44 | 83 | 190,118.10 | 0.00 | 190,118 | 4,451,920 | 4,451,920 | 5,595,000 |
| 45 | 84 | 190,118.10 | 190,118.10 | 0* | 4,540,892 | 4,540,892 | 5,595,000 |
|   |   | 8,555,314.50 |   | 3,041,890 |   |   |   |
| 46 | 85 | 190,118.10 | 190,118.10 | 0* | 4,633,387 | 4,633,387 | 5,595,000 |
| 47 | 86 | 190,118.10 | 190,118.10 | 0* | 4,730,664 | 4,730,664 | 5,643,683 |
| 48 | 87 | 190,118.10 | 190,118.10 | 0* | 4,832,090 | 4,832,090 | 5,697,034 |
| 49 | 88 | 190,118.10 | 190,118.10 | 0* | 4,935,436 | 4,935,436 | 5,754,718 |
| 50 | 89 | 190,118.10 | 190,118.10 | 0* | 5,040,021 | 5,040,021 | 5,821,224 |
|   |   | 9,505,905.00 |   | 3,041,890 |   |   |   |
| 51 | 90 | 190,118.10 | 190,118.10 | 0* | 5,148,040 | 5,148,040 | 5,884,210 |
| 52 | 91 | 190,118.10 | 190,118.10 | 0* | 5,258,776 | 5,258,776 | 5,958,193 |
| 53 | 92 | 190,118.10 | 190,118.10 | 0* | 5,374,530 | 5,374,530 | 6,030,223 |
| 54 | 93 | 190,118.10 | 190,118.10 | 0* | 5,496,651 | 5,496,651 | 6,106,780 |
| 55 | 94 | 190,118.10 | 190,118.10 | 0* | 5,626,379 | 5,626,379 | 6,189,017 |
|   |   | 10,456,495.50 |   | 3,041,890 |   |   |   |
| 56 | 95 | 190,118.10 | 190,118.10 | 0* | 5,765,602 | 5,765,602 | 6,272,975 |
| 57 | 96 | 190,118.10 | 190,118.10 | 0* | 5,913,988 | 5,913,988 | 6,363,451 |
| 58 | 97 | 190,118.10 | 190,118.10 | 0* | 6,074,106 | 6,074,106 | 6,450,700 |
| 59 | 98 | 190,118.10 | 190,118.10 | 0* | 6,244,752 | 6,244,752 | 6,544,500 |
| 60 | 99 | 190,118.10 | 190,118.10 | 0* | 6,426,729 | 6,426,729 | 6,645,237 |
|   |   | 11,407,086.00 |   | 3,041,890 |   |   |   |

This Illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

♦   See Narrative Summary page for important information and Tabular Detail Page for Guaranteed Values.

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### PenPro

ASSUMPTIONS:
Vladimir  Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

**BASIC LEDGER**

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.65% (Non-Guaranteed) | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 61 | 100 | 190,118.10<br>11,597,204.10 | 190,118.10 | 0*<br>3,041,890 | 6,634,310 | 6,634,310 | 6,766,997 |

This illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

♦   See Narrative Summary page for Important Information and Tabular Detail Page for Guaranteed Values.

Issue State: Pennsylvania
Form Number A9-96

Wednesday, 10/16/2002
Version: 002.006(I)

## INDIANAPOLIS LIFE INSURANCE COMPANY
### STATEMENT OF UNDERSTANDING: PenPro

#### (Whole Life Insurance with Current Interest)

I have received the attached life insurance illustration including the explanatory notes and have discussed it with my insurance representative. I understand the following:

* The Policy referred to in this illustration was specifically designed to assist in certain tax planning situations. This policy is not recommended if the policyowner expects to terminate the policy or withdraw cash values within the first ten years.

* This illustration is **not** part of the policy and is intended to demonstrate only the general pattern of premiums, cash values, and death benefits for the policy shown. Actual values will likely differ from illustrated values because of periodic changes in the company's interest crediting rate, cost of insurance charges, and expense charges.

* The values shown in this illustration are based upon consumer input or assumptions regarding the proposed insured's age, sex, insurability, interest rates, and the particular plan and benefits selected. The values further assume the policy is issued exactly as shown, all scheduled premiums are paid in a timely manner, and the policy loans and partial withdrawals, if any, are exactly as illustrated. Changes in **any** of these assumptions will invalidate this illustration.

* If the policy is issued other than as applied for, the policyowner should request a new illustration using the same premiums, benefits, and assumptions that were used in issuing the actual policy.

* Values shown in columns **not** identified as 'guaranteed' are based upon current interest rate, mortality and expense assumptions and are not guaranteed.

* The current policy expense charges and cost of insurance rates of the policy will increase significantly in the tenth policy year. It is recommended the policyowner review his or her policy on or before the tenth year to determine the continued suitability for his or her life insurance needs.

* This policy does not participate in company dividends.

* This policy contains substantial surrender charges in policy years one through nine. The schedule of surrender charges is stated on page three of the policy.

* **Premiums are always required for the entire period stated in the policy.** The use of existing policy values to pay future premiums will result in a decrease in the policy's cash value and may result in a decrease in the death benefits payable. Failure to pay the required premiums could result in termination of the policy.

* No person other than an officer of Indianapolis Life has the authority to waive or modify any questions in the application or to make any promises not contained in the policy.

* When a policy is issued, the policyowner will receive a Life Insurance Buyer's Guide. The policyowner should carefully review this information.

* The policy may be returned for a full refund of premiums for any reason within the 'freelook' period as stated on page one of the policy.

* Each year the policyowner will receive an annual statement showing values based upon the actual performance of the policy.

* The policyowner may call Indianapolis Life at 1-800-428-7031 if he or she has any questions.



**R** IDGE
**I** NSURANCE
**I** NC.

BROKERAGE GENERAL AGENCY

STRATH HAVEN CONDOMINIUMS • 801 YALE AVENUE • SUITE 626 • P.O. BOX 247 • SWARTHMORE, PA 19081-9978
610/328-1490 • FAX 610/328-2610

## FACSIMILE MESSAGE:

**DATE:** 1/31/03

**SENDING TO:** Bob Pedigo

**FROM:** Rose

**NOTE:** Re: VLADiMiR
KuSHNiR
100098974

Page 5 of Illust.

Thank You

Rose

TOTAL PAGES INCLUDING COVER ( 2 )

IF YOU ARE NOT RECEIVING A CLEAR COPY OF THIS FAX, PLEASE CONTACT
US AT: 610-328-1490.

Aviva 107

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard No Tobacco
$5,595,000 Selected Face Amount

Initial Annual Contract Premium: $190,118.10

## NUMERIC SUMMARY

| Policy Year | Attained Age | Contract Premium | Premium Outlay | 3% Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Midpoint Net Cash Value | Midpoint Death Benefit | Current Net Cash Value at 5.65% (Non-Guaranteed) | Current Death Benefit at 5.65% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 44 | 190,118.10 | 190,118 | 190,006 | 5,595,000 | 190,006 | 5,595,000 | 190,006 | 5,595,000 |
| 10 | 49 | 190,118.10 | 0* | -# | -# | -# | -# | 955,783 | 5,595,000 |
| 20 | 59 | 190,118.10 | 190,118 | -# | -# | -# | -# | 1,818,620 | 5,595,000 |
| 31 | 70 | 190,118.10 | 190,118 | -# | -# | -# | -# | 3,043,761 | 5,595,000 |

The policy may lapse prior to maturity (age 100). The coverage under each of the scenarios illustrated above will:

Guaranteed: Terminate at age 45          Midpoint: Terminate at age 46          Current: Remain in force to maturity

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed. I have also received and read the Statement of Understanding which is part of the illustration.

X _V. Kushnir_                                                      _10/7/02_
Signature of Applicant (Policyowner)                                Date

I certify that this illustration has been presented to the applicant in its entirety, that I have explained the significance of non-guaranteed elements, and that no representations have been made that are inconsistent with this illustration.

X _____                     _RD002_                        _10/7/02_
Signature of Agent                  Agent Code                     Date

❑ Original Illustration                     ❑ Revised Illustration

# See Narrative Summary                                            Aviva 108

Issue State. Pennsylvania                                          Wednesday, 10/16/2002
Form Number A9-96              Page 5  of 12                       Version: 002.006(T)

# EXHIBIT

## "3"

INDIANAPOLIS LIFE INSURANCE COMPANY

Home Office - 2960 North Meridian Street
Indianapolis, Indiana 46208
1-800-428-7031

LIFE INSURANCE ILLUSTRATION

Prepared for:

Vladimir Kushnir

Prepared by:

DENNIS CUNNING
Pension Professionals of America LLC
5133 N. Central Ave. Suite 224
Phoenix, Arizona 85012
1 800 608 8520
E-Mail: dennis@pensionprofessionals.com

100098774
illus

Aviva 55

INDIANAPOLIS LIFE INSURANCE COMPANY
LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,617 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 08/21/1963
Initial Annual Contract Premium: $190,118.10

POLICY/RIDERS

| | FACE AMOUNT | ANNUAL PREMIUM |
|---|---|---|
| Base Policy | $4,614,617 | $190,118.10 |
| TOTAL | $4,614,617 | $190,118.10 |

Interest Adjusted Indexes based on a 5.00% rate for the basic policy.

--NON - GUARANTEED--
| | | | | |
|---|---|---|---|---|
| Life Insurance Net Payment Cost Index | 10 Yrs | 23.10 | 20 Yrs | 20.41 |
| Life Insurance Surrender Cost Index | 10 Yrs | 8.55 | 20 Yrs | 10.89 |

--GUARANTEED--
| | | | | |
|---|---|---|---|---|
| Life Insurance Net Payment Cost Index | 10 Yrs | N/A | 20 Yrs | N/A |
| Life Insurance Surrender Cost Index | 10 Yrs | N/A | 20 Yrs | N/A |

Cost Indexes are useful only for comparison of the related costs of two or more similar policies.
An explanation of the intended use of these indexes is provided in the "Life Insurance Buyer's Guide".
Cost Indexes are determined from the values on the Basic Ledger.

## NARRATIVE SUMMARY

PenPro is an interest sensitive whole life insurance policy. This type of plan is also sometimes referred to as a whole life policy with current interest or a fixed premium adjustable life policy. This product provides for level premiums and guaranteed coverage for the lifetime of the insured, provided the necessary premiums are paid. The illustration that follows is designed to illustrate how premiums paid to the PenPro insurance policy result in cash values and death benefits. The cash value and death benefits shown are based on premium outlays and surrenders made on the policy and reflect both guaranteed and non-guaranteed values.

This illustration assumes that the currently illustrated non-guaranteed elements will continue unchanged for all years shown. The illustration also assumes all premium outlays are paid as shown. Unless otherwise stated, all values shown are determined as of the end of the policy year. All values are based on the actual Modal Premium Payment selected. The non-guaranteed benefits and values are based on assumptions that are subject to change by Indianapolis Life. Actual results will likely differ and may be more or less favorable. Please refer to your Statement of Understanding for additional important information regarding this illustration and the policy shown.

An asterisk (*) in the Premium Outlay column indicates that, based on the interest rate illustrated, no out-of-pocket cash outlay is planned in those years. Even though the out-of-pocket cost to you is reduced, contractually, the premium is still required in all years. If current charges or interest rates change, additional premiums may be required to keep this policy in force.

A pound sign (#) in any cash value or death benefit column indicates the policy will terminate under these assumptions, unless additional out-of-pocket premiums are paid.

The descriptions provided in the illustration are intended to provide only a conceptual overview of the policy. For a complete description of the benefits and conditions, please refer to your policy.

Issue State: Pennsylvania
Form Number A 9-98

Page 2 of 12

Thursday, 02/06/2003
Version: 002.006(1)

Aviva 56

INDIANAPOLIS LIFE INSURANCE COMPANY
LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

## DESCRIPTION OF ADDITIONAL BENEFITS

The policy as illustrated includes the following riders. Riders provide additional benefits that are not available through the base policy. Note that riders that have a monthly charge will reduce the surrender value otherwise available to the contract owner without the rider.

CARING FOR TODAY BENEFIT (Form Number TABR-93) Terminal Illness Accelerated Benefit Rider is automatically available at no additional charge. This benefit allows insureds who are diagnosed with a terminal illness to receive up to one-half of their policy face amount (up to $250,000).

## DEFINITIONS OF KEY TERMS

ANNUAL OUTLAY is the amount of annual out-of-pocket premiums a contract owner plans to pay under the assumptions used in this illustration. The amounts shown in this column have been adjusted by withdrawals and loans.

AMOUNT SURRENDERED is the amount of money a contract owner may elect to take out of the policy to pay premiums. Surrenders will reduce the amount of death benefit and cash values payable.

NET AFTER TAX OUTLAY is the amount of out-of-pocket premiums a contract owner plans to pay under the assumptions used in this illustration. The amounts shown in this column have been adjusted by assumed taxes and withdrawals.

ANNUAL LOANS reflect the loans a contract owner may take from the policy. These loans reduce the policy's surrender values and death benefits. The policy will terminate if the loans taken exceed the surrender value. The illustration assumes policy loans and loan repayments occur at the beginning of the policy year.

LOAN INTEREST is the amount of interest we will charge on any outstanding policy loan you may take. See Narrative Summary for additional information.

STATEMENT OF UNDERSTANDING is a brief one or two page statement designed to help you understand your illustration.

## DEFINITIONS OF COLUMN HEADINGS

### NUMERIC SUMMARY PAGE and TABULAR DETAIL PAGE

POLICY YEAR shows the age of the policy in years.

ATTAINED AGE shows the insured's age at the end of the policy year.

CONTRACT PREMIUM is all annual premiums that are required to keep this policy and illustrated rider(s) in force.

PREMIUM OUTLAY is the amount of annual out-of-pocket premiums the contract owner plans to pay minus withdrawals.

GUARANTEED NET CASH VALUE is the guaranteed cash value less any surrender charges that apply. This is the guaranteed amount available to the contract owner upon surrender of the policy.

Issue State: Pennsylvania
Form Number A9-95

Page 3 of 12

Thursday, 02/06/2003
Version: 002.008(1)

Aviva 57

INDIANAPOLIS LIFE INSURANCE COMPANY
LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

GUARANTEED TOTAL DEATH BENEFIT is the amount of Death Benefit we promise to pay upon the death of the insured

MIDPOINT NET CASH VALUE shows a hypothetical surrender value based on non-guaranteed elements approximately midway between the guaranteed values and the current values.

MIDPOINT DEATH BENEFIT shows a hypothetical death benefit based on non-guaranteed elements approximately midway between the guaranteed values and the current values.

CURRENT ACCUMULATED VALUE (NON-GUARANTEED) is the amount of cash value that will be in your policy reduced by any withdrawals assuming you pay your scheduled premiums on time, current charges are deducted and the current interest rate is credited. This cash value is not guaranteed and is subject to change.

CURRENT NET CASH VALUE (NON-GUARANTEED) is the current accumulated value less any surrender charges that apply. This is the amount available to the contract owner upon surrender of the policy. This surrender value is not guaranteed and is subject to change.

CURRENT DEATH BENEFIT (NON-GUARANTEED) is the amount of Death Benefit payable upon the death of the insured. This death benefit is not guaranteed and is subject to change.

## ADDITIONAL INFORMATION

Policy Owner: Trust

The Accumulated Values are subject to a surrender charge in the first nine years.

The conditional premium payment plan allows for values in the policy to be surrendered to pay premiums as long as there remain sufficient values in the policy. Numbers appearing in the Annual Outlay column show the amount of out-of-pocket premiums expected to be paid by the policyowner under the assumptions used in this illustration. A zero appearing in this column indicates that premiums are being paid from existing policy values. Changes in current interest rate, current monthly expense charges, or current risk rates may result in the need to pay additional out-of-pocket premiums that may not be reflected in this illustration.

THIS POLICY HAS BEEN CHECKED AGAINST THE 7-PAY TEST

The illustration may not reflect your actual tax consequences. Modified Endowment Contract review in this illustration is only based on activity illustrated in the first year. Activity illustrated in later years could result in this case becoming a Modified Endowment Contract. We suggest that you consult your professional tax advisor for the interpretation of current and proposed tax law.

Issue State: Pennsylvania
Form Number A9-98

Page 4 of 12

Thursday, 02/06/2003
Version: 002.008(I)

Aviva 58

# INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PanPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

## NUMERIC SUMMARY

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Midpoint Net Cash Value | Midpoint Death Benefit | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|---|
| 6 | 44 | 190,118.10 | 190,118 | 197,363 | 4,614,517 | 197,363 | 4,614,517 | 197,363 | 4,614,517 |
| 10 | 49 | 190,118.10 | 0* | -# | -# | -# | -# | 898,869 | 4,614,517 |
| 20 | 59 | 190,118.10 | 0* | -# | -# | -# | -# | 1,524,317 | 4,614,517 |
| 31 | 70 | 190,118.10 | 0* | -# | -# | -# | -# | 2,545,099 | 4,614,517 |

The policy may lapse prior to maturity (age 100). The coverage under each of the scenarios illustrated above will:

Guaranteed: Terminate at age 45       Midpoint: Terminate at age 46       Current: Remain in force to maturity

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed. I have also received and read the Statement of Understanding which is part of the illustration.

Signature of Applicant (Policyowner)                         Date

I certify that this illustration has been presented to the applicant in its entirety, that I have explained the significance of nonguaranteed elements, and that no representations have been made that are inconsistent with this illustration.

Signature of Agent               Agent Code                    Date

   Original Illustration              Revised Illustration

* -# See Narrative Summary

Issue State: Pennsylvania                                     Thursday, 02/06/2003
Form Number A9-96                    Page 6  of 12            Version: 002.006(I)

Aviva 59

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

## TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 190,118.10 | 190,118 | 0 | 4,614,517 | 11,701 | 0 | 4,614,517 |
| 2 | 41 | 190,118.10 | 190,118 | 0 | 4,614,517 | 192,050 | 0 | 4,614,517 |
| 3 | 42 | 190,118.10 | 190,118 | 58,789 | 4,614,517 | 381,468 | 58,759 | 4,614,517 |
| 4 | 43 | 190,118.10 | 190,118 | 128,345 | 4,614,517 | 580,525 | 128,345 | 4,614,517 |
| 5 | 44 | 190,118.10 | 190,118 | 197,363 | 4,614,517 | 789,743 | 197,363 | 4,614,517 |
| | | 950,590.50 | 950,591 | | | | | |
| 6 | 45 | 190,118.10 | 0* | -# | -# | 809,022 | 295,887 | 4,614,517 |
| 7 | 46 | 190,118.10 | 0* | -# | -# | 828,363 | 443,512 | 4,614,517 |
| 8 | 47 | 190,118.10 | 0* | -# | -# | 847,799 | 591,232 | 4,614,517 |
| 9 | 48 | 190,118.10 | 0* | -# | -# | 867,250 | 738,986 | 4,614,517 |
| 10 | 49 | 190,118.10 | 0* | -# | -# | 889,669 | 886,669 | 4,614,517 |
| | | 1,901,181.00 | 950,591 | | | | | |
| 11 | 50 | 190,118.10 | 0* | -# | -# | 889,548 | 889,548 | 4,614,517 |
| 12 | 51 | 190,118.10 | 0* | -# | -# | 846,658 | 849,658 | 4,614,517 |
| 13 | 52 | 190,118.10 | 190,118 | -# | -# | 1,025,539 | 1,025,539 | 4,614,517 |
| 14 | 53 | 190,118.10 | 0* | -# | -# | 1,008,162 | 1,008,162 | 4,614,517 |
| 15 | 54 | 190,118.10 | 190,118 | -# | -# | 1,188,436 | 1,188,436 | 4,614,517 |
| | | 2,851,771.50 | 1,330,827 | | | | | |
| 16 | 55 | 190,118.10 | 0* | -# | -# | 1,173,944 | 1,173,944 | 4,614,517 |
| 17 | 56 | 190,118.10 | 190,118 | -# | -# | 1,357,254 | 1,357,254 | 4,614,517 |
| 18 | 57 | 190,118.10 | 0* | -# | -# | 1,345,698 | 1,345,698 | 4,614,517 |
| 19 | 58 | 190,118.10 | 190,118 | -# | -# | 1,532,375 | 1,532,375 | 4,614,517 |
| 20 | 59 | 190,118.10 | 0* | -# | -# | 1,524,317 | 1,524,317 | 4,614,517 |
| | | 3,802,362.00 | 1,711,063 | | | | | |
| 21 | 60 | 190,118.10 | 190,118 | -# | -# | 1,715,199 | 1,715,199 | 4,614,517 |
| 22 | 61 | 190,118.10 | 0* | -# | -# | 1,711,301 | 1,711,301 | 4,614,517 |
| 23 | 62 | 190,118.10 | 190,118 | -# | -# | 1,909,505 | 1,909,505 | 4,614,517 |
| 24 | 63 | 190,118.10 | 0* | -# | -# | 1,908,279 | 1,908,279 | 4,614,517 |
| 25 | 64 | 190,118.10 | 190,118 | -# | -# | 2,105,133 | 2,105,133 | 4,614,517 |
| | | 4,752,952.50 | 2,281,417 | | | | | |

* -# See Narrative Summary

Issue State: Pennsylvania
Form Number A9-98

Page 6 of 12

Thursday, 02/06/2003
Version: 002.005(I)

Aviva 60

# INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

## TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 26 | 65 | 190,118.10 | 0* | -# | -# | 2,107,884 | 2,107,884 | 4,614,517 |
| 27 | 66 | 190,118.10 | 190,118 | -# | -# | 2,310,372 | 2,310,372 | 4,614,517 |
| 28 | 67 | 190,118.10 | 0* | -# | -# | 2,316,923 | 2,316,923 | 4,614,517 |
| 29 | 68 | 190,118.10 | 190,118 | -# | -# | 2,524,882 | 2,524,882 | 4,614,517 |
| 30 | 69 | 190,118.10 | 0* | -# | -# | 2,537,850 | 2,537,850 | 4,614,517 |
| | | 6,703,543.00 | 2,681,655 | | | | | |
| 31 | 70 | 190,118.10 | 0* | -# | -# | 2,545,099 | 2,545,099 | 4,614,517 |
| 32 | 71 | 190,118.10 | 190,118 | -# | -# | 2,755,523 | 2,755,523 | 4,614,517 |
| 33 | 72 | 190,118.10 | 0* | -# | -# | 2,770,262 | 2,770,262 | 4,614,517 |
| 34 | 73 | 190,118.10 | 0* | -# | -# | 2,777,827 | 2,777,827 | 4,614,517 |
| 35 | 74 | 190,118.10 | 190,118 | -# | -# | 2,988,179 | 2,988,179 | 4,614,517 |
| | | 6,654,133.50 | 3,041,890 | | | | | |
| 36 | 75 | 190,118.10 | 0* | -# | -# | 3,003,271 | 3,003,271 | 4,614,517 |
| 37 | 76 | 190,118.10 | 190,118 | -# | -# | 3,223,948 | 3,223,948 | 4,614,517 |
| 38 | 77 | 190,118.10 | 0* | -# | -# | 3,249,113 | 3,249,113 | 4,614,517 |
| 39 | 78 | 190,118.10 | 0* | -# | -# | 3,266,390 | 3,266,390 | 4,614,517 |
| 40 | 79 | 190,118.10 | 0* | -# | -# | 3,281,180 | 3,281,180 | 4,614,517 |
| | | 7,604,724.00 | 3,232,008 | | | | | |
| 41 | 80 | 190,118.10 | 190,118 | -# | -# | 3,507,497 | 3,507,497 | 4,614,517 |
| 42 | 81 | 190,118.10 | 0* | -# | -# | 3,541,131 | 3,541,131 | 4,614,517 |
| 43 | 82 | 190,118.10 | 0* | -# | -# | 3,571,441 | 3,571,441 | 4,614,517 |
| 44 | 83 | 190,118.10 | 0* | -# | -# | 3,597,293 | 3,597,293 | 4,614,517 |
| 45 | 84 | 190,118.10 | 0* | -# | -# | 3,617,175 | 3,617,175 | 4,614,517 |
| | | 8,555,314.50 | 3,422,126 | | | | | |
| 46 | 85 | 190,118.10 | 190,118 | -# | -# | 3,860,476 | 3,860,476 | 4,614,517 |
| 47 | 86 | 190,118.10 | 0* | -# | -# | 3,918,220 | 3,918,220 | 4,628,972 |
| 48 | 87 | 190,118.10 | 0* | -# | -# | 3,974,813 | 3,974,813 | 4,654,566 |
| 49 | 88 | 190,118.10 | 0* | -# | -# | 4,036,460 | 4,036,460 | 4,682,293 |
| 50 | 89 | 190,118.10 | 0* | -# | -# | 4,099,287 | 4,099,287 | 4,714,180 |
| | | 9,505,905.00 | 3,612,244 | | | | | |

* -# See Narrative Summary

Issue State: Pennsylvania
Form Number A9-96

Page 7 of 12

Thursday, 02/06/2003
Version: 002.008(1)

Aviva 61

# INDIANAPOLIS LIFE INSURANCE COMPANY
## LIFE INSURANCE ILLUSTRATION
### 9enPro

**ASSUMPTIONS:**
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,617 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

## TABULAR DETAIL

| Policy Year | Attained Age | Contract Premium | Premium Outlay | Guaranteed Net Cash Value | Guaranteed Total Death Benefit | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|---|
| 51 | 90 | 190,118.10 | 0* | -# | -# | 4,184,492 | 4,184,492 | 4,747,521 |
| 52 | 91 | 190,118.10 | 0* | -# | -# | 4,231,692 | 4,231,692 | 4,796,044 |
| 53 | 92 | 190,118.10 | 0* | -# | -# | 4,302,563 | 4,302,563 | 4,823,196 |
| 54 | 93 | 190,118.10 | 0* | -# | -# | 4,376,022 | 4,376,022 | 4,653,963 |
| 55 | 94 | 190,118.10 | 0* | -# | -# | 4,459,324 | 4,459,324 | 4,905,256 |
| | | 10,458,495.50 | 3,612,244 | | | | | |
| 56 | 95 | 190,118.10 | 0* | -# | -# | 4,547,843 | 4,547,843 | 4,948,053 |
| 57 | 96 | 190,118.10 | 0* | -# | -# | 4,642,624 | 4,642,624 | 4,995,463 |
| 58 | 97 | 190,118.10 | 0* | -# | -# | 4,745,587 | 4,745,587 | 5,039,814 |
| 59 | 98 | 190,118.10 | 0* | -# | -# | 4,855,686 | 4,855,686 | 5,086,761 |
| 60 | 99 | 190,118.10 | 0* | -# | -# | 4,973,451 | 4,973,451 | 5,142,346 |
| | | 11,407,086.00 | 3,612,244 | | | | | |
| 61 | 100 | 190,118.10 | 0* | -# | -# | 5,109,773 | 5,109,773 | 5,211,968 |
| | | 11,597,204.10 | 3,612,244 | | | | | |

\* -# See Narrative Summary

Issue State: Pennsylvania
Form Number A9-96

Page 8 of 12

Thursday, 02/06/2003
Version: 002.006(i)

Aviva 62

Page 9
Case 2:11-cv-07701-JD Document 1 Filed 12/16/11 Page 58 of 121
dy Alkire - vladimirkushnirpenpro.pdf

## INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PenPro

**ASSUMPTIONS:**
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,614,517 Selected Face Amount

Date Prepared: 02/08/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

**BASIC LEDGER**

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 1 | 40 | 190,118.10 | 0.00 | 190,118 | 11,701 | 0 | 4,614,517 |
| 2 | 41 | 190,118.10 | 0.00 | 190,118 | 192,030 | 0 | 4,614,517 |
| 3 | 42 | 190,118.10 | 0.00 | 190,118 | 381,466 | 58,759 | 4,614,517 |
| 4 | 43 | 190,118.10 | 0.00 | 190,118 | 580,525 | 126,345 | 4,614,517 |
| 5 | 44 | 190,118.10 | 0.00 | 190,118 | 788,743 | 197,383 | 4,614,517 |
| | | 950,590.55 | | 950,591 | | | |
| 6 | 45 | 190,118.10 | 190,118.10 | 0* | 809,072 | 295,887 | 4,614,517 |
| 7 | 46 | 190,118.10 | 190,118.10 | 0* | 828,340 | 443,512 | 4,614,517 |
| 8 | 47 | 190,118.10 | 190,118.10 | 0* | 847,799 | 591,232 | 4,614,517 |
| 9 | 48 | 190,118.10 | 190,118.10 | 0* | 867,150 | 738,958 | 4,614,517 |
| 10 | 49 | 190,118.10 | 190,118.10 | 0* | 885,663 | 885,663 | 4,614,517 |
| | | 1,901,181.00 | | 950,591 | | | |
| 11 | 50 | 190,118.10 | 190,118.10 | 0* | 869,546 | 869,546 | 4,614,517 |
| 12 | 51 | 190,118.10 | 190,118.10 | 0* | 848,656 | 848,656 | 4,614,517 |
| 13 | 52 | 190,118.10 | 0.00 | 190,118 | 1,025,639 | 1,025,639 | 4,614,517 |
| 14 | 53 | 190,118.10 | 190,118.10 | 0* | 1,009,162 | 1,009,162 | 4,614,517 |
| 15 | 54 | 190,118.10 | 0.00 | 190,118 | 1,188,438 | 1,188,436 | 4,614,517 |
| | | 2,851,771.50 | | 1,330,827 | | | |
| 16 | 55 | 190,118.10 | 190,118.10 | 0* | 1,173,944 | 1,173,944 | 4,614,517 |
| 17 | 56 | 190,118.10 | 0.00 | 190,118 | 1,357,254 | 1,357,254 | 4,614,517 |
| 18 | 57 | 190,118.10 | 190,118.10 | 0* | 1,345,668 | 1,345,668 | 4,614,517 |
| 19 | 58 | 190,118.10 | 0.00 | 190,118 | 1,532,375 | 1,532,375 | 4,614,517 |
| 20 | 59 | 190,118.10 | 190,118.10 | 0* | 1,524,317 | 1,524,317 | 4,614,517 |
| | | 3,802,392.00 | | 1,711,063 | | | |
| 21 | 60 | 190,118.10 | 0.00 | 190,118 | 1,716,199 | 1,716,199 | 4,614,517 |
| 22 | 61 | 190,118.10 | 190,118.10 | 0* | 1,711,301 | 1,711,301 | 4,614,517 |
| 23 | 62 | 190,118.10 | 0.00 | 190,118 | 1,906,505 | 1,906,505 | 4,614,517 |
| 24 | 63 | 190,118.10 | 190,118.10 | 0* | 1,908,279 | 1,908,279 | 4,614,517 |
| 25 | 64 | 190,118.10 | 0.00 | 190,118 | 2,105,133 | 2,105,133 | 4,614,517 |
| | | 4,752,952.50 | | 2,281,417 | | | |
| 26 | 65 | 190,118.10 | 190,118.10 | 0* | 2,107,884 | 2,107,884 | 4,614,517 |
| 27 | 66 | 190,118.10 | 0.00 | 190,118 | 2,310,372 | 2,310,372 | 4,614,517 |
| 28 | 67 | 190,118.10 | 190,118.10 | 0* | 2,316,923 | 2,316,923 | 4,614,517 |
| 29 | 68 | 190,118.10 | 0.00 | 190,118 | 2,524,882 | 2,524,882 | 4,614,517 |
| 30 | 69 | 190,118.10 | 190,118.10 | 0* | 2,537,850 | 2,537,850 | 4,614,517 |
| | | 5,703,543.00 | | 2,661,653 | | | |

This illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

See Narrative Summary page for Important Information and Tabular Detail Page for Guaranteed Values.

Issue State: Pennsylvania
Form Number A9-96

Page 9 of 12

Thursday, 02/08/2003
Version: 002.006(f)

Aviva 63

### INDIANAPOLIS LIFE INSURANCE COMPANY
#### LIFE INSURANCE ILLUSTRATION
##### PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,814,517 Selected Face Amount

Date Prepared: 02/06/2003
Date of Birth: 09/21/1963
Initial Annual Contract Premium: $190,118.10

#### BASIC LEDGER

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 31 | 70 | 190,118.10 | 190,118.10 | 0* | 2,545,099 | 2,545,099 | 4,814,517 |
| 32 | 71 | 190,118.10 | 0.00 | 190,118 | 2,755,523 | 2,755,523 | 4,814,517 |
| 33 | 72 | 190,118.10 | 190,118.10 | 0* | 2,770,262 | 2,770,262 | 4,814,517 |
| 34 | 73 | 190,118.10 | 190,118.10 | 0* | 2,777,827 | 2,777,827 | 4,814,517 |
| 35 | 74 | 190,118.10 | 0.00 | 190,118 | 2,969,179 | 2,969,179 | 4,814,517 |
| | | 6,554,133.10 | | 3,041,890 | | | |
| 36 | 75 | 190,118.10 | 190,118.10 | 0* | 3,003,271 | 3,003,271 | 4,814,517 |
| 37 | 76 | 190,118.10 | 0.00 | 190,118 | 3,223,946 | 3,223,946 | 4,814,517 |
| 38 | 77 | 190,118.10 | 190,118.10 | 0* | 3,249,113 | 3,249,113 | 4,814,517 |
| 39 | 78 | 190,118.10 | 190,118.10 | 0* | 3,256,390 | 3,256,390 | 4,814,517 |
| 40 | 79 | 190,118.10 | 190,118.10 | 0* | 3,261,160 | 3,261,160 | 4,814,517 |
| | | 7,604,924.00 | | 3,231,998 | | | |
| 41 | 80 | 190,118.10 | 0.00 | 190,118 | 3,501,497 | 3,501,497 | 4,814,517 |
| 42 | 81 | 190,118.10 | 190,118.10 | 0* | 3,541,131 | 3,541,131 | 4,814,517 |
| 43 | 82 | 190,118.10 | 190,118.10 | 0* | 3,571,441 | 3,571,441 | 4,814,517 |
| 44 | 83 | 190,118.10 | 190,118.10 | 0* | 3,597,293 | 3,597,293 | 4,814,517 |
| 45 | 84 | 190,118.10 | 190,118.10 | 0* | 3,617,175 | 3,617,175 | 4,814,517 |
| | | 8,555,514.50 | | 3,422,128 | | | |
| 46 | 85 | 190,118.10 | 0.00 | 190,118 | 3,860,476 | 3,860,476 | 4,814,517 |
| 47 | 86 | 190,118.10 | 190,118.10 | 0* | 3,916,220 | 3,916,220 | 4,628,972 |
| 48 | 87 | 190,118.10 | 190,118.10 | 0* | 3,974,913 | 3,974,913 | 4,654,305 |
| 49 | 88 | 190,118.10 | 190,118.10 | 0* | 4,038,460 | 4,038,460 | 4,682,393 |
| 50 | 89 | 190,118.10 | 190,118.10 | 0* | 4,059,287 | 4,059,287 | 4,714,180 |
| | | 9,505,905.50 | | 3,912,244 | | | |
| 51 | 90 | 190,118.10 | 190,118.10 | 0* | 4,164,492 | 4,164,492 | 4,747,921 |
| 52 | 91 | 190,118.10 | 190,118.10 | 0* | 4,231,892 | 4,231,892 | 4,788,044 |
| 53 | 92 | 190,118.10 | 190,118.10 | 0* | 4,302,583 | 4,302,583 | 4,823,196 |
| 54 | 93 | 190,118.10 | 190,118.10 | 0* | 4,378,022 | 4,378,022 | 4,863,993 |
| 55 | 94 | 190,118.10 | 190,118.10 | 0* | 4,459,324 | 4,459,324 | 4,905,256 |
| | | 10,456,495.50 | | 3,912,244 | | | |
| 56 | 95 | 190,118.10 | 190,118.10 | 0* | 4,547,843 | 4,547,843 | 4,948,053 |
| 57 | 96 | 190,118.10 | 190,118.10 | 0* | 4,642,924 | 4,642,924 | 4,995,463 |
| 58 | 97 | 190,118.10 | 190,118.10 | 0* | 4,745,587 | 4,745,587 | 5,039,914 |
| 59 | 98 | 190,118.10 | 190,118.10 | 0* | 4,855,688 | 4,855,688 | 5,088,761 |
| 60 | 99 | 190,118.10 | 190,118.10 | 0* | 4,973,451 | 4,973,451 | 5,142,548 |
| | | 11,407,095.00 | | 3,912,244 | | | |

This Illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

See Narrative Summary page for Important information and Tabular Detail Page for Guaranteed Values.

Aviva 64

## INDIANAPOLIS LIFE INSURANCE COMPANY
### LIFE INSURANCE ILLUSTRATION
PenPro

ASSUMPTIONS:
Vladimir Kushnir
Issue Age 39 Standard Tobacco
$4,514,517 Selected Face Amount

Date Prepared: 02/05/2003
Date of Birth: 09/11/1963
Initial Annual Contract Premium: $190,118.10

### BASIC LEDGER

| Policy Year | Attained Age | Annual Premium | Amount Surrendered | Annual Outlay | Current Accumulated Value at 5.30% (Non-Guaranteed) | Current Net Cash Value at 5.30% (Non-Guaranteed) | Current Death Benefit at 5.30% (Non-Guaranteed) |
|---|---|---|---|---|---|---|---|
| 61 | 100 | 190,118.10 11,597,204.10 | 190,118.10 | 0' 3,512,244 | 5,109,773 | 5,109,773 | 5,111,968 |

This Illustration is not valid unless it includes the COVER PAGE, NARRATIVE SUMMARY, NUMERIC SUMMARY, TABULAR DETAIL, BASIC LEDGER, and THE STATEMENT of UNDERSTANDING PAGE.

See Narrative Summary page for Important Information and Tabular Detail Page for Guaranteed Values

Aviva 65

INDIANAPOLIS LIFE INSURANCE COMPANY
STATEMENT OF UNDERSTANDING: PenPro

(Whole Life Insurance with Current Interest)

I have received the attached life insurance illustration including the explanatory notes and have discussed it with my insurance representative. I understand the following:

- The Policy referred to in this illustration was specifically designed to assist in certain tax planning situations. This policy is not recommended if the policyowner expects to terminate the policy or withdraw cash values within the first ten years.

- This illustration is not part of the policy and is intended to demonstrate only the general pattern of premiums, cash values, and death benefits for the policy shown. Actual values will likely differ from illustrated values because of periodic changes in the company's interest crediting rate, cost of insurance charges, and expense charges.

- The values shown in this illustration are based upon consumer input or assumptions regarding the proposed insured's age, sex, insurability, interest rates, and the particular plan and benefits selected. The values further assume the policy is issued exactly as shown, all scheduled premiums are paid in a timely manner, and the policy loans and partial withdrawals, if any, are exactly as illustrated. Changes in any of these assumptions will invalidate this illustration.

- If the policy is issued other than as applied for, the policyowner should request a new illustration using the same premiums, benefits, and assumptions that were used in issuing the actual policy.

- Values shown in columns not identified as 'guaranteed' are based upon current interest rate, mortality and expense assumptions and are not guaranteed.

- The current policy expense charges and cost of insurance rates of the policy will increase significantly in the tenth policy year. It is recommended the policyowner review his or her policy on or before the tenth year to determine the continued suitability for his or her life insurance needs.

- This policy does not participate in company dividends.

- This policy contains substantial surrender charges in policy years one through nine. The schedule of surrender charges is stated on page three of the policy.

- Premiums are always required for the entire period stated in the policy. The use of existing policy values to pay future premiums will result in a decrease in the policy's cash value and may result in a decrease in the death benefits payable. Failure to pay the required premiums could result in termination of the policy.

- No person other than an officer of Indianapolis Life has the authority to waive or modify any questions in the application or to make any promises not contained in the policy.

- When a policy is issued, the policyowner will receive a Life Insurance Buyer's Guide. The policyowner should carefully review this information.

- The policy may be returned for a full refund of premiums for any reason within the 'freelook' period as stated on page one of the policy.

- Each year the policyowner will receive an annual statement showing values based upon the actual performance of the policy.

- The policyowner may call Indianapolis Life at 1-800-428-7031 if he or she has any questions.

Issue State: Pennsylvania
Form Number A 9-96

Page 12 of 12

Thursday, 02/06/2003
Version: 002.006(I)

Aviva 66

# EXHIBIT

# "4"

# INDIANAPOLIS LIFE

*An AMERUS Company*

## INDIANAPOLIS LIFE INSURANCE COMPANY
Home Office: 2960 North Meridian Street, Indianapolis, IN 46208

## READ YOUR POLICY CAREFULLY

**Right To Examine Your Policy** – You may return this policy for any reason within 10 days after you receive it. If returned, this policy will be void from the beginning. Any premium paid will be repaid to you.

**Indianapolis Life Insurance Company** promises to pay the Death Benefit to the beneficiary upon receipt at our Home Office of due proof of death of the Insured, subject to the terms and conditions of this policy. All benefits will be payable subject to the policy provisions.

**The Death Benefit** is the greater of:
1) the Face Amount shown on Page Three; or
2) the Accumulation Value multiplied by the appropriate Death Benefit Factor shown on Page Four.

**The First Premium Is Payable** on or before delivery of this policy. Further premiums are due after the Date of Issue at the intervals and for the period specified on Page Three during the lifetime of the Insured.

**This Policy** is a legal contract between the Owner ("you", "your") and the Indianapolis Life Insurance Company ("we", "us", "our" and "Company").

Signed for us on the Date of Issue at the Home Office of the Company at 2960 North Meridian Street, Indianapolis, Indiana 46208.

Secretary                                   President

### WHOLE LIFE INSURANCE POLICY
### WITH CURRENT INTEREST
#### Non-Participating
#### Insurance Payable At Death
#### Level Premiums Payable For Life

A9-96                                                     (Rev. 01/01)

## SECTION 1 - GUIDE TO POLICY PROVISIONS

| SECTION | PROVISION | PAGE |
|---|---|---|
| 2 | **POLICY SPECIFICATIONS** | 3 |
| 3 | **GENERAL PROVISIONS** | 5 |
| | The Contract | |
| | Incontestability | |
| | Change of Provisions | |
| | Misstatement of Age | |
| | Payments by the Company | |
| | Suicide Exclusion | |
| 4 | **PREMIUM PAYMENT AND REINSTATEMENT** | 5 |
| | Premiums | |
| | Grace Period | |
| | Automatic Premium Loan | |
| | Premium Deposit Account | |
| | Reinstatement | |
| 5 | **CHANGE OF PLAN** | 6 |
| 6 | **POLICY VALUES AND LOANS** | 7 |
| | Cash Value | |
| | Net Cash Value | |
| | Surrender Value | |
| | Cash Surrender | |
| | Surrender Charge | |
| | Partial Surrender to Pay Premiums | |
| | Accumulation Value | |
| | How We Calculate a Monthly Deduction | |
| | How We Calculate the Risk Premium for the Basic Policy | |
| | Risk Rates | |
| | No Dividends | |
| | Accumulation Value Interest Rate | |
| | Method of Determining Guaranteed Cash Value and Net Single Premiums | |
| | Options on Lapse | |
| | Policy Loans | |
| 7 | **OWNERSHIP** | 9 |
| | Rights of Ownership | |
| | Transfer of Ownership | |
| | Collateral Assignment | |
| 8 | **BENEFICIARIES** | 10 |
| | Designation and Change of Beneficiaries | |
| | Succession in Interest of Beneficiaries and Payees | |
| | Form and Effective Date | |
| | General | |
| 9 | **SETTLEMENT OPTIONS** | 10 |
| | Payment | |
| | Selection | |
| | Payments to a Corporation | |
| | Options | |
| | Payment Frequency | |
| | Due Date of First Payment | |
| | Alternate Larger Life Income | |
| | Supplementary Contract | |
| | Death of Payee | |
| | Income Protection | |
| | Surplus Interest | |
| | Installment Tables | |

The Application and any additional forms will follow Page 13.

SECTION 2 - POLICY SPECIFICATIONS

POLICY NUMBER    000100098974              **$    4614517 **   FACE AMOUNT

      INSURED    VLADIMIR KUSHNIR

DATE OF ISSUE    FEBRUARY 03, 2003        WHOLE LIFE INSURANCE    PLAN
                                          WITH CURRENT INTEREST

AGE AT ISSUE   39
                                                  TOBACCO USE
                                                  STANDARD   POLICY CLASS


MONTHLY
ANNIVERSARY DAY IS DAY   3 OF THE MONTH        7.4% IN ADVANCE   LOAN INTEREST
                                                                RATE - SEE
                                                                SECTION 6.15


-------- BENEFITS AND PREMIUMS --------

| BENEFIT | ANNUAL PREMIUM | NUMBER OF YEARS PAYABLE |
|---|---|---|
| BASE POLICY | $190,118.10 | LIFETIME |
| TOTAL PREMIUM | $190,118.10 | |


THE PREMIUM SHOWN ABOVE IS PAYABLE FOR THE NUMBER OF YEARS INDICATED DURING THE
LIFETIME OF THE INSURED AT INTERVALS OF 12 MONTH(S), COMPUTED FROM THE DATE OF
ISSUE.

NON-TRANSFERABLE - NOTWITHSTANDING ANY PROVISION TO THE CONTRARY, THIS POLICY
MAY NOT BE SOLD, ASSIGNED, DISCOUNTED, OR PLEDGED AS COLLATERAL FOR A LOAN OR AS
SECURITY FOR THE PERFORMANCE OF AN OBLIGATION OR FOR ANY OTHER PURPOSE TO ANY
PERSON OTHER THAN THIS COMPANY, EXCEPT THAT THIS NON-TRANSFERABLE PROVISION
SHALL NOT PRECLUDE THE TRANSFER OF THIS POLICY TO THE INSURED WHERE SUCH
TRANSFER REPRESENTS AN INTEREST TO WHICH HE IS ENTITLED PURSUANT TO THE
PROVISION OF ANY TRUST AGREEMENT UNDER WHICH THIS POLICY IS PURCHASED.

NONPARTICIPATING EXTENDED TERM INSURANCE, IF CONTAINED IN THIS POLICY, SHALL NOT
BE AN OPTION ON LAPSE UNLESS THE OWNER SPECIFICALLY SO REQUESTS IN WRITING AT
THE TIME OF LAPSE.

SCHEDULE OF ADDITIONAL BENEFITS


NONE


3-9-97                          PAGE THREE

POLICY NUMBER:   000100098974

INSURED:   VLADIMIR KUSHNIR

TABLE OF GUARANTEED CASH AND OTHER VALUES
WHOLE LIFE INSURANCE WITH CURRENT INTEREST

VALUES FOR THIS POLICY APPEAR BELOW.   THESE VALUES ASSUME THAT PREMIUMS HAVE
BEEN PAID TO THE END OF THE POLICY YEAR INDICATED AND THERE IS NO INDEBTEDNESS.

ISSUE AGE   39

| END OF POLICY YEAR | GUAR. CASH VALUE | PAID UP INSURANCE | EXTENDED TERM INS. YRS. | DAYS |
|---|---|---|---|---|
| 1 | 0.00 | 0.00 | 0 | 0 |
| 2 | 0.00 | 0.00 | 0 | 0 |
| 3 | 56,758.00 | 185,274.00 | 2 | 31 |
| 4 | 126,345.00 | 398,644.00 | 4 | 33 |
| 5 | 197,362.00 | 602,178.00 | 5 | 263 |
| 6 | 269,949.00 | 796,801.00 | 7 | 27 |
| 7 | 343,873.00 | 982,373.00 | 8 | 61 |
| 8 | 419,367.00 | 1,159,969.00 | 9 | 18 |
| 9 | 496,337.00 | 1,329,764.00 | 9 | 279 |
| 10 | 574,922.00 | 1,492,505.00 | 10 | 131 |
| 11 | 654,938.00 | 1,648,122.00 | 10 | 314 |
| 12 | 736,384.00 | 1,797,003.00 | 11 | 97 |
| 13 | 819,169.00 | 1,939,407.00 | 11 | 213 |
| 14 | 903,060.00 | 2,075,301.00 | 11 | 300 |
| 15 | 987,783.00 | 2,204,659.00 | 11 | 360 |
| 16 | 1,073,152.00 | 2,327,688.00 | 12 | 35 |
| 17 | 1,159,212.00 | 2,444,917.00 | 12 | 59 |
| 18 | 1,245,827.00 | 2,556,520.00 | 12 | 71 |
| 19 | 1,333,180.00 | 2,663,121.00 | 12 | 71 |
| 20 | 1,421,317.00 | 2,765,093.00 | 12 | 61 |
| ATTAINED AGE | | | | |
| 60 | 1,510,377.00 | 2,862,873.00 | 12 | 40 |
| 62 | 1,690,436.00 | 3,045,922.00 | 11 | 329 |
| 65 | 1,959,739.00 | 3,288,327.00 | 11 | 150 |

3-9-97                              PAGE THREE (CONTINUED)

POLICY NUMBER:   000100098974

INSURED:   VLADIMIR KUSHNIR

THE NET MODAL PREMIUM FOR THIS POLICY IS    190,118.10

TABLE OF SURRENDER CHARGES

| POLICY YEAR | SURRENDER CHARGE |
|---|---|
| 1 | 641,417.86 |
| 2 | 641,417.86 |
| 3 | 641,417.86 |
| 4 | 641,417.86 |
| 5 | 641,417.86 |
| 6 | 513,134.29 |
| 7 | 384,850.71 |
| 8 | 256,567.14 |
| 9 | 128,283.57 |
| 10+ | 0.00 |

TABLE OF MAXIMUM MONTHLY EXPENSE CHARGES

| POLICY YEAR | MAXIMUM MONTHLY EXPENSE CHARGE |
|---|---|
| 1 | 14,628.01 |
| 2+ | 7,936.96 |

3-9-97                              PAGE THREE (CONTINUED)

# INDIANAPOLIS LIFE INSURANCE COMPANY

### Indianapolis, Indiana

## AMENDMENT TO APPLICATION

Attached to and made a part of the application for

Policy No. 000100098974 Name VLADIMIR KUSHNIR _____ Date 11/07/02

I hereby request the delivery of the above numbered policy issued by the COMPANY, on FEBRUARY 03, 2003 and for the purpose of inducing the Company to deliver said policy, I hereby ratify and confirm all statements, declarations and answers made in my application for this policy, and in any continuations and amendments thereto, including all statements made to the Medical Examiner or made in lieu of examination.

I hereby certify that all persons proposed for insurance are in the same condition as stated in the application ; and since the date of the application, no such person has (1) suffered an illness or injury nor consulted a physician or practitioner; or (2) has changed his/her occupation; (3) and that no company has declined to grant insurance on the life or health of any such person or offered to issue a policy for less benefit or a larger premium than that applied for.

I hereby declare that all of the above statements are true, to the best of my knowledge and belief, with the following exceptions

(IF THERE ARE NO EXCEPTIONS, SO STATE) _____

_____

Witness _____     _Vladimir Kushnir_____
                                     Signature of Insured (Parent or Guardian if a minor)

Date _____ , _____     Address _____

                                              _____

This form is to be used when evidence of insurability is required
By the Company for deliveries of new policies.

*Form 624 R6/97*

000100098974

## INDIANAPOLIS LIFE INSURANCE COMPANY

This amendment must be signed by the **PROPOSED INSURED** (or APPLICANT in the case of juvenile contracts). It must be witnessed by the same person who witnessed the **PROPOSED INSURED'S** (or **APPLICANT'S**) signature on the original application.

This requirement must be met before the policy is delivered. The amendment must be returned promptly to the Home Office. A copy of this amendment has been completed and attached to this policy.

If a change must be made to this amendment, the policy must be promptly returned to the Home Office. Complete information about the change must be sent also.

**AMENDMENT** to the application on the life(s) of: VLADIMIR KUSHNIR

**BEARING DATE**: 11/07/02

FACE AMOUNT CHANGED TO:   $4,614,517

I request delivery of the above numbered policy. In order to induce the Company to deliver said policy, I confirm all statements, and answers made in my application for this policy. I also confirm all statements made in any continuations or amendments thereto, including all statements made to the Medical Examiner or made in lieu of examination.

I certify that all persons proposed for such insurance are in the same condition as stated in the application; and since the date of the application, no such person has (1) suffered an illness or injury nor consulted a physician or practitioner; or (2) has changed his/her occupation; I also certify that no company has declined to grant insurance on the life or health of any such person; and no company has offered to issue for less benefit or a larger premium than that applied for.

I declare that all of the above statements are true, to the best of my knowledge and belief, with the following exceptions (**IF THERE ARE NO EXCEPTIONS, SO STATE** _____
_____

I agree that the statements above shall be a part of my application as fully as though made in said application.

Signed on this _____ day of _____ , _____

_____        _____
(Witness)                              VLADIMIR KUSHNIR

*FORM 8.1 R2/97*

☐ **AMERUS** Life    ☑ **INDIANAPOLIS LIFE** *An AmerUs Company*

## Application for Insurance

Please check appropriate company. ONE BOX MUST BE CHECKED.
(In this application, "Company" refers to the insurance company whose name is checked above.)

### APPLICANT INFORMATION

**1. PROPOSED INSURED**
NAME (FIRST, MIDDLE LAST) Vladimir Kushnir
ADDRESS 42 Shelbourne Rd.   APT #   EMAIL:
CITY Rochboro Rat   HOME PH. (267) 757-04-- BUS. PH. (215) 342-6016
STATE PA ZIP 18954 COUNTY/PARISH Buch   SEX ☑ M ☐ F MAIDEN NAME
BIRTH DATE 09/21/63 BIRTH STATE Ukraine   SOCIAL SECURITY NUMBER 1.1.0.76.4.4.6.1
DRIVER'S LICENSE #23 391 673   STATE PA   MARITAL STATUS ☑ Married ☐ Single ☐ Divorced or Separated ☐ Widow or Widower
EMPLOYER Tornado   HOW LONG? 7yr OCCUPATION/DUTIES Pres/CEO
IF MULTIPLE LIFE PRODUCT, (2ND APP REQUIRED FOR MULTIPLE LIFE)
JOINT INSURED NAME (1st):     (2nd):

**2. OWNER (Insured, unless otherwise indicated)** ☐ INDIVIDUAL ☐ BUSINESS ☑ TRUST (date of trust) _____
NAME V4 MANAGEMENT LLC PENSION PLAN & TRUST   BIRTH DATE
ADDRESS 42 Shelbourne Rd.
CITY Richbor   STATE PA ZIP 18954 COUNTY Bucks
RELATIONSHIP TO PROPOSED INSURED Trust   SOCIAL SECURITY # OR TAXPAYER ID # 86-6317625
JOINT OWNER   SOCIAL SECURITY # OR TAXPAYER ID #
CONTINGENT OWNER (If none specified, policy provisions will apply.)
MAIL NOTICES TO ☑ INSURED ☐ OWNER ☐ OTHER (specify)
OTHER NOTICE ADDRESS   CITY   STATE   ZIP

**3. PRIMARY BENEFICIARY(IES)** – Applies to primary insured only. (If trust, complete name and date of trust.)
(If necessary, use an additional page for additional details, signature of owner & date.)

| PRINT FULL NAME | BIRTH DATE | RELATIONSHIP | PERCENTAGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| V4 MANAGEMENT LLC PENSION PLAN & TRUST | | | 100% | 16-6317525 |

**4. CONTINGENT BENEFICIARY(IES)**

| PRINT FULL NAME | BIRTH DATE | RELATIONSHIP | PERCENTAGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| | | | | |

### POLICY INFORMATION

**5. PRIMARY INSURED** ☑ NONSMOKER/NONTOBACCO ☐ SMOKER/TOBACCO
BASE PLAN Pen Pro   AMT. OF INS. $ 5,595,000.—   ☑
ADDITIONAL COVERAGE   AMT. OF INS. $ .00 AMT. OF PREM. $
ADDITIONAL COVERAGE   AMT. OF INS. $ .00 AMT. OF PREM. $
RIDERS (COMPLETE SUPPLEMENTAL APPLICATION IF APPLICABLE)
☐ WAIVER TYPE   ☐ OTHER RIDERS (TYPE/AMOUNT):
☐ SPOUSE RIDER $   ☐ CHILD RIDER $

**6. UL DEATH BENEFIT OPTION:** ☑ LEVEL ☐ INCREASING
DIVIDEND OPTION (IF APPLICABLE) ☐ ADD TO ACCOUNT VALUE ☐ CASH

| PREMIUM DIRECTION | INTEREST CREDITING STRATEGY | Equity Indexed Strategy | PERCENT |
|---|---|---|---|
| | INTEREST CREDITING STRATEGY | Fixed-Term Strategy | PERCENT |
| | INTEREST CREDITING STRATEGY | | PERCENT |

**7. WHOLE LIFE** DIVIDEND OPTION ☐ PUA ☐ CASH ☐ REDUCE PREMIUM ☐ OTHER
APL (IF APPLICABLE) ☐ NO DIRECT RECOGNITION (IF AVAILABLE) ☐ YES

Form 1452S 6/02 AZ     *V1A926050301*     page 1

**PREMIUM INFORMATION**

8. PREMIUM   PLANNED PREMIUM ___140,118.10___   ADDITIONAL PREMIUM (Lump Sum) _____
BILLING FREQUENCY ☑ANNUAL ☐ SEMI-ANNUAL ☐ QUARTERLY ☐ PAC (Complete Authorization and enclose VOID check.) Other____
☐ GOVT. ALLOTMENT (if available) ☐ MONTHLY GROUP BILLING   List Bill # _____
HAS THE PREMIUM FOR THE POLICY APPLIED FOR BEEN GIVEN TO THE AGENT IN EXCHANGE FOR THE CONDITIONAL
LIFE INSURANCE AGREEMENT? ☐ YES ☐ NO   AMOUNT $ _____   HOW PAID? ☐ CHECK ☐ OTHER (specify) _____
ADDITIONAL POLICY SPECIFICATIONS
POLICY DATE (optional) _____   TAX QUALIFICATION TYPE _____   ☐ SHORT TERM COVERAGE TO POLICY DATE
OTHER _____

**NON-MEDICAL INFORMATION**

9. INSURANCE IN FORCE ON PROPOSED INSURED
a. Are any life insurance or annuity contracts in force? ....  ............ .............. ...... ..... ....... ............ ☑Yes ☐No
If yes, complete section below. (Attach separate sheet if necessary)

| Company | Amount | WP? | Personal/Business | Year Issued | Replacing ? | Amount ADB |
|---|---|---|---|---|---|---|
| Cincinnati Life | 1,200,000 | | Personal | 2000 | No | |

b. Will any annuity or life insurance presently or recently inforce be replaced or changed by this policy applied for? ....... ......... ...........☐ Yes ☑No
c. Have you ever been declined, rated, or had coverage modified or withdrawn, or reinstatement declined by any insurance company? ....,..... ...☐ Yes ☑No
d. Within the last year, has any other life, health or long term care insurance been issued or applied for, or is any to be applied for? ...............☐ Yes ☑No

10. OTHER NON-MEDICAL INFORMATION
a. Do you use any form of tobacco or nicotine based products? ......................................... ☑Yes ☐No
If no, have you used any form of tobacco or nicotine based products in the past 5 years? ....................... ......................☐ Yes ☐ No
If yes, when did you last use tobacco or nicotine based products?
Type _____   Quantity _____
b. Have you engaged in the last 3 years, or do you intend within the next 12 months to engage:
1. In any aviation activity other than as a passenger? ...................................................... ..☐ Yes ☑No
2. In ballooning, gliding, boat or vehicle racing, mountain or rock climbing, parachuting, sky diving, underwater diving
or any other hazardous sport or activity? ............................................................. ☐ Yes ☑No
c. Within the last 5 years, have you filed for bankruptcy (personal or business)? ................. .......................☐ Yes ☑No
d. Within the last 5 years, have you been charged with reckless driving, driving under the influence of alcohol or drugs, or 2 or more moving
violations, or had your driver's license revoked or suspended, or received a warning letter? ...................... ☐ Yes ☑No
e. Have you been arrested for an illegal activity, acquired a criminal record, or are you currently on probation, parole, or under investigation? ........☐ Yes ☑No
f. Are you a member of or do you contemplate joining one of the Armed Forces or an active or reserve military unit? .........................☐ Yes ☑No
g. Have you in the past 2 years traveled or do you intend to travel or live outside the United States or Canada? ................☐ Yes ☑No
h. Is any proposed insured, owner or beneficiary a resident or citizen of or an entity organized under the laws of a country other than the U.S.? .....☐ Yes ☑No
i. Complete appropriate supplement or provide details here for any Yes answer in this section.

_____
_____
_____

11. PHYSICIAN INFORMATION
a. Name and address of your doctor(s) or health care provider(s) _____

b. When did you last consult a doctor and why? _____

c. What medication(s) (prescribed or over the counter) are you now taking? (if none, so state) _____

Form 14628 6/02 AZ                                                                page 2

## TAXPAYER IDENTIFICATION

**Instructions (Section references are to the Internal Revenue Code.)**

*Use this form to report the taxpayer identification number (TIN) of the policy owner.*

*Payers must generally withhold a specified percentage of taxable interest, dividend, and certain other payments if you fail to furnish payors with the correct taxpayer identification number (this is referred to as backup withholding). For most individual taxpayers, the taxpayer identification number is the social security number.*

To prevent backup withholding on these payments, be sure to notify payors of the correct taxpayer identification number and properly certify that you are not subject to backup withholding under Section 3406(a)(1)(C).

Use this area to certify that the taxpayer identification number you are giving the payer is correct and that you are not subject to backup withholding.

**Backup Withholding** - You are subject to backup withholding if:

(1) You fail to furnish your taxpayer identification number to the payer; OR
(2) The Internal Revenue Service (IRS) notifies the payer that you furnished an incorrect taxpayer identification number, OR
(3) You are notified that you are subject to backup withholding (under Section 3406(a)(1)(C)); OR
(4) For an interest or dividend account opened after December 31, 1983, you fail to certify to the payer that you are not subject to backup withholding under (3) above, or fail to certify your taxpayer identification number.

**Payees Exempt From Backup Withholding** - Certain payees, such as corporations, government agencies, etc. may be exempt from backup withholding.

**What Number to Give the Payer** - Give the social security number or employer identification number of the record owner of the account. If the account belongs to you as an individual, give your social security number. If the account is owned by a corporation, give the employer identification number of the corporation.

**Obtaining a Number** - If you don't have a taxpayer identification number or you don't know your number, obtain Form SS-5, Application for a Social Security Number Card, or Form SS-4, Application for Employer Identification Number, at the local office of the Social Security Administration or the Internal Revenue Service and apply for a number. Write "applied for" in place of your number. When you get a number, submit a new Form W-9 to the payer.

## AUTHORIZATION AND ACKNOWLEDGEMENT

I understand the information obtained by the use of this authorization will be used by the Company or its reinsurers to determine eligibility for insurance or benefits, that I may request to receive a copy of this authorization and to be personally interviewed if an investigative consumer report is prepared in connection with this application and not to have personal information disclosed for marketing purposes. Any information obtained will not be released by the Company, its reinsurers, or representatives to any person or organization except to reinsuring companies, the Medical Information Bureau, or other persons or organizations performing business or legal services in connection with my application, claim, as may be permitted or required by law, or as I may further authorize.

I acknowledge receipt of the Disclosure Notice to Proposed Insured.

I authorize any physician, medical practitioner, hospital, clinic, pharmaceutical database, other medical or medically-related facility, insurance company, the Medical Information Bureau (MIB), consumer reporting organization, or employer having information available as to diagnosis, treatment, or prognosis with respect to any physical or mental condition, evaluation, or treatment of me including without limitation information about drug use, alcoholism, H.I.V., or mental illness and any other non-medical information about me to give to the Company, its reinsurers, or its authorized representatives any such information. Any other non-medical information may consist of, but is not limited to, income, net worth, business information, hazardous sports, avocations, driving history or occupation.

To facilitate rapid submission of such information, I authorize all said sources, except MIB, to give such records or knowledge to any agency employed by the Company to collect and transmit such information.

I agree that this authorization shall be valid for 2 years, except for HIV-related information which can only be disclosed for a period not to exceed 180 days, from the date shown below. A photographic copy of this authorization shall be as valid as the original.

## AGREEMENTS AND REPRESENTATIONS

It is hereby represented that the answers and statements on the application(s) and any Supplements required are complete, true and correctly recorded. A copy of the application(s) and any Supplements shall be a part of the policy. No other changes will be made unless the owner agrees in writing.

It is agreed that the policy and copy of the application(s) and any supplements in the policy constitute the entire contract and that information not recorded on the application(s) and any supplements will not be treated as known to the Company. It is also agreed that the policy cannot be enlarged or modified except in writing and signed by an authorized officer of the Company and that the Agent has no authority to make any promise, representation or waiver regarding coverage or the provisions or terms of the application or policy. It is understood that all payments after the first are to be provided directly to the Company and that the Agent has no authority or responsibility to sign, endorse, deposit or process any subsequent payments made on the policy. Acceptance of the policy shall constitute agreement to the approval of the parts and provisions of the policy.

If a Conditional Life Insurance Agreement was delivered in consideration of the payment of the first premium and is in effect, its provisions and terms will apply. Otherwise the policy will take effect and coverage will begin on the issue date specified in the policy if the full first premium is paid, the Proposed Insured(s) is (are) living, and the answers and statements in the application(s) and any supplements continue to be complete and true at the time of delivery of the policy.

Under penalties of perjury, I certify that (1) the social security or federal tax identification number shown on page 1 of this application for me as the owner of this policy is my correct taxpayer identification number, AND (2) I am a U.S. person (including a U.S. resident alien), AND (3) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the IRS that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding. NOTE: You must cross out item 3 in the above certification if you have been notified by the IRS that you are currently subject to backup withholding. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

## SIGNATURES

Signed / Dated at Phoenix, Arizona
City, State

On 11/7/02
Date

X [signature]
Signature of Licensed Agent

Parent/Guardian or Witness (if required)

X V. Kushnir
Signature of Proposed Insured

X V. Kushnir
Signature of Owner if other than Proposed Insured

Signature of Joint Owner if other than Proposed Insured

If Owner is a corporation, business firm or trust, give full name below and an Authorized person must sign and provide title

Vladimir Kushnir Pension Plan & Trust, Vladimir Kushnir, Trustee

*1492005020 4*

**AMERUS Life**

AmerUs Life
Insurance Company
P.O. Box 4905
Des Moines, IA 50306-3590
Fax: 1-800/531-0038

**INDIANAPOLIS LIFE** *An AMERUS Company*

Indianapolis Life
Insurance Company
P. O. Box 14590
Des Moines, IA 50306-3590
Fax: 1-888/329-1329

*Application For Insurance*
*Medical Examination*
*Part 1*

Please check appropriate company. ONE BOX MUST BE CHECKED.
(In this application, "Company" refers to the insurance company whose name is checked above.)

| Name of Proposed Insured | Sex | Birth Date |
|---|---|---|
| *Vladimir Kushnir* | ☒ Male ☐ Female | 09 / 21 / 63 month day year |

| Social Security Number | Name of Agent |
|---|---|
| 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 | *Todd Nelson* |

### MEDICAL HISTORY RECORDED BY EXAMINER (answers are to be handwritten by examiner)

1. (a) Name and address of your doctor(s) or health care provider(s): *Dr Berenson*

   (if none, so state) *Phila, Pa.*

   (b) When did you last consult a doctor and why? *Does not recall*

   (c) Are you now under observation or treatment? ☐ Yes ☒ No

   (if Yes, describe) _____

   (d) What medication(s) (prescribed or over the counter) are you now taking? *none*

   (if none, so state) _____

2. Have you ever had or been seen for:

   a. Disease of the heart or circulatory system, including high blood pressure, heart attack, coronary artery disease, or chest pain? ........................ ☐ Yes ☒ No

   b. Heart murmur, rhythm abnormality, heart catheterization, echocardiogram or an exercise treadmill test? ...................................................... ☐ Yes ☒ No

   c. Cancer, tumors, lymphoma, leukemia, or any growths, lesions, polyps? .............. ☐ Yes ☒ No

   d. Diabetes, thyroid, glandular or endocrine disorder? ............................... ☐ Yes ☒ No

   e. Respiratory disorders including asthma, chronic bronchitis, emphysema, pneumonia, shortness of breath, or abnormal chest x-ray? .................................. ☐ Yes ☒ No

   f. Disorder of the stomach, liver, pancreas or intestinal tract, including ulcerative colitis, Crohn's disease, or cirrhosis? ........................................... ☐ Yes ☒ No

   g. Disorder of the kidneys, prostate, bladder, reproductive organs, sexually transmitted diseases, sugar, albumin or blood in urine? ............................................. ☐ Yes ☒ No

   h. Stroke, transient ischemic attack (TIA), Parkinson's, multiple sclerosis, seizures, epilepsy, chronic headaches, memory changes or fainting? ...................... ☐ Yes ☒ No

   i. Anxiety, depression, attempted suicide, attention deficit disorder or psychosis, mental or nervous system disorder? ............................................... ☐ Yes ☒ No

   j. Anemia, hepatitis, or any blood disorder? ....................................... ☐ Yes ☒ No

   k. Chronic back pain, arthritis, loss of limb, paralysis, muscle weakness or disease? ........ ☐ Yes ☒ No

3. Have you ever:

   a. been diagnosed by a medical professional as having or been treated for AIDS or ARC (AIDS-related complex)? ................................................. ☐ Yes ☒ No

   b. tested positive for antibodies to the AIDS Human T-Cell Lymphotropic (HIV) virus? ......... ☐ Yes ☒ No

   c. requested or received a benefit, military deferment, discharge or rejection, payment or pension because of a disability, injury, or sickness? ..................... ☐ Yes ☒ No

4. Within the last 5 years, other than as reported in sections 1 - 3, have you:

   a. Seen a doctor, health care provider, counselor, therapist, or had any illness, injury, surgery, diagnostic test or treatment, or been advised to have any diagnostic test or treatment, or been advised to have any diagnostic test, surgery or treatment not yet completed? ...... ☐ Yes ☒ No

   b. Been a patient of a clinic or hospital emergency room, or had any diagnostic test that was not normal? .................................................... ☐ Yes ☒ No

**DETAILS FOR YES ANSWERS - give the question number - circle applicable item. Include: 1. Nature and severity, frequency of attacks, specific diagnosis and treatment; 2. Dates and duration; 3. Name and address of each physician and hospital.**



continued on page 2

14932-5/02 PA

* 1 4 9 3 2 0 5 0 2 0 1 *

*Vladimir Kushner*

5. Within the last 5 years have you:
   a. Used any drug, narcotic or controlled substance not prescribed by a physician, or been arrested, counseled, treated, or participated in a support group because of alcohol, controlled substance or drug use? .......................................... ☐ Yes ☒ No
   b. Used or are you currently using alcoholic beverages? ............................ ☐ Yes ☐ No
      If yes, complete the following: # of times per month  # per occasion  Kind of beverage

      *5 dry glasses produkta per month*

Check here ☐ if additional medical history or details have been recorded on page 4 or on an attachment and have the Proposed Insured date and sign that part of the form or the attachment.

6. a. Have any of your parents, brothers or sisters been diagnosed with diabetes, cancer, heart disease, or any hereditary disorders prior to age 60? ............................ ☐ Yes ☒ No
   b. Family information (natural parents, brothers, sisters):

| Family Member | Age if Living | Age at Death | Cause of Death | Family Member | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|---|---|---|---|
| Father | | 63 | *heart disease* | Mother | 67 | | |
| Brother(s) | | | | Sister(s) | | | |

7. a. Do you exercise regularly (aerobic, calisthenic, jogging or running, swimming)? .......................................... ☐ Yes ☒ No

   If Yes, describe and state how often _____

   b. Do you use any form of tobacco or nicotine based products? .................................................. ☒ Yes ☐ No
   If no, have you used any form of tobacco or nicotine based products in the past 5 years? ...................................... ☐ Yes ☐ No
   If yes, when did you last use tobacco or nicotine based products? _*today*_
   Type _*Cigarettes*_          Quantity _*1 Pack per day*_

It is represented that the answers and statements on this application are complete and true and correctly recorded.

I agree that a copy of this application shall be a part of the policy.

I authorize any physician, medical practitioner, hospital, clinic, pharmaceutical database, other medical or medically related facility, insurance company, the Medical Information Bureau (MIB), consumer reporting organization, or employer having information available as to diagnosis, treatment, or prognosis with respect to any physical or mental condition, evaluation, or treatment of me including information about drug use, alcoholism, HIV, or mental illness and any other non-medical information about me to give to the Company, its reinsurers or its authorized representatives any such information.

To facilitate rapid submission of such information, I authorize all said sources, except MIB, to give such records or knowledge to any agency employed by the company to collect and transmit such information.

I agree that this authorization shall be valid for 2 years from the date shown below and that a photographic copy of this authorization shall be as valid as the original.

Signed/Dated at _*Phila Pa*_
                 City, State

X _*Patty Burke*_
  Signature of Examiner

On _*Nov 8, 2002*_
   Date

X _*Vladimir Kushner*_
  Signature of Proposed Insured

continued on page 3

14932 - 5/02 PA

* 1 4 9 3 2 0 5 0 2 0 2 *

# INDIANAPOLIS LIFE INSURANCE COMPANY

Indianapolis, Indiana

**WHOLE LIFE INSURANCE POLICY**
**WITH CURRENT INTEREST**
**Non-Participating**
**Insurance Payable at Death**
**Level Premiums Payable For Life**

For service or information about your policy or to file a claim, contact your Indianapolis Life Agent or call the Home Office Client Services Department at 1-800-428-7031.

A9-96 B

(Rev. 01/01)

# EXHIBIT
## "5"

## AGENT'S REPORT

1. Will any annuity or life insurance presently or recently in force be replaced or changed by this policy applied for? ............ ☐ Yes ☑ No
(If Yes, and if required by state regulation, any Replacement Comparison, Notice or Statement must accompany this application.)
1035 Exchange (attach required format)  ☐ External  ☐ Internal _____

2. a. How long have you known the proposed insured?  Mes  at  Subscriter
   b. Is the proposed insured a relative of or does proposed insured have a business relationship with the agent? .......... ☐ Yes ☑ No
   If Yes, explain _____
   c. Did the agent personally see all the persons to be covered and were answers recorded exactly as given? ......... ☑ Yes ☐ No
   If No, explain and arrange for additional evidence of insurability _____

3. Is proposed insured(s) a U.S. citizen?  ☐ Yes  ☑ No  If no, how long in U.S.? _____  Type of Visa?  Permanent

4. Was any other person present to answer questions?  ☐ Yes  ☑ No  If yes, who and why _____

5. Does proposed insured and owner speak and understand English?  ☑ Yes  ☐ No

6. a. If proposed insured is a minor dependent, complete for all brothers and sisters:

| Age | Sex | Amount of Life Insurance in Force | Age | Sex | Amount of Life Insurance in Force |
|-----|-----|-----------------------------------|-----|-----|-----------------------------------|
|     |     |                                   |     |     |                                   |
|     |     |                                   |     |     |                                   |

   b. Amount of life insurance in force on each supporting parent or legal guardian $ _____

7. Medical requirements arranged  ☑ Paramedical Exam  ☐ EKG  ☐ Blood Analysis  ☐ Physician's Exam  Date Scheduled ____
   ☐ Check here if the exam has already been done  Name & Phone # of vendor _____

8. If Married.
   a. Spouse's name  Lyudmila  S  Kushnir    b. Spouse's occupation  n/a
   c. Amount of life insurance in force on spouse $ ____ n/a    d. Spouse's annual earned income $  n/a

9. What is the proposed insured's:  Annual earned income $ 486,000  Annual unearned income $ ____
   Net worth $ _____

10. a. Purpose of insurance  ☐ Business  ☑ Personal  ☐ Estate
    (If multi-purpose, give percentage of each or split the amount by purpose in remarks section below)
    b. If business:  ☐ Deferred Comp  ☐ Buy/Sell  ☐ Split Dollar  ☐ Key Person  ☐ ____
    Business net annual income $ _____  Business net worth $ _____
    Proposed insured's business life insurance in force $ _____  % of ownership _____
    Business life insurance issued or applied for on other owners, officers, partners or key person(s):

| Name and Title | % of Business Owned | Insurance Company | Amount in Force |
|----------------|---------------------|-------------------|-----------------|
|                |                     |                   |                 |
|                |                     |                   |                 |

11. ☐ Additional  ☐ Alternate policy  Amount $ _____  Plan _____
12. Remarks  SPI  pension  Plan

## AGENT'S CERTIFICATION

I certify that I saw and know the proposed insured(s) to be the person(s) described in this application and have truly and accurately recorded the information supplied by the applicant, that I know of no condition affecting the eligibility or insurability of the applicant not fully set forth in the application, and that I have made no declaration, representation, or waiver regarding coverage or the provisions or terms of the application or policy. Other than policy-related information, I have given the proposed insured or owner(s) nothing of value in connection with this application or policy. I further certify that I am licensed in the state in which this application was completed and have delivered all required notices and disclosures and fully complied with all privacy and replacement regulations. I also assume full responsibility for the delivery of the policy and the submission of the first premium.

Agency No. ___ RD00.7 - Agency Name  Soverein Insurance Management LLC
List of all agents (please print)                          Agent code#              Commission share

| | | |
|---|---|---|
| Roger K. Fuller | R.D.0.02 | 50% |
| Dennis Cuaning | DM.0.1.7 | 20% |

Signed at  Arizona          Signed (writing agent) X _____  Date  11/7/02
Phone # (602) 993-3400   E-Mail _____  Fax #  Aviva 277

Form 14926 5/02 A2                                                          page 5

# EXHIBIT

# "6"

## TABLE OF GUARANTEED RISK RATES AND DEATH BENEFIT FACTORS

| Att'd Age | Risk Rates | Death Benefit Factors | Att'd Age | Risk Rates | Death Benefit Factors | Att'd Age | Risk Rates | Death Benefit Factors |
|---|---|---|---|---|---|---|---|---|
| 18 | 0.32500 | 6.211 | 46 | 1.07500 | 2.581 | 74 | 11.23167 | 1.355 |
| 19 | 0.34000 | 6.032 | 47 | 1.16833 | 2.507 | 75 | 12 27333 | 1.334 |
| 20 | 0 34833 | 5.859 | 48 | 1 26667 | 2.435 | 76 | 13.35167 | 1.315 |
| 21 | 0 35000 | 5.690 | 49 | 1.37500 | 2.367 | 77 | 14.44000 | 1.297 |
| 22 | 0.34833 | 5.525 | 50 | 1.49167 | 2.301 | 78 | 15.52833 | 1 280 |
| 23 | 0.34333 | 5.362 | 51 | 1.62333 | 2.238 | 79 | 16 65167 | 1.264 |
| 24 | 0.33833 | 5 201 | 52 | 1.77167 | 2.178 | 80 | 17.41000 | 1.249 |
| 25 | 0 32833 | 5 043 | 53 | 1.94000 | 2.120 | 81 | 18 22583 | 1.234 |
| 26 | 0.32167 | 4.887 | 54 | 2.12833 | 2.064 | 82 | 19 12167 | 1.220 |
| 27 | 0 32000 | 4 734 | 55 | 2.32667 | 2.012 | 83 | 20.10167 | 1.206 |
| 28 | 0.32000 | 4.584 | 56 | 2.54000 | 1.961 | 84 | 21.14167 | 1.194 |
| 29 | 0.32333 | 4.438 | 57 | 2.75833 | 1.913 | 85 | 22.11167 | 1.182 |
| 30 | 0.33167 | 4.295 | 58 | 2.98833 | 1.867 | 86 | 23.06583 | 1.171 |
| 31 | 0.34333 | 4 156 | 59 | 3.22667 | 1 823 | 87 | 23.87083 | 1.160 |
| 32 | 0.35500 | 4.022 | 60 | 3.48833 | 1.780 | 88 | 24.76667 | 1.150 |
| 33 | 0.37167 | 3.892 | 61 | 3.78667 | 1.740 | 89 | 25.50500 | 1.140 |
| 34 | 0.39167 | 3 766 | 62 | 4.12500 | 1.701 | 90 | 26.27167 | 1.131 |
| 35 | 0.41667 | 3 644 | 63 | 4.51500 | 1.664 | 91 | 27.01750 | 1 121 |
| 36 | 0.44500 | 3.527 | 64 | 4.94333 | 1.628 | 92 | 27.77417 | 1.111 |
| 37 | 0.48167 | 3.414 | 65 | 5 40833 | 1 595 | 93 | 28.75750 | 1.100 |
| 38 | 0.52333 | 3 305 | 66 | 5 88833 | 1 563 | 94 | 30 14167 | 1.088 |
| 39 | 0.57167 | 3 200 | 67 | 6.38833 | 1 533 | 95 | 32.48917 | 1.076 |
| 40 | 0.62500 | 3.100 | 68 | 6.89000 | 1 504 | 96 | 36.51000 | 1.062 |
| 41 | 0.69000 | 3 004 | 69 | 7.42667 | 1.476 | 97 | 43.78833 | 1.048 |
| 42 | 0.75500 | 2.912 | 70 | 8.01000 | 1.450 | 98 | 57.52083 | 1.034 |
| 43 | 0.82833 | 2.824 | 71 | 8.67000 | 1.424 | 99 | 83 33333 | 1.020 |
| 44 | 0.90333 | 2.739 | 72 | 9 42667 | 1.400 | | | |
| 45 | 0.99000 | 2 659 | 73 | 10 28667 | 1 377 | | | |

Aviva 10

## SECTION 3 — GENERAL PROVISIONS

### 3.1     The Contract
This is your policy. We issued it in consideration of your application and the payment of premiums. This policy and the application, a copy of which is attached to it, make up the entire contract. Except as provided under Section 3.6, we agree not to use any statements other than those made in the application in challenging a claim or in any attempt to avoid liability under this policy. In the absence of fraud, the statements made in the application will be treated as representations and not as warranties.

### 3.2     Incontestability
This policy will be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the Insured for two (2) years from its Date of Issue, except for any rider which has a separate incontestability clause. This means that we cannot use any misstatement to challenge a claim or avoid liability after that time.

### 3.3     Change of Provisions
No agent or other person except our President, a Vice President, or our Secretary or Assistant Secretary has authority to bind us, to extend the time in which you can pay your premiums, or to agree to change this policy. Any such change must be in writing.

### 3.4     Misstatement of Age
If the Insured's age is misstated, we will adjust any proceeds payable to the amount which the premiums paid would have purchased at the correct age according to the Insurer's rate at Date of Issue.

### 3.5     Payments by the Company
All payments by us under this policy are payable in U.S. Dollars.

### 3.6     Suicide Exclusion
If this policy is in force and the Insured commits suicide, while sane or insane, within two (2) years from the Date of Issue, we will limit our payment to a refund of premiums paid. Payment will be subject to any Indebtedness.

## SECTION 4 — PREMIUM PAYMENT AND REINSTATEMENT

### 4.1     Premiums
All premiums after the first are payable at our Home Office. All premiums are payable in U.S. Dollars. All premiums must be paid on or before its due date. A receipt signed by one of our officers will be furnished upon request. Premiums may be paid annually, semiannually, quarterly or at any mode agreed upon by us. The mode of payment may be changed at any policy anniversary by written agreement.

### 4.2     Grace Period
A 31 day grace period will be allowed for payment of any premium after the first. The policy will remain in force during this period. If the Insured dies within the grace period, any overdue premium will be paid from the proceeds of the policy. If the premium is not paid within the grace period, the policy will lapse as of the due date.

### 4.3     Automatic Premium Loan
You may request on the application or by writing to us at our Home Office that the Automatic Premium Loan Provision be used to pay premiums. If this provision is used and your policy has enough Net Cash Value, any premium you have not paid by the end of the 31 day grace period will by paid by Automatic Premium Loan. If the Net Cash Value is not enough to pay the entire premium due plus interest to the end of the current policy year, then this provision shall not apply and the Options on Lapse shall apply. If premiums are payable more often than annually, and if two or more consecutive premiums have been paid by Automatic Premium Loan, we may change the mode of premium payment to annual if the Net Cash Value is enough to pay an annual premium. You may revoke your request for this provision. This provision will not apply to any premiums not yet paid on receipt of such request.

The provisions in the Policy Loans Section will apply to an Automatic Premium Loan.

Aviva 11

**4.4     Premium Deposit Account**

While this policy is in force, we will accept deposits of at least $25.00 each on account of premiums thereafter due. There must be no Indebtedness on the policy. No deposit will be accepted, which together with the amount already in the Premium Deposit Account, shall exceed the amount needed to pay all future premiums due on this policy. We will on each policy anniversary credit the Premium Deposit Account with interest at the minimum rate of three percent (3%) per annum. We may credit interest at a higher rate. Our agents are not authorized to accept these deposits. If a premium is not paid when due and the amount in the Premium Deposit Account is enough to pay the full premium, we will pay the premium from this account. If the amount of the Premium Deposit Account is not enough to pay the full premium, we will pay the Premium Deposit Account in cash. No partial premium will be paid. The amount in the Premium Deposit Account will also be paid in cash if any of the following events occur; otherwise, this account shall not be withdrawable.

    a)     A loan is made under the policy; or
    b)     The policy is surrendered for its cash value; or
    c)     The policy is continued under the Options on Lapse clause; or
    d)     The policy shall mature as an endowment.

At the death of the Insured, the Premium Deposit Account shall be paid in one (1) sum to the primary beneficiary.

**4.5     Reinstatement**

The policy lapses at the end of the grace period. It may be reinstated during the lifetime of the Insured and within five (5) years after the due date of the unpaid premium. Within 15 days after the end of the grace period and during the lifetime of the Insured, the policy may be reinstated by payment of the overdue premium. After 15 days after the end of the grace period, reinstatement is subject to:

    a)     Evidence of insurability satisfactory to us; and
    b)     Payment of all overdue premiums with interest from the due date of each premium. The interest rate is six percent (6%) per annum, compounded annually; and
    c)     Payment or reinstatement of any policy Indebtedness existing on the due date of the unpaid premium. Interest from the due date of the unpaid premium must also be repaid or reinstated.

# SECTION 5 — CHANGE OF PLAN

You may exchange this policy for a policy of the same series on any Life plan (except Term insurance) which we would have written on the Date of Issue. This policy must be premium paying and no premium may be in default. The change shall be for the same amount of insurance and class of risk. The new policy may provide for annual dividends. The new policy shall be written as of the Date of Issue and age specified in this policy. The new policy will be on the policy form and with the premium rate used by us on that date. The new policy will be subject to any Indebtedness on this policy and any assignment of this policy.

A)    Change to a policy with a higher premium rate shall be made without proof of insurability. The cost of change must be paid, determined as follows:

    a)     On or before the 5th policy anniversary, the cost of change is the difference between the premium on the new policy and the premiums paid on this policy, with interest. The interest is at the rate of eight percent (8%) per annum compounded annually to the date of change. We will adjust for the dividends, if any, of the new policy.
    b)     After the 5th policy anniversary, the cost of change is the difference in the Cash Values of the two (2) policies plus three percent (3%) of such difference. We may require an added amount for any additional benefits which may be included in the new policy.

B)    Change to a policy with a lower premium rate will require proof of insurability. We will adjust for the difference between the Cash Values of the two (2) policies.

Our consent will be required for a change if any premium has been waived under a disability clause. Our consent will also be required if the change involves any of the following:

    a)     insurance on any other life; or
    b)     any additional benefit which increases the death or disability benefits; or
    c)     fewer than five (5) annual premiums are payable after the policy is changed.

Aviva 12

# SECTION 6 — POLICY VALUES AND LOANS

**6.1     Cash Value**
The Cash Value of this policy will be determined as follows:

1. **While No Premium is in Default.** The Cash Value will be the greater of:
   A) The Accumulation Value less the Surrender Charge, if any; or
   B) The Guaranteed Cash Value. Such Cash Value will be adjusted for any portion of a year's premium paid beyond a policy anniversary. The Guaranteed Cash Values determined as of the Date of Issue are shown in the Table of Guaranteed Cash and Other Values on Page Three.

2. **While a Premium is in Default.** Within 31 days after the due date of any unpaid premium, the Cash Value will be the same as on that due date.

If the policy is continued in force as Paid-Up Insurance, or Extended Term Insurance, the Cash Value on any day is the present value of such benefits on that day. If surrender takes place within 31 days after a policy anniversary, the Cash Value will not be less than the Cash Value as of that anniversary.

**6.2     Net Cash Value**
The Net Cash Value is the Cash Value less any indebtedness.

**6.3     Surrender Value**
The Surrender Value of this policy will be:
1. The Net Cash Value; plus
2. Any loan interest paid beyond the month of surrender.

**6.4     Cash Surrender**
You may surrender this policy for its Surrender Value. Upon surrender, this policy will terminate and the Surrender Value will be paid to you in one (1) sum. Surrender will be effective on the date we have received both this policy and a written surrender request in a form acceptable to us. We reserve the right to defer payment for not more the six (6) months from the date of surrender. If payment is deferred for thirty (30) days or more, we will pay interest on the Surrender Value at an annual rate of three percent (3%) from the date of surrender to the date of payment.

**6.5     Surrender Charge**
If the policy is surrendered during the first nine (9) policy years, a Surrender Charge will be deducted from the Accumulation Value. Surrender Charges are shown on Page Three. Your policy will terminate on the monthly deduction day on or next following the date we receive your written request for full surrender in our Home Office.

**6.6     Partial Surrender to Pay Premiums**
You may request, in writing, a partial surrender to pay  the premium for this policy, if the Accumulation Value less the Guaranteed Cash Value is greater than the total premium payment.  Surrender Charges will not be deducted on any amount surrendered to pay premiums for this policy.

**6.7     Accumulation Value**
The Accumulation Value on the Date of Issue will be the Net Modal Premium, as shown on Page Three,  less the initial Monthly Deduction.

The Accumulation Value on the first day of any policy month after the Date of Issue will be:
1. The Accumulation Value on the first day of the preceding policy month; plus
2. One month's interest on such value at the then current rate; plus
3. The Net Modal Premium received since the first day of the preceding policy month; less
4. The current Monthly Deduction; less
5. Any amount deducted to pay premiums for this policy.

The Accumulation Value during a policy month will be the Accumulation Value on the first day of such policy month plus any Net Modal Premium received since the first day of the policy month.

7 9 96                                                    PAGE SEVEN

**6.8     How We Calculate a Monthly Deduction**
Each Monthly Deduction includes:
>   1. The risk premium for the basic policy; and
>   2. A Monthly Expense Charge not to exceed the Maximum Monthly Expense Charge shown on Page Three.

**6.9     How We Calculate the Risk Premium for the Basic Policy**
The risk premium is the multiplication of the "Net Risk Amount" and the Risk Rate. "Net Risk Amount" is:
>   a. the Death Benefit on the Monthly Anniversary Day divided by 1.0016516; less
>   b. the Accumulation Value on the Monthly Anniversary Day. The Accumulation Value on the Monthly Anniversary
>      Day is determined after the Monthly Expense Charge is deducted, and before the risk premium is deducted.

**6.10    Risk Rates**
The Risk Rate is based on the Insured's age nearest birthday at the beginning of each policy year.

The guaranteed Risk Rates are shown on Page Four. We may use Risk Rates that are lower than the guaranteed rates. Any change in rates will apply to all policies in the same rate class as this policy. The rate class of this policy is determined on its Date of Issue according to:
>   1. The calendar year of issue; and
>   2. The plan of insurance; and
>   3. The amount of insurance; and
>   4. The age of the Insured.

Any redetermination of the Risk Rates will be based on our expectations as to investment earnings, mortality, persistency, and expenses. We will not change these rates in order to recoup any prior losses.

**6.11    No Dividends**
This policy does not participate in our earnings or surplus. No dividends are payable.

**6.12    Accumulation Value Interest Rate**
The guaranteed interest rate used in calculating Accumulation Values is 0.16516% per month, compounded monthly. This is equivalent to 2.0% per year, compounded annually. We may use interest rates greater than the guaranteed rates to calculate Accumulation Values. We may apply a different rate of interest to that portion of the Accumulation Value which equals the amount of an outstanding policy loan. Such rate of interest will not be less than 2.0% per year.

**6.13    Method of Determining Guaranteed Cash Value and Net Single Premiums**
Guaranteed Cash Values and all net single premiums are based on the 1980 Commissioners Standard Ordinary Non-Smoker or Smoker Mortality Table B with 4.5 % interest. In calculating extended term insurance, mortality rates from the 1980 Commissioners Extended Term Insurance Non-Smoker or Smoker Table B are used. Guaranteed Cash Values are shown in the Table of Guaranteed Cash and Other Values. Guaranteed Cash Values for years after those shown in the Table of Guaranteed Cash and Other Values are computed using the Standard Nonforfeiture Law on the above basis. The cash value of any paid-up insurance or extended term insurance shall be the net single premium for such insurance at the attained age of the Insured. A detailed statement of the method of calculation of all values has been filed with the Insurance Department of the state in which this policy has been applied for. All values are equal to or greater than those required by the state in which this policy is issued. Values during a policy year will reflect any portion of that year's premium paid and the time elapsed in that year.

**6.14    Options on Lapse**
If any premium remains unpaid at the end of the Grace Period, while this policy has a Net Cash Value, either A or B below shall apply:

A)      Extended Term Insurance - If the policy is designated as Standard Policy Class on Page Three, it will continue in force as extended term insurance. The amount of term insurance will be equal to the Death Benefit Amount of this policy less any Indebtedness. The term insurance will begin as of the due date of the unpaid premium. The period of term insurance will be determined by using the Net Cash Value as a net single premium at the attained age of the Insured. If the Net Cash Value provides a greater amount of paid-up insurance than the amount of extended term insurance, then paid-up insurance will be provided. Extended term insurance does not share in divisible surplus.

**Options on Lapse (continued)**

B)      Paid-Up Insurance - You may select paid-up insurance instead of extended term insurance.  The paid-up insurance will be payable at the same time and on the same conditions as this policy.  A written request must be received at our Home Office within 62 days after the due date of the first unpaid premium.  If this policy is designated as Special Policy Class on Page Three, it will automatically continue as paid-up insurance.  The amount of insurance will be determined by using the Net Cash Value as a net single premium at the attained age of the Insured.  Paid-up insurance does not share in divisible surplus.

## 6.15    Policy Loans

You may make a loan against this policy by requesting from us in writing the amount you wish to borrow.  You may borrow from us an amount which is equal to or less than the policy's loan value.  The loan value will be the Cash Value less:

1.      Any indebtedness; and
2.      Interest on the amount to be borrowed to the next policy anniversary.

Loans may not be made while the policy is in force as extended term insurance.  The policy is the sole security for the cash loan.

Interest, at the policy loan interest rate shown on Page Three, is payable in advance on each policy anniversary.  Unpaid interest will be added to the loan and charged the same rate of interest as the loan.

You may repay all or any part of the loan at any time during the lifetime of the Insured.  We will not terminate the policy if you do not repay the loan or loan interest unless the loan and loan interest together equal or exceed the Cash Value of the policy.  We will not terminate the policy until 31 days after we have mailed written notice to your last known address or the last known address of the assignee of record, if any.

We may delay making a loan for a period of no more than six (6) months after you request the loan.  However, we will not delay the making of loans to pay premiums for the policy.

Indebtedness means that you owe money, including any interest, because of a loan on this policy.  Any Indebtedness at time of termination or settlement will reduce the proceeds payable.

# SECTION 7 — OWNERSHIP

## 7.1    Rights of Ownership

This policy belongs to you.  The Owner ("you", "your") is the Insured unless otherwise stated in the application or unless changed under the Transfer of Ownership provision.  All rights granted by this policy may be exercised by you only during the Insured's lifetime and thereafter to the extent permitted by Sections 8 and 9.  All rights may be exercised by you without the consent of any revocable beneficiary.

## 7.2    Transfer of Ownership

You may transfer the Ownership of this policy on forms provided by us.  The written evidence of transfer must be recorded by us at our Home Office.  The transfer will then be effective as of the date it was signed.  We may require the return of the policy for endorsement.  The transfer is subject to any payment made or other action taken by us before we received your written request in our Home Office.  You may also name a Contingent Owner in the same manner.  The Contingent Owner will become the Owner if he is living and you are still the Owner at the time of your death.

## 7.3    Collateral Assignment

You may assign this policy as collateral security.  We assume no responsibility for the validity or effect of any collateral assignment of this policy.  The assignment is subject to any payment made or other action taken by us before we received the assignment at our Home Office.  The interest of any beneficiary will be subject to any collateral assignment made either before or after the beneficiary designation.  A collateral assignee is not an Owner.  A collateral assignment is not a transfer of ownership.  Ownership can be transferred only as set forth in Section 7.2.  An assignment shall be subject to any Indebtedness.

Aviva 15

# SECTION 8 — BENEFICIARIES

**8.1    Designation and Change of Beneficiaries**

The designation of beneficiary in the application shall remain in effect until you change it. You may designate and change the primary and contingent beneficiaries and further payees of death proceeds. You may do this during the lifetime of the Insured. If you are not the Insured, and to the extent that you are a primary beneficiary, you may also do this within sixty (60) days after the Insured's death. Any such designation after the death of the Insured cannot be changed.

**8.2    Succession In Interest of Beneficiaries and Payees**

The beneficiary at the Insured's death will be as stated in the designation then in effect. Unless otherwise provided, the proceeds will be payable in equal shares to the primary beneficiaries who survive the Insured. The unpaid share of any primary payee who dies while receiving payment will be payable in equal shares to the other primary payees who survive the Insured. Unless otherwise provided, at the death of the last surviving primary beneficiary, the proceeds will be payable in equal shares to the contingent beneficiaries who survive the Insured. The unpaid share of any contingent payee who dies while receiving payment will be payable in equal share to the other contingent payees who survive. Unless otherwise provided, at the death of the last to survive of the primary and contingent beneficiaries, the proceeds will be payable in equal shares to the further payees who survive the Insured. If there are no surviving beneficiaries, then the proceeds shall be paid to you or to your estate. Unless otherwise provided, if any beneficiary dies within 15 days after the Insured, but before due proof of death of the Insured has been received at the Home Office, then payment of the proceeds shall be made as if such beneficiary and died before the Insured.

**8.3    Form and Effective Date**

Any change you make must be in writing and in a form satisfactory to us. Such change will become effective when it is recorded by us at our Home Office. Upon such recording, it will then relate back to the date you signed the change, whether or not the Insured was living on the date of recording. Any change is subject to the rights of any assignee of record with us. Any change is subject to any action or payment made by us before recording.

**8.4    General**

A transfer of ownership will not of itself change the interest of any payee. So far as permitted by law, no amount payable under this policy will be subject to the claims of creditors of any beneficiary. A beneficiary succeeding to an interest under a settlement option will continue to be paid under the terms of that option. The legal rights of a beneficiary are subordinate to the legal rights of any person to whom the policy has been assigned.

# SECTION 9 — SETTLEMENT OPTIONS

**9.1    Payment**

Death benefits will be paid in one (1) lump sum or, if at least $2,000, under a selected settlement option. Death benefits or surrender benefits, if at least $2,000, may also be paid under a settlement option.

**9.2    Selection**

You have the sole right to select a settlement option during the lifetime of the Insured. If, immediately prior to the Insured's death, you were not the Insured, and you are a primary beneficiary, then with sixty (60) days after the death of the Insured, you may revoke any existing settlement option and make a final election. This election will only apply to the extent of your interest. Within one (1) year after the Insured's death if the proceeds are payable in a lump sum or under Option 4 or 5 without restriction on withdrawal, the beneficiary may elect any option. Except as allowed by Section 9.3, the options are not available without our consent to any assignee or beneficiary which is not a natural person.

Aviva 16

**9.3     Payments to a Corporation**

The proceeds of this policy may be paid to a corporation under any of the options with the following limitations:

a. Option 4 may be selected for a period of not more than ten (10) years. At the end of the period, we will pay the amount in a lump sum.

b. Options 2, 3, or 6 may be selected only if payments are payable during the lifetime of the Insured or the Insured's spouse or any child of the Insured. With our consent, they may be payable during the lifetime of anyone related to the Insured by blood or marriage.

c. Payments under Options 1 or 5 may not extend beyond twenty (20) years.

**9.4     Options**

Option 1.     **Fixed Period** — We will pay in equal monthly installments for a specified number of years according to Table A. The installments are based on three percent (3%) interest per annum.

Option 2.     **Life Income with Installments Certain** — We will pay in equal monthly installments for a period certain and thereafter during the remaining lifetime of the payee. The period certain may be for 10, 15, or 20 years or until the total of installments equals a refund of the proceeds applied under the option. The amount of the installments will be as shown in Table B, C, D, or E. The installments are based on Progressive Annuity Table with three percent (3%) interest.

Option 3.     **Annuity Settlement** — We will pay the proceeds in the form of a monthly annuity as agreed upon by you, or the beneficiary, and us.

Option 4.     **Proceeds at Interest** — We will hold the proceeds for the payee's lifetime. We will pay interest at the rate of at least three percent (3%) per year. The proceeds may be withdrawn at any time or another option may be selected.

Option 5.     **Installments of Fixed Amounts** — We will pay the proceeds in equal monthly installments until they are fully paid. The proceeds will be credited with annual interest at a rate of at least three percent (3%) per year. The fixed amount payable each year will be at least five percent (5%) of the original proceeds left with us.

Option 6.     **Joint and Survivor Life Income with Installments Certain** — We will pay the proceeds in equal monthly installments for a period of ten (10) years certain and so long thereafter as either of two designated payees shall live. The amount of such installments will be according to Table F. If you elect this option during the Insured's lifetime, and one of the beneficiaries dies before the Insured, then we will pay the surviving beneficiary under Option 2, Table B, unless you elect otherwise. The installments are based on Progressive Annuity Table with three percent (3%) interest.

**9.5     Payment Frequency**

In lieu of monthly payments, a quarterly, semiannual, or annual frequency may be selected. The selection of any option is subject to our minimum payment requirements. If other than monthly payments are selected, the amount of each payment may be found by multiplying the amount of the monthly payment by the following factors:

| QUARTERLY | SEMIANNUALLY | ANNUALLY |
|---|---|---|
| 2.993 | 5.963 | 11.839 |

**9.6     Due Date of First Payment**

If an option has been selected which calls for installments, the due date of the first payment shall be the date of the Insured's death or surrender of the policy. If the Alternate Larger Life Income is paid, the first payment will be one (1) payment period after the date of the Insured's death or surrender of the policy.

**9.7     Alternate Larger Life Income**

If Options 2, 3, or 6 become effective and if on the due date of the first payment we have in use a basis for computing the life income which is alternative to that used in the installment tables, then the life income shall be recomputed on the alternative basis. If that results in installment amounts which are larger than those set forth in the tables, then we will automatically pay the larger amounts.

**9.8     Supplementary Contract**

A supplementary contract providing for the Settlement Option chosen will be issued as of the date of the settlement. When the proceeds of this policy become payable under a settlement option, this policy must be surrendered.

Aviva 17

**9.9     Death of Payee**

We may require proof of the date of birth or the continued life of any payee at any time.  If at the death of any payee there is no designated person living entitled to receive the remaining payments, we will pay in one (1) sum to such payee's executors, administrators, or assigns, the unpaid sum or the commuted value of any unpaid settlements.  The interest rate applied will not be greater than the current interest rate used to calculate installment payments at the time of settlement.

**9.10    Income Protection**

The payee, other than you, may not transfer, assign, commute, or encumber any of the benefits of this policy unless otherwise provided in the settlement election.  To the extent permitted by law, settlement option benefits are not subject to claims of creditors or legal process.

**9.11    Surplus Interest**

Surplus interest earnings may be added to payments under Options 1, 4, and 5.  Under Option 1, such surplus interest may be added after the first installment year.  Under Option 4, surplus interest will be used to increase the amount of each payment.  Under Option 5, surplus interest will be used to increase the number of payments.

Aviva 18

## INSTALLMENT TABLES - On Basis of $1,000 of Proceeds

**The Life Incomes Under Options 2 And 6 Will Be Based On The Payee's Age At Nearest Birthday When The First Installment Is Payable.**

| OPTION 1 — INSTALLMENTS FOR FIXED PERIOD — TABLE A | | | OPTION 2 — MONTHLY LIFE INCOME WITH INSTALLMENTS CERTAIN | | | | | OPTION 2 — MONTHLY LIFE INCOME WITH INSTALLMENTS CERTAIN | | | | | OPTION 2 — MONTHLY LIFE INCOME WITH INSTALLMENTS CERTAIN | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Number of Years Payable | Annual Payment | Monthly Payment | Age of Payee | TABLE B 10 Years Certain | TABLE C 15 Years Certain | TABLE D 20 Years Certain | TABLE E Install-ment Refund | Age of Payee | TABLE B 10 Years Certain | TABLE C 15 Years Certain | TABLE D 20 Years Certain | TABLE E Install-ment Refund | Age of Payee | TABLE B 10 Years Certain | TABLE C 15 Years Certain | TABLE D 20 Years Certain | TABLE E Install-ment Refund |
| 1 | $1000.00 | $84.65 | 10* | $2.83 | $2.83 | $2.85 | $2.85 | 35 | $3.39 | $3.38 | $3.37 | $3.36 | 60 | $5.13 | $4.96 | $4.72 | $4.82 |
| 2 | 503.39 | 42.86 | 11 | 2.85 | 2.85 | 2.86 | 2.86 | 36 | 3.43 | 3.42 | 3.41 | 3.39 | 61 | 5.25 | 5.06 | 4.79 | 4.90 |
| 3 | 343.23 | 28.59 | 12 | 2.87 | 2.87 | 2.87 | 2.87 | 37 | 3.46 | 3.46 | 3.44 | 3.43 | 62 | 5.39 | 5.16 | 4.85 | 5.00 |
| 4 | 263.19 | 22.06 | 13 | 2.88 | 2.88 | 2.88 | 2.88 | 38 | 3.50 | 3.50 | 3.48 | 3.46 | 63 | 5.52 | 5.27 | 4.92 | 5.20 |
| 5 | 212.00 | 17.91 | 14 | 2.89 | 2.89 | 2.89 | 2.89 | 39 | 3.53 | 3.54 | 3.51 | 3.50 | 64 | 5.67 | 5.37 | 4.99 | 5.34 |
| 6 | 179.22 | 15.14 | 15 | 2.91 | 2.91 | 2.91 | 2.91 | 40 | 3.59 | 3.58 | 3.56 | 3.54 | 65 | 5.82 | 5.48 | 5.05 | 5.43 |
| 7 | 153.74 | 13.16 | 16 | 2.92 | 2.92 | 2.92 | 2.92 | 41 | 3.64 | 3.62 | 3.60 | 3.59 | 66 | 5.97 | 5.58 | 5.11 | 5.61 |
| 8 | 138.31 | 11.48 | 17 | 2.94 | 2.94 | 2.94 | 2.94 | 42 | 3.69 | 3.67 | 3.65 | 3.63 | 67 | 6.13 | 5.69 | 5.16 | 5.73 |
| 9 | 104.99 | 10.53 | 18 | 2.96 | 2.96 | 2.96 | 2.95 | 43 | 3.74 | 3.72 | 3.69 | 3.67 | 68 | 6.30 | 5.80 | 5.21 | 5.90 |
| 10 | 113.82 | 9.61 | 19 | 2.98 | 2.98 | 2.97 | 2.97 | 44 | 3.79 | 3.77 | 3.74 | 3.72 | 69 | 6.48 | 5.90 | 5.26 | 6.08 |
| 11 | 104.93 | 8.86 | 20 | 2.99 | 2.99 | 2.99 | 2.99 | 45 | 3.85 | 3.83 | 3.79 | 3.77 | 70 | 6.65 | 6.01 | 5.31 | 6.26 |
| 12 | 97.54 | 8.24 | 21 | 3.01 | 3.01 | 3.01 | 3.01 | 46 | 3.90 | 3.88 | 3.84 | 3.83 | 71 | 6.84 | 6.11 | 5.34 | 6.45 |
| 13 | 91.29 | 7.71 | 22 | 3.03 | 3.03 | 3.03 | 3.03 | 47 | 3.97 | 3.94 | 3.90 | 3.88 | 72 | 7.03 | 6.20 | 5.38 | 6.63 |
| 14 | 85.89 | 7.26 | 23 | 3.05 | 3.05 | 3.05 | 3.05 | 48 | 4.03 | 4.00 | 3.95 | 3.93 | 73 | 7.22 | 6.29 | 5.41 | 6.82 |
| 15 | 81.33 | 6.87 | 24 | 3.08 | 3.08 | 3.08 | 3.07 | 49 | 4.10 | 4.06 | 4.00 | 4.00 | 74 | 7.41 | 6.38 | 5.43 | 7.09 |
| 16 | 77.38 | 6.53 | 25 | 3.10 | 3.10 | 3.09 | 3.09 | 50 | 4.17 | 4.13 | 4.06 | 4.06 | 75 | 7.60 | 6.46 | 5.45 | 7.31 |
| 17 | 73.74 | 6.23 | 26 | 3.12 | 3.12 | 3.12 | 3.11 | 51 | 4.25 | 4.20 | 4.13 | 4.13 | 76 | 7.79 | 6.53 | 5.47 | 7.56 |
| 18 | 70.59 | 5.96 | 27 | 3.15 | 3.15 | 3.14 | 3.14 | 52 | 4.33 | 4.27 | 4.18 | 4.19 | 77 | 7.98 | 6.59 | 5.48 | 7.81 |
| 19 | 67.79 | 5.73 | 28 | 3.17 | 3.17 | 3.17 | 3.16 | 53 | 4.41 | 4.35 | 4.23 | 4.26 | 78 | 8.17 | 6.65 | 5.49 | 8.08 |
| 20 | 65.26 | 5.51 | 29 | 3.20 | 3.20 | 3.20 | 3.19 | 54 | 4.50 | 4.42 | 4.31 | 4.34 | 79 | 8.36 | 6.70 | 5.50 | 8.40 |
| 21 | 62.98 | 5.32 | 30 | 3.23 | 3.23 | 3.23 | 3.21 | 55 | 4.59 | 4.51 | 4.38 | 4.42 | 80+ | 8.72 | 6.74 | 5.50 | 8.73 |
| 22 | 60.92 | 5.15 | 31 | 3.26 | 3.26 | 3.26 | 3.24 | 56 | 4.69 | 4.59 | 4.44 | 4.51 | | | | | |
| 23 | 59.04 | 4.99 | 32 | 3.29 | 3.29 | 3.28 | 3.26 | 57 | 4.79 | 4.68 | 4.51 | 4.59 | | | | | |
| 24 | 57.33 | 4.84 | 33 | 3.32 | 3.32 | 3.31 | 3.29 | 58 | 4.90 | 4.77 | 4.58 | 4.67 | | | | | |
| 25 | 55.76 | 4.71 | 34 | 3.35 | 3.35 | 3.34 | 3.32 | 59 | 5.01 | 4.86 | 4.65 | 4.76 | | | | | |
| 26 | 54.31 | 4.59 | | | | | | | | | | | | | | | |
| 27 | 52.97 | 4.47 | | | | | | | | | | | | | | | |
| 28 | 51.74 | 4.37 | | | | | | | | | | | | | | | |
| 29 | 50.60 | 4.27 | | | | | | | | | | | | | | | |
| 30 | 49.53 | 4.18 | | | | | | | | | | | | | | | |

### OPTION 6 - TABLE F
#### MONTHLY JOINT AND SURVIVOR LIFE INCOME WITH INSTALLMENTS CERTAIN FOR 10 YEARS

| Age of Payee | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 50 | 3.72 | 3.74 | 3.77 | 3.79 | 3.82 | 3.84 | 3.87 | 3.89 | 3.91 | 3.94 | 3.96 | 3.98 | 4.00 | 4.02 | 4.03 | 4.05 | 4.07 | 4.08 | 4.09 | 4.10 |
| 51 | 3.74 | 3.77 | 3.80 | 3.83 | 3.85 | 3.88 | 3.91 | 3.94 | 3.97 | 4.00 | 4.02 | 4.05 | 4.07 | 4.09 | 4.11 | 4.13 | 4.14 | 4.15 | 4.16 | 4.18 |
| 52 | 3.77 | 3.80 | 3.83 | 3.86 | 3.90 | 3.93 | 3.96 | 4.00 | 4.03 | 4.06 | 4.09 | 4.11 | 4.14 | 4.16 | 4.19 | 4.21 | 4.23 | 4.25 | 4.27 | 4.28 |
| 53 | 3.79 | 3.83 | 3.86 | 3.90 | 3.93 | 3.97 | 4.01 | 4.04 | 4.08 | 4.12 | 4.15 | 4.19 | 4.22 | 4.25 | 4.28 | 4.30 | 4.33 | 4.35 | 4.37 | 4.39 |
| 54 | 3.82 | 3.85 | 3.89 | 3.93 | 3.97 | 4.01 | 4.05 | 4.09 | 4.13 | 4.17 | 4.21 | 4.25 | 4.29 | 4.33 | 4.36 | 4.40 | 4.43 | 4.46 | 4.48 | 4.51 |
| 55 | 3.84 | 3.88 | 3.91 | 3.95 | 4.00 | 4.04 | 4.08 | 4.13 | 4.17 | 4.22 | 4.26 | 4.31 | 4.35 | 4.39 | 4.43 | 4.47 | 4.51 | 4.55 | 4.58 | 4.61 |
| 56 | 3.87 | 3.91 | 3.94 | 3.98 | 4.03 | 4.07 | 4.12 | 4.16 | 4.21 | 4.26 | 4.31 | 4.36 | 4.41 | 4.46 | 4.50 | 4.55 | 4.59 | 4.63 | 4.67 | 4.71 |
| 57 | 3.89 | 3.93 | 3.97 | 4.01 | 4.06 | 4.11 | 4.15 | 4.20 | 4.25 | 4.30 | 4.36 | 4.41 | 4.46 | 4.52 | 4.57 | 4.62 | 4.67 | 4.72 | 4.77 | 4.81 |
| 58 | 3.91 | 3.95 | 3.99 | 4.04 | 4.08 | 4.13 | 4.18 | 4.23 | 4.29 | 4.34 | 4.40 | 4.46 | 4.52 | 4.57 | 4.63 | 4.69 | 4.74 | 4.80 | 4.85 | 4.90 |
| 59 | 3.94 | 3.98 | 4.02 | 4.06 | 4.11 | 4.16 | 4.21 | 4.27 | 4.32 | 4.38 | 4.44 | 4.50 | 4.56 | 4.63 | 4.69 | 4.75 | 4.81 | 4.87 | 4.93 | 4.99 |
| 60 | 3.96 | 4.00 | 4.04 | 4.09 | 4.14 | 4.19 | 4.24 | 4.30 | 4.36 | 4.42 | 4.48 | 4.54 | 4.61 | 4.68 | 4.75 | 4.81 | 4.88 | 4.95 | 5.01 | 5.07 |
| 61 | 3.98 | 4.02 | 4.07 | 4.11 | 4.16 | 4.21 | 4.27 | 4.33 | 4.39 | 4.45 | 4.52 | 4.59 | 4.66 | 4.73 | 4.80 | 4.87 | 4.95 | 5.02 | 5.09 | 5.16 |
| 62 | 4.00 | 4.05 | 4.09 | 4.14 | 4.19 | 4.24 | 4.30 | 4.36 | 4.42 | 4.49 | 4.56 | 4.63 | 4.70 | 4.78 | 4.85 | 4.93 | 5.01 | 5.09 | 5.17 | 5.24 |
| 63 | 4.02 | 4.07 | 4.11 | 4.16 | 4.21 | 4.27 | 4.33 | 4.39 | 4.45 | 4.52 | 4.59 | 4.67 | 4.74 | 4.82 | 4.90 | 4.98 | 5.07 | 5.15 | 5.23 | 5.32 |
| 64 | 4.03 | 4.09 | 4.13 | 4.18 | 4.23 | 4.29 | 4.35 | 4.42 | 4.48 | 4.55 | 4.63 | 4.71 | 4.78 | 4.87 | 4.95 | 5.04 | 5.13 | 5.22 | 5.31 | 5.40 |
| 65 | 4.05 | 4.09 | 4.15 | 4.21 | 4.27 | 4.33 | 4.40 | 4.47 | 4.53 | 4.60 | 4.66 | 4.75 | 4.78 | 4.91 | 5.00 | 5.08 | 5.15 | 5.26 | 5.35 | 5.49 |
| 66 | 4.06 | 4.11 | 4.17 | 4.23 | 4.28 | 4.35 | 4.42 | 4.49 | 4.56 | 4.67 | 4.70 | 4.79 | 4.84 | 4.96 | 5.02 | 5.15 | 5.25 | 5.35 | 5.42 | 5.57 |
| 67 | 4.08 | 4.16 | 4.21 | 4.27 | 4.34 | 4.42 | 4.47 | 4.54 | 4.64 | 4.71 | 4.79 | 4.81 | 4.94 | 5.03 | 5.10 | 5.18 | 5.32 | 5.42 | 5.50 | 5.67 |
| 68 | 4.09 | 4.15 | 4.22 | 4.28 | 4.34 | 4.41 | 4.50 | 4.58 | 4.67 | 4.71 | 4.80 | 4.94 | 5.02 | 5.08 | 5.15 | 5.32 | 5.40 | 5.50 | 5.57 | 5.87 |
| 69 | 4.10 | 4.16 | 4.23 | 4.32 | 4.39 | 4.45 | 4.53 | 4.60 | 4.68 | 4.77 | 4.85 | 4.94 | 5.02 | 5.11 | 5.20 | 5.29 | 5.38 | 5.47 | 5.57 | 5.67 |
| 70 | 4.10 | 4.17 | 4.24 | 4.31 | 4.38 | 4.46 | 4.54 | 4.62 | 4.70 | 4.79 | 4.88 | 4.97 | 5.06 | 5.16 | 5.26 | 5.36 | 5.46 | 5.56 | 5.67 | 5.77 |
| 71 | 4.11 | 4.18 | 4.25 | 4.32 | 4.39 | 4.48 | 4.55 | 4.65 | 4.72 | 4.82 | 4.91 | 5.01 | 5.11 | 5.20 | 5.30 | 5.40 | 5.50 | 5.70 | 5.81 | 5.91 |
| 72 | 4.12 | 4.19 | 4.26 | 4.33 | 4.41 | 4.50 | 4.57 | 4.67 | 4.75 | 4.85 | 4.95 | 5.04 | 5.14 | 5.24 | 5.35 | 5.45 | 5.56 | 5.68 | 5.77 | 5.98 |
| 73 | 4.13 | 4.20 | 4.27 | 4.34 | 4.43 | 4.51 | 4.60 | 4.68 | 4.78 | 4.87 | 4.97 | 5.07 | 5.18 | 5.27 | 5.38 | 5.49 | 5.60 | 5.71 | 5.82 | 5.93 |
| 74 | 4.14 | 4.21 | 4.28 | 4.35 | 4.44 | 4.53 | 4.61 | 4.69 | 4.80 | 4.89 | 4.99 | 5.09 | 5.19 | 5.30 | 5.42 | 5.53 | 5.64 | 5.76 | 5.88 | 6.02 |
| 75 | 4.14 | 4.22 | 4.29 | 4.37 | 4.46 | 4.54 | 4.63 | 4.72 | 4.81 | 4.91 | 5.01 | 5.11 | 5.22 | 5.34 | 5.45 | 5.57 | 5.69 | 5.80 | 5.98 | 6.15 |
| 76 | 4.16 | 4.23 | 4.30 | 4.39 | 4.46 | 4.56 | 4.65 | 4.72 | 4.81 | 4.92 | 5.03 | 5.14 | 5.28 | 5.38 | 5.49 | 5.61 | 5.74 | 5.86 | 5.99 | 6.15 |
| 77 | 4.17 | 4.24 | 4.31 | 4.39 | 4.47 | 4.56 | 4.64 | 4.74 | 4.84 | 4.95 | 5.05 | 5.17 | 5.32 | 5.39 | 5.52 | 5.66 | 5.78 | 5.91 | 6.04 | 6.32 |
| 78 | 4.17 | 4.24 | 4.31 | 4.40 | 4.47 | 4.56 | 4.66 | 4.75 | 4.84 | 4.95 | 5.07 | 5.18 | 5.31 | 5.44 | 5.56 | 5.70 | 5.83 | 5.96 | 6.09 | 6.33 |
| 79 | 4.18 | 4.25 | 4.32 | 4.39 | 4.47 | 4.57 | 4.67 | 4.76 | 4.86 | 4.97 | 5.08 | 5.21 | 5.33 | 5.46 | 5.59 | 5.72 | 5.86 | 6.00 | 6.10 | 6.25 |
| 80 | 4.18 | 4.25 | 4.32 | 4.39 | 4.48 | 4.57 | 4.67 | 4.76 | 4.88 | 4.97 | 5.09 | 5.21 | 5.33 | 5.47 | 5.59 | 5.74 | 5.89 | 6.03 | 6.15 | 6.40 |
| 81 | 4.19 | 4.26 | 4.33 | 4.40 | 4.49 | 4.58 | 4.68 | 4.77 | 4.88 | 4.98 | 5.10 | 5.21 | 5.35 | 5.48 | 5.61 | 5.74 | 5.90 | 6.03 | 6.17 | 6.49 |
| 82 | 4.19 | 4.26 | 4.33 | 4.40 | 4.49 | 4.59 | 4.69 | 4.78 | 4.89 | 4.99 | 5.11 | 5.23 | 5.37 | 5.50 | 5.63 | 5.80 | 5.93 | 6.05 | 6.20 | 6.37 |
| 84 | 4.19 | 4.26 | 4.33 | 4.40 | 4.49 | 4.59 | 4.69 | 4.78 | 4.87 | 5.00 | 5.12 | 5.25 | 5.37 | 5.40 | 5.64 | 5.79 | 5.93 | 6.08 | 6.23 | 6.57 |

*And Under          +And Over

Aviva 19

# EXHIBIT

## "7"

Aviva                5/5/2010 2:36:17 PM   PAGE   5/008   Fax Server



Aviva Life and Annuity Company
611 Fifth Avenue
Des Moines, Iowa 50309
515/283-2371

AUTHORIZATION TO USE POLICY VALUES TO PAY ANNUAL PREMIUM

I hereby authorize the Company to use values on Policy # 00 0100 099 9 74 to automatically pay premiums as they may fall due on this policy.

- I UNDERSTAND THAT BY SURRENDERING VALUES, THE TOTAL CASH VALUE OF MY POLICY WILL BE REDUCED AND THE DEATH BENEFIT OF MY POLICY MAY ALSO BE REDUCED, ACCORDING TO POLICY PROVISIONS.
- THE USE OF THIS FORM DOES NOT GUARANTEE OR IMPLY THAT POLICY VALUES WILL BE SUFFICIENT TO PAY PREMIUMS IN THE FUTURE.
- CASH VALUES ARE NOT GUARANTEED AND IF EXISTING POLICY VALUES ARE NOT SUFFICIENT TO PAY THE POLICY PREMIUM, A PREMIUM NOTICE WILL BE GENERATED FOR THE FULL PREMIUM DUE. IF THE PREMIUM DUE IS NOT PAID, THE POLICY MAY TERMINATE.
- IF A POLICY IS A MODIFIED ENDOWMENT CONTRACT, SURRENDERING POLICY VALUES TO PAY POLICY LOAN INTEREST MAY BE A TAXABLE EVENT.
- POLICY VALUES MAY NOT BE USED TO PAY FOR PREMIUMS ON OTHER POLICIES.
- THE POLICYOWNER MAY TERMINATE THE USE OF POLICY VALUES TO PAY PREMIUMS BY SENDING A WRITTEN REQUEST TO THE COMPANY AND SPECIFYING THE PREFERRED BILLING FREQUENCY (QUARTERLY, SEMI-ANNUAL, ANNUAL, OR PRE-AUTHORIZED CHECK). SUCH REQUEST WILL BECOME EFFECTIVE ON THE FIRST PREMIUM DUE DATE FOLLOWING RECEIPT.

The following events may result in a premium notice to the policyowner:
1. The interest rate currently applicable is decreased in some future year.
2. A policy loan is made.
3. The policy is changed, e.g. riders are added to provide additional benefits or the amount of insurance is decreased.

I HAVE REVIEWED AND UNDERSTAND THE INFORMATION LISTED ON THIS FORM.

_____   Date   4-24-10
Policyowner

_____
Assignee or Other Required Signature

Form 4064 - EVIP          SEE REVERSE SIDE

AVIVA C394

## IMPORTANT INFORMATION WHEN USING POLICY VALUES TO PAY PREMIUMS

Q-1.  Is there any reason why I should NOT use existing values on my policy to pay my premiums due?

Yes.  It is sometimes possible to pay some or all of a policy's premium with existing cash values.  It is important to remember that these values are NOT guaranteed.  If values are not enough to pay the policy's premium, it will be necessary to pay the premium from other sources or the policy may lapse.

Q-2  Does the withdrawal of existing values hurt my policy?

Yes. Values withdrawn to pay premiums will no longer be part of your policy value and death benefit.

Q-3.  How do I know whether I have enough existing values to pay future premiums?

You will be initially notified by the Company when existing values are sufficient to pay future premiums.  You may also call or write the Company for a current "Conditional Premium Payment Plan" illustration.  This will give you an estimate, based on the Company's current interest rates, of how long values may be sufficient to pay premiums

REMEMBER, interest rates change and you should request an annual update to be certain the current existing cash values are sufficient to meet your expectations  Also keep in mind premiums are generally payable for the lifetime of the Insured, so you may want to consider paying them from other sources before using cash values.

AVIVA C395

# EXHIBIT

## "8"



**Aviva Life and Annuity Company**
P O Box 1555
Des Moines, Iowa 50306-1555

# Application For Reinstatement and Insurability Statement

Policy _QO0 1 000 989 74_

Proposed Insured _Vladimir Kushnir_

Address _334 Carson Terr Huntingdon Valley PA 19006_
      City       State    Zip

Height in shoes _5' 9"_   Weight in clothes _159_
  feet   inches       pounds

Date of Birth _9-21-1963_

Current Occupation _Manager_

Phone Number _215- 343-6016_
       _267  934 7575_

Other Proposed Insured _____

Address _____ City ____ State ____ Zip

Height in shoes ___/___ Weight in clothes _____
  feet   inches       pounds

Date of Birth _____

Current Occupation _____

Phone Number _____

☑ I apply for reinstatement. $_____ attached to pay ☐ premiums ☐ loan interest

**Evidence of Insurability — Representations:** Since this policy was issued or if no policy has been issued since the date of last evidence of insurability, have any persons insured

|  |  | Yes | No |
|---|---|---|---|
| 1 | Had any injury, ailment, or disease, or received a disability benefit? | ☐ | ☑ |
| 2 | Consulted a doctor? If yes, give details below | ☐ | ☑ |
| 3 | Used any medications? | ☐ | ☑ |
| 4 | Been diagnosed by a medical professional as having or been treated for AIDS or ARC (AIDS-related complex)? | ☐ | ☑ |
| 5 | Tested positive for antibodies to the AIDS Human T Cell lymphotropic (HIV) virus? | ☐ | ☑ |
| 6 | a Do you use any form of tobacco or nicotine based products? | ☑ | ☐ |
|  | b Have you used any form of tobacco or nicotine based products in the past 5 years? | ☑ | ☐ |

If yes, when did you last use tobacco or nicotine based products _today_

Type _cigarettes_ Quantity _1 pack of 20 cigarette per day_

|  |  | Yes | No |
|---|---|---|---|
| 7 | Been declined, rated, or had coverage modified or reinstatement declined by another insurance company? | ☐ | ☑ |
| 8 | Engaged in or contemplate any aviation activities other than as a passenger? | ☐ | ☑ |
| 9 | Engaged in or contemplate ballooning, gliding, boat or vehicle racing, mountain or rock climbing, parachuting, sky diving, under water diving or any such hazardous activity? | ☐ | ☑ |
| 10 | Been charged with 2 or more moving violations, reckless or drunken driving, or had their driver's license restricted, suspended or revoked, or received a warning letter? | ☑ | ☐ |
| 11 | Proposed insured, owner, or beneficiary a resident or citizen of, or an entity organized under the laws of, a country other than the U S? | ☐ | ☑ |
| 12 | Established a residence outside the U.S. or Canada? | ☐ | ☑ |
| 13 | Been arrested for an illegal activity or acquired a criminal record? | ☐ | ☑ |
| 14 | A member of or do you contemplate joining one of the Armed Forces or an active or reserve military unit? | ☐ | ☑ |
| 15 | In the past 2 years traveled or do you intend to travel outside the United States or Canada? | ☐ | ☑ |

**Details of questions answered "Yes".** Identify details of each insured on policy including name/address and phone number of all doctors seen and reason for consultation. (Attach additional sheet if necessary, sign & date)

_____

_____

_____

_____

_____

_____

Aviva 326


* 1 5 6 2 0 0 7 0 9 0 1 *

## AGREEMENTS AND REPRESENTATIONS

I hereby represent, agree and understand all of the following

That the answers and statements on the application(s) and any Supplements required are complete, true and correctly recorded. Information not recorded on the application(s) and any Supplements will not be treated as known to the Company. A copy of the application(s) and any Supplements shall be a part of the policy, and it is agreed that the policy and copy of the application(s) and any Supplements constitute the entire contract. No changes will be made unless the owner agrees and the change is authorized in writing by an officer of the Company at its Home Office.

That the life insurance policy and coverage will be reinstated only if and when all of the following are true: (1) the Company has received full and good settlement for the reinstated policy while the Proposed Insured(s) is (are) living; (2) the Proposed Insured(s) is (are) a risk insurable under the Company's rules, limits and standards for the amount of insurance and plan of insurance applied for (as determined by the Company's authorized Officers at its Home Office); and (3) the Proposed Insured(s) is (are) living, and the answers and statements in the application(s) and any Supplements are, and continue to be, complete and true at the time of reinstatement.

## AUTHORIZATION AND ACKNOWLEDGEMENT

**This authorization complies with the HIPAA Privacy Rule. I understand that if I refuse to sign this authorization, the Company may not be able to process my application for life insurance. I acknowledge that I have the right to request and receive a copy of this authorization.**

### Personal Health Information

I authorize any physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, health care provider, health plan, insurer, and/or any other entity subject to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) that has provided treatment, service, payment, or coverage to me within the past 10 years to disclose my entire medical record and any other protected health information concerning me to the Company, its Producers, employees, representatives insurance support organizations, and reinsurers ("the Company"). Protected health information includes but is not limited to: hospital records, treatment records/office notes, consultation reports, workers' compensation information, diagnosis, prescriptions and test results. It also includes information concerning the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases, and information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

By my signature, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct any physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, health care provider, health plan, insurer, and/or other entity subject to HIPAA to release and disclose such information without restriction.

I understand that, unless prohibited by state and/or federal law, the protected health information is to be disclosed under this authorization so that the Company may 1) underwrite my application for coverage, make eligibility, risk rating, policy issuance and enrollment determinations, 2) obtain reinsurance, 3) administer claims and determine or fulfill responsibility for coverage and provision of benefits, 4) administer coverage, and 5) conduct other legally permissible activities that relate to any coverage I have, have applied for, or may in the future apply for with the Company. I understand any information disclosed under this authorization may no longer be covered by federal rules governing privacy and confidentiality of health information and may be subject to re-disclosure.

### Personal Private Information

I understand that an investigative consumer report may be prepared in connection with this application. I authorize any consumer reporting organization or employer having non-medical information about me to release such information to the Company, its reinsurers, or its authorized representatives. Nonmedical information may consist of income, net worth, business information, hazardous sports, avocations, driving history or occupation. I authorize the Company to prepare an investigative consumer report. I understand that I may request to be personally interviewed if an investigative consumer report is prepared in connection with this application and not to have personal information disclosed for marketing purposes. Any information obtained will not be released by the Company, its reinsurers, or representatives to any person or organization except to reinsuring companies, the Medical Information Bureau, or other persons or organizations performing business or legal services in connection with my application, claim as may be permitted or required by law, or as I may further authorize.

I authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance company, the Medical Information Bureau (MIB), consumer reporting organization, or employer having information available as to diagnosis, treatment, or prognosis with respect to any physical or mental condition, evaluation, or treatment of me or my minor children and any other non-medical information of me or my minor children to give to Aviva Life and Annuity Company (Company) or its reinsurers or its authorized representatives any such information. To facilitate rapid submission of such information, I authorize all said sources except MIB, to give such records or knowledge to any agency employed by the company to collect and transmit such information.

I understand the information obtained by the use of this authorization will be used by the Company or its reinsurers to determine eligibility for insurance, or eligibility for benefits. Any information obtained will not be released by the Company or its reinsurers to any person or organization except to reinsuring companies, MIB, or other persons or organizations performing business or legal services in connection with my application, claim or as may be otherwise lawfully required or as I may further authorize.

I know that I may request to receive a copy of this Authorization and to be interviewed if an insurance information report is to be made

Aviva 327

**Limitations, Revocation and Rights**

This authorization shall remain in force for 24 months(except for HIV-related information which can only be disclosed for a period not to exceed 180 days) following the date of my signature below, and a copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization at any time. The request for revocation must be in writing and sent to the attention of the Underwriting Department of the Company. I understand that a revocation is not effective to the extent that the Company has already relied on this authorization or to the extent that the Company has a legal right to contest a claim under an insurance policy or to contest the policy itself. Such revocation shall not apply to any use or disclosure of my protected health information specifically allowed without authorization by HIPAA and no action relating to this authorization shall be construed as creating any restriction on the uses that HIPAA allows without my authorization.

**SIGNATURES**

- I have reviewed and understand the information contained above in the "Agreements and Representations", including reviewing the answers and statements on the application(s) and any Supplements for accuracy, and the "Authorization and Acknowledgment" sections, and further acknowledge receipt of the Disclosure Notice to Proposed Insured.
- I understand, acknowledge and agree that the Producer has no authority to make any promise, representation or waiver regarding coverage or the terms of the policy. I also understand, acknowledge and agree that the Producer has no authority to provide any legal or tax advice on behalf of the Company.
- I understand, acknowledge and agree that all future premium payments are to be provided directly to the Company and that the Producer has no authority to receive, transmit, sign, endorse, deposit or process any subsequent payments made on the policy.
- I represent that the statements and answers shown above are true, complete and correctly recorded and I agree that they may be considered the basis of any insurance issued or reinstated. I also represent that all persons covered by this policy are living and in good health.
- I understand and agree that all statements made herein are considered representations and not warranties, that a copy of this application shall be a part of the policy, and that if the life insurance policy and coverage is reinstated it will be contestable for two years during the insured's lifetime from the date of reinstatement. I also agree that this policy, if lapsed, will not be reinstated until approved by the Company, subject to collection of any check given in payment of premiums.

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit, or knowingly presents false information in an application for insurance may be guilty of a crime and subject to fines and confinement in prison, depending upon state law.

| | |
|---|---|
| 4-30-10 | _Vladimir Kozlenje_ |
| Date | Signature of Insured |
| | _Vladimir Kozlenje — Trustee_ |
| Signature of Other Insured or Joint Insured | Signature of Owner |
| Submitted by _____ | Producer _Dennis A. Cunning_  _E.8901_ |
| Agency          Code | Name          Code |
| Producer's Signature _____ | Producer's Telephone No. _800  811-7390_ |

**IMPORTANT NOTE:** IF LAPSED MORE THAN 6 MONTHS, ALSO COMPLETE AN APPLICATION FOR POLICY CHANGE FORM.
IF LAPSED MORE THAN 12 MONTHS—REQUIREMENTS ARE THE SAME AS NEW BUSINESS.



Aviva 328

13620 7/09 AZ

# EXHIBIT
## "9"

# PENSION PROFESSIONALS, INC.

July 2, 2010

Aviva Life
Mr Richard C Cohan
SVP & Associate General Counsel
Insurance Operations

Re  Vladimir Kushnir
    Policy 100098974

Mr Cohan,

In February of 2003 Mr Kushnir was issued an Executive VIP life policy by Indianapolis Life  This policy was issued as part of a 412(i) plan  The V-4 Management, LLC Pension Plan funded the life premium of $190,118 10 annually, and an annuity policy as well, for the 5 years as outlined in the plan design and the Indianapolis Life illustration used for policy issue

Following the 5 years of funding, the policy values were to carry the life policy to the exchange option date outlined in the policy provisions  Sometime after the policy anniversary in 2008, the policy's non-forfeiture option of RPU was activated  In January of 2010 our office was asked to provide an in force illustration to an independent appraiser, approved to appraise life policies for the IRS  At that time we discovered that Mr Kushnir's policy was on reduced paid up  On March 23rd I contacted Aviva to find out what requirements were necessary to put this policy back on an active status so that the appraisal could be completed and the policy purchased from the pension plan  I never received a call back  On April 12th I called again and was transferred to Linda Barrett  I left her a voicemail message with the same request  That afternoon I received reinstatement forms from her via email  I then requested that underwriting requirements be waived due to the lack of correspondence from Aviva to the client on the non forfeiture activation  It was denied, however Mr Kushnir agreed to complete the reinstatement forms  They were sent to Linda Barrett on May 5th for processing  On June 8th Mr Kushnir received notification that the application for reinstatement was denied

This plan is under audit by the IRS  We have tried unsuccessfully to have this policy reinstated  Leaving this policy on a Reduced Paid Up status may disqualify the plan and leave the policy asset open to further scrutiny by the IRS

According to Mr Kushnir, Trustee of the V-4 Management plan, he received no notifications of premiums due, notification of RPU or any other correspondence from Aviva Life  We have searched our records and found no notification copied to the agent as well  The Customer Service area at Aviva indicated that a premium due notice was generated but no additional correspondence was sent  If any correspondence was sent, we request copies be provided  The address information on the statements received

Aviva 351

Headquarters 330  Red Book Place   St Thomas, VI 00802 800   536-0510 340   5-2822 Fax
Administration 5133  Center St  Ste 202  Phoenix, AZ 85012  800-431-7 00 602  439-0160 602  287-0044 Fax

from Aviva is not a correct address for Mr Kushnir  All correspondence would have been returned to your office

We request that policy 100098974 be reviewed, and an exception be made to reinstate this policy immediately  We also request that the signed Authorization to Use Policy Values, now in your offices, be activated and all back premiums be applied to the contract using the values available prior to the non forfeiture option being exercised  The client relied on our plan design and the Indianapolis Life brochures and illustrations for the policies used as assets in the plan to fund and carry this pension plan  Denying reinstatement of the policy will jeopardize the client, the plan and the IRS audit currently under way

Should you have questions regarding this request or require any additional documentation please contact our office at 800-811-7390

Sincerely,

Jennifer Morrow
Insurance Administration Coordinator
Pension Professionals


Cc    V-4 Management, LLC
      Vladimir Kushnir, Trustee
      8330 Bustleton Ave
      Philadelphia, PA  19152

      Anna Kanaevsky
      8510 Bustleton Ave
      Philadelphia, PA  19152

      Pension Professionals
      Dion Ware
      5133 N Central Ave, Ste 102
      Phoenix, AZ  85012

Aviva 352

# EXHIBIT "10"

# FOEHL & EYRE
## *A Professional Corporation*

GENE A. FOEHL *
ROBERT B. EYRE *
LAURIE A. McCARTHY
A. JORDAN RUSHIE *

\* ALSO MEMBER MD BAR
\* ALSO MEMBER NJ BAR

27 EAST FRONT STREET
MEDIA, PENNSYLVANIA 19063-0941
PH: (610) 566-5926
FX: (610) 892-9307
www.foehllaw.com

OF COUNSEL
THEODORE B. MUCELLIN
GREGORY L. VOLZ
BURKE T. WARD ▲

▲ LL.M IN TAXATION

email:rob@foehllaw.com

July 14, 2010

*Via Facsimile (800-531-0038)*
*and Regular Mail*

Aviva Life and Annuity Company
611 Fifth Avenue
Des Moines, IA 50306-1555

Attention: Customer Service Department

> **RE:** **Aviva (Indianapolis Life) Policy No. 00100098974**
> **Insured: Vladimir Kushnir**
> **Owner: V-4 Management, LLC Defined Benefit Pension Plan**

To whom it may concern:

We are counsel for Vladimir Kushnir, insured under the above-referenced life insurance policy (the Policy"), issued by your affiliate Indianapolis Life Insurance Company. I was advised by Toni of your Department to address this request to the above facsimile number and follow that up with a second call for immediate response. Per Toni's instructions, I enclose a letter of authorization from my client, containing his current address, last four digits of social security number and date of birth.

The Policy was recommended by Pension Professionals of America ("PPA") and Indianapolis Life for use in the V-4 Management, LLC Defined Pension Plan (the "Plan"). The Plan is the current owner of the Policy. Our client, Mr. Kushnir, is a member of the Plan sponsor, V-4 Management, LLC.

Our client recently engaged an independent agent to review the policy and provide advice concerning the exercise of a buy-out option. Upon looking into this, the agent was advised that the Policy was a "Reduced Paid-Up" policy. Upon further inquiry, representatives of Aviva and PPA explained that the Policy had "lapsed," ostensibly in 2008, for failure to pay premiums. This was a surprise to our client as he understood all premiums had been paid in full, and does not believe that he or the Plan received any notice of non-payment, lapse, or post-lapse options under the Policy. I have seen no direct communication from your company of a failure to pay premiums, a default in payment of premiums, or a possible or actual lapse of the policy.

Aviva Life and Annuity Company
July 14, 2010
Page 2

--------

At the advice of PPA, Mr. Kushnir applied in May of 2010 for reinstatement of the Policy, and submitted to a medical exam in connection with that application. At the time he submitted this application, Mr. Kushnir did not understand why the application was required, and was still without a complete explanation of when, why and how the policy had lapsed, but he proceeded with the application on the advice of PPA, who appears to have been in direct contact with your company. On June 8, 2008, he was advised by Linda Haworth, Senior Underwriter at Aviva, that reinstatement was declined "due to [his] lab results." The lab results were enclosed but no explanation of the basis of the decision provided.

On behalf of Mr. Kushnir, we request you provide a complete explanation of (i) the current status of the Policy; (ii) the circumstances of the purported lapse of the Policy, including the date of such lapse, the cause of such lapse; and (iii) all notices provided to the Plan, Plan Sponsor V-4 Management, LLC, Mr. Kushnir, PPA, or anyone receiving notice on behalf of the foregoing, of any purported non-payment of premiums, lapse, termination or other conversion of the Policy, or of the rights or options of any party upon such events to cure, convert or reinstate.

Until we have a complete and verifiable explanation of the foregoing, it will be our position that the Policy remains in full force and effect. Without waiver of that position, however, we also ask for a complete explanation of the reasons for denial of Mr. Kushnir's application for reinstatement.

I understand that, upon your receipt of the enclosed authorization, I can obtain certain of this information immediately via telephone at 800-800-9882, and receive documentation promptly thereafter. I will call later today.

Thank you in advance for your prompt assistance in this matter.

Very truly yours,

Robert B. Eyre, Esquire

RBE/dd
Enclosure

cc:     Vladmir Kushnir (via email)
        Dennis Cunning, Pension Professionals Group (via email and regular mail)
        Linda Haworth, Aviva Life and Annuity Company (via facsimile)

# EXHIBIT "11"

# AVIVA

Aviva USA  611 5th Avenue  Des Moines  IA 50309-1603  Tel 800 800 9882  www.avivausa.com

July 26, 2010

**VIA UPS OVERNIGHT DELIVERY**

Mr. Robert B. Eyre
Foehl & Eyre
27 East Front Street
Media, Pennsylvania 19063-0941

**RE: Vladimir Kushnir, Policy No. 100098974**

Dear Mr. Eyre:

Thank you for contacting Aviva Life and Annuity Company (hereinafter "Aviva") regarding the above-referenced policy (hereinafter "the Policy") owned by V4 Management LLC Pension Plan Trust (hereinafter "the Trust") and insuring the life of Vladimir Kushnir. As set forth below, the Policy has been placed on reduced paid-up insurance due to non-payment of premium. It is our understanding that the Trust seeks to have the Policy reinstated without complying with current underwriting standards. For the reasons set forth below, Aviva must deny the request.

## POLICY HISTORY

Enclosed please find the complete policy file related to the Policy. Included in the file are, among other things, the policy statements and notices you requested. As you can see, five annual premiums totaling $950,575.42 were paid on the Policy. The sixth annual premium was not paid, and no request was made to pay premium from the available policy values. As a result, the Policy went to reduced paid-up insurance on February 3, 2008, in the amount of $769,304 with a cash surrender value of $269,265.98 as of February 3, 2010, the last policy anniversary.

As you will see in the file, proper notice of the premium due date and election to pay future premium from the available policy values was mailed via regular mail prior to the due date, and a second notice was sent via certified mail prior to the end of the grace period. These letters were sent to the address provided to Aviva. In addition, copies of the notices were sent to Mr. Scott Ridge, the servicing agent at the time.

Aviva USA Corporation  Aviva Life and Annuity Company
Aviva Life and Annuity Company of New York  American Investors Life Insurance Company, Inc.

Aviva 1

## CONCLUSION

After reviewing the policy file, it is clear that Aviva properly administered the policy in accord with the information and instructions provided by the Trust. As such, Aviva cannot reinstate the Policy without applying current underwriting standards. As stated-above, I have enclosed the complete policy file for your independent review and consideration. If you have any questions or wish to discuss further, please do not hesitate to contact me.

Sincerely,

Christopher McDonald
Senior Counsel, Aviva USA

Enclosures

cc: Jennifer Morrow (without enclosures)

Aviva 2

# EXHIBIT
# "12"

# FOEHL & EYRE
### A Professional Corporation

GENE A. FOEHL *
ROBERT B. EYRE *
LAURIE A. McCARTHY
A. JORDAN RUSHIE †

27 EAST FRONT STREET
MEDIA, PENNSYLVANIA 19063-0941
PH: (610) 566-5926
FX: (610) 892-9307
www.foehllaw.com

OF COUNSEL
THEODORE B. MUCELLIN
GREGORY L. VOLZ
BURKE T. WARD ▲

* ALSO MEMBER MD BAR
† ALSO MEMBER NJ BAR

▲ LL.M IN TAXATION

October 28, 2010

email:rob@foehllaw.com

*Via Facsimile (515) 283-3108*
*and Regular Mail*

John T. Clendenin, Esquire
Nyemaster, Good, West, Hansell
 & O'Brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899

**RE:** **Aviva (Indianapolis Life) Policy No. 00100098974**
**Insured:  Vladimir Kushnir**
**Owner:  V-4 Management, LLC Defined Benefit Pension Plan**

Dear Mr. Clendenin:

I represent the Vladamir Kushnir, the insured on the above referenced Policy.  I understand you have been retained by Aviva/Indianapolis Life to respond to our demands for reinstatement of the Policy.

I previously corresponded with Aviva's Customer Service Department, on July 14, 2010, and thereafter with its in-house counsel, Christopher McDonald, by letters dated July 20, 2010, July 26, 2010, August 3, 2010, and August 20, 2010.  Copies of all correspondence are enclosed for your reference.  On September 7, 2010, Mr. McDonald advised me that the matter was being referred to you, as outside counsel, and said I would hear from you.  I called you later that month and, after trading several voicemails, you advised me on September 21, 2010 that you had the file, were in the process of reviewing it, and would contact me shortly.  I have heard nothing.

Aviva has provided absolutely no evidence of proper notice of premium due, lapse, or right to reinstate within the grace period.  Moreover, the Policy could not lapse for failure to pay a premium as it was always intended that the Net Cash Value of the Policy be applied to premiums after year five, and there was more than sufficient value to cover all premiums to date.  The Policy was designed and marketed by Indianapolis Life and its agents on this premise, as indicated by the enclosed Policy Illustration prepared for Mr. Kushnir in connection with his application.

John T. Clendenin, Esquire
October 28, 2010
Page 2

_____

Accordingly, we again demand that the Policy be reinstated, without premiums due, with all rights restored to Mr. Kushnir as if there was no lapse. Otherwise, legal action will be commenced for reinstatement and for damages to the full extent allowed by law, including attorneys' fees and exemplary damages as allowed pursuant to Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law (73 P.S. § 201-1 *et seq.*) and insurance bad faith statute (42 Pa.C.S.A. § 8371).

Very truly yours,

Robert B. Eyre, Esquire

RBE/dd
Enclosures

cc:     Vladimir Kushnir (via email)
        Dennis Cunning, Pension Professionals Group (via email and regular mail)

# EXHIBIT "13"

Rob Eyre

| | |
|---|---|
| From: | John T. Clendenin [JTC@nyemaster.com] |
| Sent: | Friday, October 29, 2010 5:44 PM |
| To: | 'rob@foehllaw.com' |
| Cc: | John T. Clendenin |
| Subject: | Vladimir Kushnir, Aviva Policy No. 100098974 (iWOV-WORKSITE.FID551254] |

Attachments: 2008 Notices-Kushnir-Policy 100098974.pdf, Form 4064--EVIP_Kushnir-Policy 100098974.pdf

Rob,

Thank you for your faxed letter of yesterday afternoon. Contrary to the letter, I did call you on October 6 regarding this matter. I left a message for you to call me when you wished to discuss further. Your letter of yesterday is the first record I have of any communication on this matter since. Regardless, I do have documentation that demonstrates Aviva did, in fact, provide proper notice of the premium payment due on February 3, 2008, an offer to allow future premiums to be paid out of policy values (to the extent sufficient policy values existed), a late payment offer that expired March 27, 2008 and a notice of lapse and conversion to reduced paid up status, dated March 27, 2008. I have attached copies of these documents to this email for your review.

It appears that Mr. Kushnir did not elect to have the premium on his policy paid out of policy values until April 29, 2010, when he signed and returned Form 4064—EVIP (the form originally provided to him on or about February 27, 2008) (also attached). Of course, by April 29, 2010, the policy had already converted to reduced paid up status and it was too late for Mr. Kushnir to make the attempted election.

Based on the billing, late payment and lapse notices provided by Aviva, the lapse and conversion of Mr. Kushnir's policy was entirely proper within the terms of the policy. It appears the policy lapsed because Mr. Kushnir did not pay the 2008 premium when due, and also did not timely elect to have the 2008 premium paid from the policy's values. Of course, the policy's non-forfeiture provision converted the policy into a reduced paid up status, as noted in Aviva's March 27, 2008 letter to Mr. Kushnir (also attached).

I will be in the office on Monday and willing to discuss this further with you. I will plan to call you at 10:00 a.m. CT/11:00 a.m. ET. Please let me know if another time will work better for you.

Thank you.


NYEMASTER GOODE
NYEMASTER, GOODE, WEST, HANSELL & O'BRIEN, P.C.
ATTORNEYS & COUNSELORS AT LAW

**John T. Clendenin**
**Nyemaster Goode, P.C.**
**700 Walnut Street, Suite 1600**
**Des Moines, IA 50309**
**Telephone: (515) 283-3138**
**Facsimile: (515) 283-8045**
**Email: jtc@nyemaster.com**
**www.nyemaster.com**

AVIVA C388

5/27/2011

*Offices in Des Moines, Ames, and Cedar Rapids, Iowa*

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. Thank you.

AVIVA C389

5/27/2011

# EXHIBIT "14"



# AVIVA

## INDIANAPOLIS LIFE INSURANCE COMPANY

**Administrative Office:**
611 5th Avenue
P.O Box 14590
Des Moines, IA 50306-3590
1-800-428-7031
1-888-329-1329 Fax

---

An In-Force Life Insurance Policy Illustration

**Whole Life Insurance with Current Interest**
Vista PenPro

*Designed for*
**VLADIMIR KUSHNIR**
Policy Number: 000100098974

**SCOTT A RIDGE**
**801 Ashworth Rd**
**West Des Moines, Iowa 50265**
**(515)222-0720**
**TRENT@DAVISLIFE.COM**

**THIS IS AN ILLUSTRATION ONLY. AN ILLUSTRATION IS NOT INTENDED TO PREDICT ACTUAL PERFORMANCE. INTEREST RATES, DIVIDENDS AND VALUES SET FORTH IN THE ILLUSTRATION ARE NOT GUARANTEED, EXCEPT FOR THOSE ITEMS CLEARLY LABELED AS GUARANTEED.**

---

Form A9-96
**In-Force Illustration**
*December 31, 2007, 12:24 PM*

DB: 29002.0002 SYS· 2.90.068 Version: 2.90.0.132W
*This is page 1 of 7 pages*
*and is not valid unless all pages are included.*
Aviva 120

## Indianapolis Life Insurance Company

### In-Force Life Insurance Illustration
### Vista PenPro
Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| | |
|---|---|
| **In-Force Illustration** | This illustration is intended to help you see how your individual life insurance policy is affected by changes in interest crediting rates, monthly charges, and by changes to premium mode or benefits. The illustrations of guaranteed and non-guaranteed values depend on the information entered for your policy. Please review this information and contact us if you have any questions. Policy information will reflect activity since the last annual statement. |
| **Whole Life Insurance with Current Interest** | This individual life insurance policy provides for guaranteed coverage for the lifetime of the insured, provided the necessary premiums are paid. This illustration shows policy values and benefits based upon assumptions specified herein, and reflects both guaranteed and non-guaranteed values. Current interest rates and cost factors are subject to change. |

**This illustration was run on a Qualified basis. For a complete description of the benefits and conditions, please refer to your policy.**

### POLICY INFORMATION

| | |
|---|---|
| **Issue Information** | Policy issued on February 3, 2003 at Insurance Age 39. |
| **Assumed Class** | Standard Tobacco |
| **In-Force Illustration Effective Date** | Information as of November 30, 2007. Activity after this date is NOT reflected. |

**Coverage Summary**
**Base Insured Benefits**

| Description | Amount | From Age To Age | Current Annual Premium | Current Annualized Premium |
|---|---|---|---|---|
| Base Plan | $4,614,517 | 39 - 100 | $190,118.10 | $190,118.10 |

**Summary of Values**

| Description | Amount |
|---|---|
| Current Accumulation Value: | $763,222 |
| Less Surrender Charge: | $641,418 |
| Current Net Cash Value | $121,804 |
| Guaranteed Net Cash Value | $185,550 |
| Cumulative Premiums Paid Out of Pocket: | $950,591 |
| Premium Paid to Date: | 2/3/2008 |

| | |
|---|---|
| **Underwriting Approval Required** | Any addition of riders, increases to riders, underwriting class changes and removal of ratings are subject to underwriting approval. |
| **Modified Endowment Contract** | THIS POLICY HAS BEEN CHECKED AGAINST THE 7-PAY TEST. |
| | As illustrated, this policy would not become a Modified Endowment Contract. However, changes to the policy that are not represented in this illustration may result in this policy becoming a MEC. We suggest that you consult your professional tax advisor for the interpretation of current and proposed tax law. |

*Form A9-96*
*December 31, 2007, 12:24 PM*

*DB: 29002.0002 SYS: 2.90.068 Version: 2.90 0 132W*
*This is page 2 of 7 pages*
*and is not valid unless all pages are included.*
AVIVA 121

## Indianapolis Life Insurance Company

### In-Force Life Insurance Illustration
### Vista PenPro
Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| | |
|---|---|
| **Additional Information** | Premiums are always required for the entire period stated in the policy. The use of existing policy values to pay future premiums will result in a decrease in the policy's cash value and may result in a decrease in the death benefits payable. Failure to pay the required premiums could result in termination of the policy. |
| | The conditional premium payment plan (if elected) allows for values in the policy to be surrendered to pay premiums as long as there remains sufficient value in the policy Numbers appearing in the Premium Outlay column show the amount of out-of-pocket premiums expected to be paid by the policy owner under the assumptions used in this illustration. A zero appearing in this column indicates that premiums are being paid from existing policy values. |
| | The Risk Rate and Monthly Expense Charge currently being charged are less than the maximum Risk Rate and the maximum Monthly Expense Charge provided in the policy. In the event the Risk Rate and/or Monthly Expense Charge are increased and/or the interest crediting rate is reduced in the future, the policy owner may be required to pay out-of-pocket premiums in addition to those shown in the Premium Outlay column and/or pay the premiums shown in the Premium Outlay column in an earlier year(s) to keep the policy in force. |
| | This policy contains substantial surrender charges in policy years one through nine. The schedule of surrender charges is stated in the policy. |
| | The current policy expense charges and risk rates of the policy will increase significantly after the tenth policy year. It is recommended the policy owner review his or her policy on or before the tenth year to determine the continued suitability for his or her life insurance needs. |

### ILLUSTRATION EXPLANATIONS

| | |
|---|---|
| **Interest and Cost Scenarios** | The illustrated data is based on the following interest rate and insurance scenarios, as indicated in the sidebar headings. This illustration presumes the non-guaranteed elements will continue as assumed for all years shown. This is not likely to occur, and actual results may be more or less favorable. |
| **Guaranteed** | The Guaranteed Net Cash Value and Guaranteed Net Death Benefit as shown are only available if all premiums are paid each year in accordance with the terms of your policy by:<br>1) Out-of-pocket payments made by the contract owner;<br>2) Surrender of a portion of the policy's Accumulation Value as provided in section 6.6 of the Policy; or<br>3) Policy Loan (use of a policy loan(s) to pay a premium(s) will reduce the Guaranteed Values as well as the Non-Guaranteed Values). |
| **Interest Rate** | The interest rate shown is an effective annual interest rate. Interest on the policy is credited monthly on the cash value after deducting expense and cost of insurance charges and before application of any surrender charge. The assumed interest rate credited to the non-loaned cash value is 4.2%. Neither current nor assumed interest rates are guaranteed nor are they estimates of future values and are subject to change. |

Form A9-96
December 31, 2007, 12:24 PM

*DB: 29002.0002 SYS: 2.90.068 Version: 2.90.0.132W*
*This is page 3 of 7 pages*
*and is not valid unless all pages are included.*
Aviva 122

## Indianapolis Life Insurance Company

### In-Force Life Insurance Illustration
### Vista PenPro
Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| | |
|---|---|
| **Cost Disclosure** | The non-guaranteed elements illustrated are based on fully allocated expenses. |

### DEFINITION OF KEY TERMS ON LEDGERS

| | |
|---|---|
| **Future Contract Premium** | This is the amount of future premium required to keep this policy and illustrated riders in force. This illustration assumes that any premium payment made is at the beginning of the month of the premium mode selected. |
| **Non-Guaranteed Premium from Policy Values** | This is the expected amount of money taken from policy values to pay the future contract premium. |
| **Net Outlay** | This is the amount of out of pocket premiums the contract owner plans to pay minus Premium from Policy Values minus loans plus loan interest paid out of pocket. |
| **Accumulation Value** | This is the value that will be in your policy, assuming you pay the illustrated premiums out of pocket, current charges are deducted and the assumed interest rates are credited. This value is not guaranteed and is subject to change. |
| **Net Cash Value** | The accumulation value less any surrender charges that apply, and any outstanding policy loans and loan interest due, if any. This is the amount available to the contract owner upon surrender. The illustrated values displayed are as of the end of the policy year. |
| **Net Death Benefit** | The illustrated death benefit is reduced by any outstanding policy loans and loan interest due, if any. This is the amount payable upon the death of the insured. The illustrated values displayed are as of the end of the policy year. |
| | **The descriptions provided in the illustration are intended to provide only a conceptual overview of the policy. For a complete description of the benefits and conditions, please refer to your policy.** |

Form A9-96
December 31, 2007, 12:24 PM

DB: 29002.0002 SYS: 2.90.068 Version: 2.90.0.132W
*This is page 4 of 7 pages
and is not valid unless all pages are included.*

## Indianapolis Life Insurance Company

### In-Force Life Insurance Illustration
### Vista PenPro
Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

### LEDGER

Key:  A = Annual Prems  S = Semi-Annual Prems  Q = Quarterly Prems  M = Monthly Prems
      L = Loan  R = Loan Repayment  I = Interest Paid Out of Pocket  P = Premiums Paid from Policy Values

| Policy Year | Att Age | Key | Future Contract Premium | Non-Guar. Premium from Policy Values* | Net Outlay | Guaranteed Net Cash Value | Guaranteed Net Death Benefit | Non-Guaranteed Assumed at 4.2% Accum Value | Non-Guaranteed Assumed at 4.2% Net Cash Value | Non-Guaranteed Assumed at 4.2% Net Death Benefit |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 44 | A | 0 | 0 | 0 | 197,363 | 4,614,517 | 764,925 | 197,363 | 4,614,517 |
| 6 | 45 | P | 190,118 | 190,118 | 0 | 269,949 | 4,614,517 | 774,523 | 269,949 | 4,614,517 |
| 7 | 46 | P | 190,118 | 190,118 | 0 | 343,874 | 4,614,517 | 783,531 | 398,680 | 4,614,517 |
| 8 | 47 | P | 190,118 | 190,118 | 0 | 419,367 | 4,614,517 | 791,948 | 535,381 | 4,614,517 |
| 9 | 48 | P | 190,118 | 190,118 | 0 | 496,337 | 4,614,517 | 799,654 | 671,370 | 4,614,517 |
| 10 | 49 | P | 190,118 | 190,118 | 0 | 574,923 | 4,614,517 | 806,561 | 806,561 | 4,614,517 |
| 11 | 50 | P | 190,118 | 190,118 | 0 | 654,938 | 4,614,517 | 775,960 | 775,960 | 4,614,517 |
| 12 | 51 | A | 190,118 | 0 | 190,118 | 736,385 | 4,614,517 | 940,927 | 940,927 | 4,614,517 |
| 13 | 52 | P | 190,118 | 190,118 | 0 | 819,169 | 4,614,517 | 911,497 | 911,497 | 4,614,517 |
| 14 | 53 | A | 190,118 | 0 | 190,118 | 903,061 | 4,614,517 | 1,077,355 | 1,077,355 | 4,614,517 |
|  |  |  | 1,711,063 | 1,330,827 | 380,236 |  |  |  |  |  |
| 15 | 54 | A | 190,118 | 0 | 190,118 | 987,784 | 4,614,517 | 1,248,547 | 1,248,547 | 4,614,517 |
| 16 | 55 | P | 190,118 | 190,118 | 0 | 1,073,152 | 4,614,517 | 1,224,679 | 1,224,679 | 4,614,517 |
| 17 | 56 | A | 190,118 | 0 | 190,118 | 1,159,213 | 4,614,517 | 1,396,216 | 1,396,216 | 4,614,517 |
| 18 | 57 | P | 190,118 | 190,118 | 0 | 1,245,827 | 4,614,517 | 1,372,334 | 1,372,334 | 4,614,517 |
| 19 | 58 | A | 190,118 | 0 | 190,118 | 1,333,180 | 4,614,517 | 1,544,089 | 1,544,089 | 4,614,517 |
| 20 | 59 | P | 190,118 | 190,118 | 0 | 1,421,317 | 4,614,517 | 1,520,261 | 1,520,261 | 4,614,517 |
| 21 | 60 | A | 190,118 | 0 | 190,118 | 1,510,378 | 4,614,517 | 1,692,382 | 1,692,382 | 4,614,517 |
| 22 | 61 | A | 190,118 | 0 | 190,118 | 1,600,176 | 4,614,517 | 1,870,808 | 1,870,808 | 4,614,517 |
| 23 | 62 | P | 190,118 | 190,118 | 0 | 1,690,436 | 4,614,517 | 1,853,292 | 1,853,292 | 4,614,517 |
| 24 | 63 | A | 190,118 | 0 | 190,118 | 1,780,788 | 4,614,517 | 2,031,877 | 2,031,877 | 4,614,517 |
|  |  |  | 3,612,244 | 2,091,299 | 1,520,945 |  |  |  |  |  |

\* This is the expected amount of money taken from policy values to pay the contract premium.

The Guaranteed Net Cash Value and Guaranteed Net Death Benefit as shown are only available if all premiums are paid each year in accordance with the terms of your policy by:

1) Out-of-pocket payments made by the contract owner;
2) Surrender of a portion of the policy's Accumulation Value as provided in section 6.6 of the Policy; or
3) Policy Loan (use of a policy loan(s) to pay a premium(s) will reduce the Guaranteed Values as well as the Non-Guaranteed Values).

Form A9-96
December 31, 2007, 12·24 PM

DB: 29002.0002 SYS· 2 90.068 Version: 2.90.0.132W
This is page 5 of 7 pages
and is not valid unless all pages are included.

Aviva 124

# Indianapolis Life Insurance Company

## In-Force Life Insurance Illustration
## Vista PenPro
### Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| Policy Year | Att Age | Key | Future Contract Premium | Non-Guar. Premium from Policy Values* | Net Outlay | Guaranteed Net Cash Value | Guaranteed Net Death Benefit | Non-Guaranteed Assumed at 4.2% Accum Value | Non-Guaranteed Assumed at 4.2% Net Cash Value | Non-Guaranteed Assumed at 4.2% Net Death Benefit |
|---|---|---|---|---|---|---|---|---|---|---|
| 25 | 64 | P | 190,118 | 190,118 | 0 | 1,870,633 | 4,614,517 | 2,013,301 | 2,013,301 | 4,614,517 |
| 26 | 65 | A | 190,118 | 0 | 190,118 | 1,959,739 | 4,614,517 | 2,190,531 | 2,190,531 | 4,614,517 |
| 27 | 66 | P | 190,118 | 190,118 | 0 | 2,047,923 | 4,614,517 | 2,169,675 | 2,169,675 | 4,614,517 |
| 28 | 67 | A | 190,118 | 0 | 190,118 | 2,135,322 | 4,614,517 | 2,345,109 | 2,345,109 | 4,614,517 |
| 29 | 68 | P | 190,118 | 190,118 | 0 | 2,222,121 | 4,614,517 | 2,322,165 | 2,322,165 | 4,614,517 |
| 30 | 69 | A | 190,118 | 0 | 190,118 | 2,308,781 | 4,614,517 | 2,496,564 | 2,496,564 | 4,614,517 |
| 31 | 70 | A | 190,118 | 0 | 190,118 | 2,395,257 | 4,614,517 | 2,679,480 | 2,679,480 | 4,614,517 |
| 32 | 71 | P | 190,118 | 190,118 | 0 | 2,481,503 | 4,614,517 | 2,664,557 | 2,664,557 | 4,614,517 |
| 33 | 72 | A | 190,118 | 0 | 190,118 | 2,567,056 | 4,614,517 | 2,848,804 | 2,848,804 | 4,614,517 |
| 34 | 73 | P | 190,118 | 190,118 | 0 | 2,651,271 | 4,614,517 | 2,833,954 | 2,833,954 | 4,614,517 |
| | | | 5,513,425 | 3,041,890 | 2,471,535 | | | | | |
| 35 | 74 | A | 190,118 | 0 | 190,118 | 2,733,409 | 4,614,517 | 3,018,585 | 3,018,585 | 4,614,517 |
| 36 | 75 | P | 190,118 | 190,118 | 0 | 2,813,194 | 4,614,517 | 3,002,971 | 3,002,971 | 4,614,517 |
| 37 | 76 | A | 190,118 | 0 | 190,118 | 2,889,980 | 4,614,517 | 3,188,089 | 3,188,089 | 4,614,517 |
| 38 | 77 | P | 190,118 | 190,118 | 0 | 2,964,089 | 4,614,517 | 3,172,704 | 3,172,704 | 4,614,517 |
| 39 | 78 | P | 190,118 | 190,118 | 0 | 3,036,029 | 4,614,517 | 3,145,300 | 3,145,300 | 4,614,517 |
| 40 | 79 | A | 190,118 | 0 | 190,118 | 3,106,539 | 4,614,517 | 3,321,236 | 3,321,236 | 4,614,517 |
| 41 | 80 | P | 190,118 | 190,118 | 0 | 3,175,941 | 4,614,517 | 3,295,669 | 3,295,669 | 4,614,517 |
| 42 | 81 | A | 190,118 | 0 | 190,118 | 3,244,375 | 4,614,517 | 3,476,334 | 3,476,334 | 4,614,517 |
| 43 | 82 | P | 190,118 | 190,118 | 0 | 3,311,516 | 4,614,517 | 3,455,592 | 3,455,592 | 4,614,517 |
| 44 | 83 | A | 190,118 | 0 | 190,118 | 3,376,857 | 4,614,517 | 3,644,224 | 3,644,224 | 4,614,517 |
| | | | 7,414,606 | 3,992,480 | 3,422,126 | | | | | |
| 45 | 84 | P | 190,118 | 190,118 | 0 | 3,439,707 | 4,614,517 | 3,631,979 | 3,631,979 | 4,614,517 |
| 46 | 85 | P | 190,118 | 190,118 | 0 | 3,499,650 | 4,614,517 | 3,605,606 | 3,605,606 | 4,614,517 |
| 47 | 86 | A | 190,118 | 0 | 190,118 | 3,557,239 | 4,614,517 | 3,792,769 | 3,792,769 | 4,614,517 |
| 48 | 87 | P | 190,118 | 190,118 | 0 | 3,612,659 | 4,614,517 | 3,778,614 | 3,778,614 | 4,614,517 |
| 49 | 88 | A | 190,118 | 0 | 190,118 | 3,667,434 | 4,614,517 | 3,987,141 | 3,987,141 | 4,625,084 |

* This is the expected amount of money taken from policy values to pay the contract premium.

The Guaranteed Net Cash Value and Guaranteed Net Death Benefit as shown are only available if all premiums are paid each year in accordance with the terms of your policy by:

1) Out-of-pocket payments made by the contract owner;
2) Surrender of a portion of the policy's Accumulation Value as provided in section 6.6 of the Policy; or
3) Policy Loan (use of a policy loan(s) to pay a premium(s) will reduce the Guaranteed Values as well as the Non-Guaranteed Values).

*Form A9-96*
*December 31, 2007, 12:24 PM*

DB: 29002.0002 SYS: 2.90.068 Version: 2.90.0.132W
*This is page 6 of 7 pages*
*and is not valid unless all pages 25 are included.*

## Indianapolis Life Insurance Company

### In-Force Life Insurance Illustration
### Vista PenPro
Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| Policy Year | Att Age | Key | Future Contract Premium | Non-Guar. Premium from Policy Values* | Net Outlay | Guaranteed | | Non-Guaranteed Assumed at 4.2% | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Net Cash Value | Net Death Benefit | Accum Value | Net Cash Value | Net Death Benefit |
| 50 | 89 | P | 190,118 | 190,118 | 0 | 3,721,008 | 4,614,517 | 4,001,516 | 4,001,516 | 4,614,517 |
| 51 | 90 | P | 190,118 | 190,118 | 0 | 3,775,321 | 4,614,517 | 4,011,328 | 4,011,328 | 4,614,517 |
| 52 | 91 | P | 190,118 | 190,118 | 0 | 3,830,972 | 4,614,517 | 4,014,865 | 4,014,865 | 4,614,517 |
| 53 | 92 | A | 190,118 | 0 | 190,118 | 3,889,484 | 4,614,517 | 4,230,412 | 4,230,412 | 4,742,292 |
| 54 | 93 | P | 190,118 | 190,118 | 0 | 3,953,026 | 4,614,517 | 4,258,935 | 4,258,935 | 4,731,677 |
| | | | 9,315,787 | 5,323,307 | 3,992,480 | | | | | |
| 55 | 94 | P | 190,118 | 190,118 | 0 | 4,022,890 | 4,614,517 | 4,291,695 | 4,291,695 | 4,720,865 |
| 56 | 95 | P | 190,118 | 190,118 | 0 | 4,101,060 | 4,614,517 | 4,329,821 | 4,329,821 | 4,710,845 |
| 57 | 96 | P | 190,118 | 190,118 | 0 | 4,186,890 | 4,614,517 | 4,372,212 | 4,372,212 | 4,704,500 |
| 58 | 97 | A | 190,118 | 0 | 190,118 | 4,279,965 | 4,614,517 | 4,614,096 | 4,614,096 | 4,900,169 |
| 59 | 98 | P | 190,118 | 190,118 | 0 | 4,377,377 | 4,614,517 | 4,670,795 | 4,670,795 | 4,894,993 |
| 60 | 99 | P | 190,118 | 190,118 | 0 | 4,470,313 | 4,614,517 | 4,732,736 | 4,732,736 | 4,893,649 |
| 61 | 100 | P | 190,118 | 190,118 | 0 | 4,614,517 | 4,614,517 | 4,809,973 | 4,809,973 | 4,906,172 |
| | | | 10,646,614 | 6,464,015 | 4,182,598 | | | | | |

* This is the expected amount of money taken from policy values to pay the contract premium.

The Guaranteed Net Cash Value and Guaranteed Net Death Benefit as shown are only available if all premiums are paid each year in accordance with the terms of your policy by:

1) Out-of-pocket payments made by the contract owner;
2) Surrender of a portion of the policy's Accumulation Value as provided in section 6.6 of the Policy; or
3) Policy Loan (use of a policy loan(s) to pay a premium(s) will reduce the Guaranteed Values as well as the Non-Guaranteed Values).

Form A9-96
December 31, 2007, 12·24 PM

DB: 29002.0002 SYS. 2.90.068 Version: 2 90 0.132W
This is page 7 of 7 pages
and is not valid unless all pages are included.
Aviva 126

## Indianapolis Life Insurance Company

### Supplemental Illustration
### Vista PenPro

Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

### SUPPLEMENTAL ILLUSTRATION

Mortality and expense charges increase significantly in the eleventh year of a Vista PenPro policy. Therefore, a special feature of Vista PenPro provides for the exchange of the Vista PenPro policy after the tenth year, without evidence of insurability, to a universal life contract offered at that time by the Company.

The Vista PenPro Information section below shows the non-guaranteed values on your existing Vista PenPro plan through policy year 10.

### VISTA PENPRO INFORMATION

| Policy Year | Att Age | Future Contract Premium | Non-Guar. Premium from Policy Values | Net Outlay | Non-Guaranteed Assumed at 4.2% | | |
|---|---|---|---|---|---|---|---|
| | | | | | Accum Value | Net Cash Value | Net Death Benefit |
| 5 | 44 | 0 | 0 | 0 | 764,925 | 197,363 | 4,614,517 |
| 6 | 45 | 190,118 | 190,118 | 0 | 774,523 | 269,949 | 4,614,517 |
| 7 | 46 | 190,118 | 190,118 | 0 | 783,531 | 398,680 | 4,614,517 |
| 8 | 47 | 190,118 | 190,118 | 0 | 791,948 | 535,381 | 4,614,517 |
| 9 | 48 | 190,118 | 190,118 | 0 | 799,654 | 671,370 | 4,614,517 |
| | | 760,472 | 760,472 | 0 | | | |
| 10 | 49 | 190,118 | 190,118 | 0 | 806,561 | 806,561 | 4,614,517 |
| | | 950,591 | 950,591 | 0 | | | |

**NOTICE: THIS SUPPLEMENTAL ILLUSTRATION IS INVALID AND INCOMPLETE UNLESS ACCOMPANIED BY A BASIC ILLUSTRATION.**

**Indianapolis Life Insurance Company**

**Supplemental Illustration**

**Vista PenPro**

Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

## SUPPLEMENTAL ILLUSTRATION

The following information shows an exchange to a Modified Vista Advantage Indexed UL product currently offered by the Company. This contract may or may not be available at the time of an exchange of your Vista PenPro policy. The illustration is provided as an example only. For further information on this plan or exchange options available, contact the Home Office. The Modified Vista Advantage Indexed UL plan has these product features.

- The Net Cash Value transferred from the Vista PenPro plan is treated as a single premium to fund the Modified Vista Advantage Indexed UL plan. The single premium is not charged a premium load.
- Any policy loans on the Modified Vista Advantage Indexed UL plan will be charged a fixed loan interest rate of 3.85% in advance for non-preferred loans and 1.96% in advance for preferred loans.
- 100% of the premiums are first directed to the Basic Interest Strategy of the Modified Vista Advantage plan. Sufficient premium is retained in this strategy to pay the cost of insurance through the end of the policy year. For illustrative purposes, the remaining premium is then directed to the 1 Year Point to Point Strategy. A weighted average assumed rate of the Basic Interest Strategy and the 1 Year Point to Point Strategy is used and displayed annually on the chart below.
- No riders from the Vista PenPro plan will be included with the Modified Vista Advantage Indexed UL plan.
- The same rating class, any table ratings and any flat extra ratings from the Vista PenPro plan will be used with the Modified Vista Advantage Indexed UL plan.

### MODIFIED VISTA ADVANTAGE INDEXED UL EXCHANGE INFORMATION

| Policy Year | Att Age | Net Outlay | Non-Guaranteed Assumed Weighted Average Interest Rate | Non-Guaranteed Assumed Net Cash Value | Non-Guaranteed Assumed Net Death Benefit |
|---|---|---|---|---|---|
| 11 | 50 | 0 | 7.46 | 841,472 | 4,614,517 |
| 12 | 51 | 0 | 7.55 | 876,655 | 4,614,517 |
| 13 | 52 | 0 | 7.55 | 912,100 | 4,614,517 |
| 14 | 53 | 0 | 7.55 | 947,915 | 4,614,517 |
| 15 | 54 | 0 | 7.55 | 984,341 | 4,614,517 |
| 16 | 55 | 0 | 7.55 | 1,021,551 | 4,614,517 |
| 17 | 56 | 0 | 7.55 | 1,059,533 | 4,614,517 |
| 18 | 57 | 0 | 7.55 | 1,098,556 | 4,614,517 |
| 19 | 58 | 0 | 7.55 | 1,138,321 | 4,614,517 |
| 20 | 59 | 0 | 7.55 | 1,184,125 | 4,614,517 |
| 21 | 60 | 0 | 7.55 | 1,229,261 | 4,614,517 |
| 22 | 61 | 0 | 7.55 | 1,273,794 | 4,614,517 |
| 23 | 62 | 0 | 7.55 | 1,317,344 | 4,614,517 |
| 24 | 63 | 0 | 7.55 | 1,359,954 | 4,614,517 |
| 25 | 64 | 0 | 7.55 | 1,401,409 | 4,614,517 |

**NOTICE: THIS SUPPLEMENTAL ILLUSTRATION IS INVALID AND INCOMPLETE UNLESS ACCOMPANIED BY A BASIC ILLUSTRATION.**

Aviva 128

# Indianapolis Life Insurance Company

## Supplemental Illustration
## Vista PenPro
### Issue State: AZ

Designed for: VLADIMIR KUSHNIR
Current Insurance Age: 44
Currently Standard Tobacco
Date of Birth: 9/21/1963

Policy Number: 000100098974
$4,614,517 Current Face Amount
Current Annual Premium: $190,118.10

| Policy Year | Att Age | Net Outlay | Non-Guaranteed Assumed Weighted Average Interest Rate | Non-Guaranteed Assumed Net Cash Value | Non-Guaranteed Assumed Net Death Benefit |
|---|---|---|---|---|---|
| 26 | 65 | 0 | 7 55 | 1,432,615 | 4,614,517 |
| 27 | 66 | 0 | 7.55 | 1,460,586 | 4,614,517 |
| 28 | 67 | 0 | 7 55 | 1,484,462 | 4,614,517 |
| 29 | 68 | 0 | 7.55 | 1,503,175 | 4,614,517 |
| 30 | 69 | 0 | 7.55 | 1,515,485 | 4,614,517 |
| 31 | 70 | 0 | 7.55 | 1,519,906 | 4,614,517 |
| 32 | 71 | 0 | 7.55 | 1,514,718 | 4,614,517 |
| 33 | 72 | 0 | 7 55 | 1,497,948 | 4,614,517 |
| 34 | 73 | 0 | 7.55 | 1,467,321 | 4,614,517 |
| 35 | 74 | 0 | 7.55 | 1,419,860 | 4,614,517 |
| 36 | 75 | 0 | 7.55 | 1,351,741 | 4,614,517 |
| 37 | 76 | 0 | 7 55 | 1,257,986 | 4,614,517 |
| 38 | 77 | 0 | 7.55 | 1,132,318 | 4,614,517 |
| 39 | 78 | 0 | 7.55 | 966,623 | 4,614,517 |
| 40 | 79 | 0 | 7.55 | 750,631 | 4,614,517 |
| 41 | 80 | 0 | 7.55 | 471,087 | 4,614,517 |
| 42 | 81 | 0 | 7 55 | 110,739 | 4,614,517 |
| 43 | 82 | 0 | 7.55 | 0 | 0 |

**NOTICE: THIS SUPPLEMENTAL ILLUSTRATION IS INVALID AND INCOMPLETE UNLESS ACCOMPANIED BY A BASIC ILLUSTRATION.**