IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VLADIMIR KUSHNIR, Individually and as Trustee of the V-4 Management LLC Defined Defined Benefit Pension Plan & Trust, and V-4 MANAGEMENT, LLC,<br>　　　Plaintiffs, | : : : : : : | CIVIL ACTION<br><br>NO. 11-7701 |
| v. | : : | |
| AVIVA LIFE & ANNUITY COMPANY,<br>　　　Defendant/Third Party Plaintiff, | : : : | |
| v. | : : | |
| JEFFREY CUNNING; ROGER FULLER; SCOTT RIDGE; and T.J AGRESTI,<br>　　　Third Party Defendants. | : : : | |

**DuBois, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 21, 2013**

**M E M O R A N D U M**

**I.　INTRODUCTION**

Plaintiffs Vladimir Kushnir and V-4 Management, LLC brought suit against defendant Aviva Life & Annuity Company in connection with a life insurance policy purchased from defendant. Presently before the Court is defendant's partial motion to dismiss the Amended Complaint. For the reasons set forth below, the Court grants in part and denies in part defendant's motion.

**II.　BACKGROUND**

In their Amended Complaint, plaintiffs Vladimir Kushnir and V-4 Management, LLC, allege, <u>inter alia</u>, that defendant Aviva Life & Annuity Company and certain authorized agents marketed and sold Kushnir a life insurance policy ("the Policy") which he used to fund a defined benefit pension plan established by V-4. This type of benefit plan, created under 26 U.S.C. §

1

412(i)[1] of the Internal Revenue Code, generally provides participating employees with certain retirement and death benefits and "must be funded by assets sufficient to fund those future benefits," such as insurance or annuity policies.  (Am. Compl. at ¶16.)

Plaintiffs allege that defendant and its agents "consistently represented that the Policy would require only five out-of-pocket premium payments of $190,119.10 each in years one through five of the Policy, with the annual premiums in at least each of the next six years . . . being paid from the Policy's accumulated cash value or loans against the same."  (Id. at ¶61.)  The Policy was issued on February 3, 2003, and plaintiffs paid annual premiums of $190,118.10 for five years, from 2003 to 2007.  (Id. at ¶80.)

"Defendant claims to have placed the Kushnir Policy on 'reduced paid up' . . . status, as of March 27, 2008, for alleged failure of Kushnir to pay the annual premium due on February 3, 2008 . . . ."  (Id. at ¶89.)  Plaintiffs allege that as a consequence of the "reduced paid up status," the death benefit under the Policy was reduced by $3.8 million, and the "surrender charges" of the Policy were increased, which in turn caused the cash surrender value of the Policy to decrease. (Id. at ¶90.)

In 2007 the IRS initiated an audit concerning "Plaintiffs' use of the Kushnir Policy to fund the V-4 Plan."  (Id. at ¶84.)  The IRS subsequently determined that "Plaintiffs' use of the Kushnir Policy to fund the V-4 Plan was abusive and unlawful, resulting in the denial of tax exemptions and deductions claimed by Kushnir and V-4 on the $950,75.42 in premium contributions, and the assessment of excise taxes and other penalties . . . . " (Id. at ¶85.)

---

1 Defendant notes that 2006 amendments to the statue renumbered § 412(i) as § 412(e)(3) but left the contents unchanged.  The parties both refer to the subsection as § 412(i) and the Court will do likewise.

2

The Amended Complaint contains five counts: (1) Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), (2) Common Law Fraud, (3) Equitable Rescission/Unjust Enrichment, (4) Breach of Contract, and (5) Bad Faith.

Defendant moves to dismiss plaintiffs' "fraud-based" claims in Counts I and II of the Amended Complaint. The gravamen of plaintiffs' claims in Counts I and II is that defendant misrepresented both (1) the legality and effectiveness of using the Policy to fund a § 412(i) plan, and (2) the payment schedule for the Policy. Defendant seeks dismissal only of those fraud-based claims in Counts I and II which address the legality and effectiveness of the § 412(i) plan. Defendant also moves to dismiss Count III of the Amended Complaint.[2] The Court addresses defendant's arguments in turn.

## III.   DISCUSSION

### A. Count I- Violation of UTPCPL

Defendant first argues that plaintiff lacks standing to bring a claim under the UTPCPL because the product at issue was purchased for business purposes. The UTPCPL permits a private right of action where a plaintiff experiences a loss from certain unlawful business practices, so long as the "goods or services" at issue are "primarily for personal, family or household purposes . . . . " 73 Pa. Stat. Ann. § 201-9.2. "Whether a purchase is primarily for household purposes and a cause of action under the UTPCPL is available depends on the purpose of the purchase, not the type of product purchased." Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 618 (E.D. Pa. 2010). Defendant argues that the § 412(i) plan at issue was

---

[2] Defendant seeks dismissal of those parts of the fraud-based claims in Counts I, II and III, "relating to the § 412(i) plan." (Reply at 3.)  However, in its motion papers defendant argues that Count III in its entirety is improper as a matter of law.

3

created for Kushnir's business purposes and, as such, his claims under the UTPCPL should be dismissed.

In response, plaintiffs state that the product at issue is not the § 412(i) plan, but rather the Policy that was marketed and sold by defendant and its agents.  Plaintiffs allege that the Policy was in fact purchased by Kushnir "for his individual, personal use and benefit, to be funded by tax exempt contributions of a portion of his own compensation and purchased out of the V-4 Plan by him."  (Am. Compl. at ¶56.)

The Court concludes that there is a disputed issue of material fact on this question. Defendant avers that Kushnir utilized a § 412(i) plan solely for business purposes, while plaintiffs claim that "the Plan was merely a temporary vessel that Plaintiff Kushnir was to use to deposit an insurance policy (paid for by him) for five years, at which point it was to come back to him." (Resp. at 32.)  "It is not the duty of the court, upon a motion to dismiss, to decide the merits where an issue of material fact is in dispute."  Motorup Corp. v. Galland, Kharasch & Garfinkle, 2001 WL 34368760, at *2 (E.D. Pa. Dec. 4, 2001).  Accordingly, defendant's motion on this ground is denied.

  B. Count II- Common Law Fraud

State courts have described the elements of fraud as: "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance."  Bortz v. Noon, 556 Pa. 489, 499 (Pa.1999).  Defendant argues that plaintiffs' common law fraud count should be dismissed for two reasons: (1) plaintiffs do not allege a

misrepresentation of a pre-existing fact, and (2) plaintiffs cannot establish justifiable reliance. The Court addresses these arguments in turn.

First, defendant states that common-law fraud requires a misrepresentation or omission of an "existing or pre-existing fact," and that plaintiffs have alleged only incorrect statements of opinion relating to future tax consequences of the Policy. (Mot. at 11, 14.) Because plaintiffs have failed to allege a misrepresentation of an existing fact, defendant argues, plaintiffs' fraud claim should be dismissed.

In response, plaintiffs contend, inter alia, that their fraud claims do not concern "forward-looking" opinions or predictions, but rather allege that defendant and its agents fraudulently misrepresented the legality and effectiveness of the Policy at the time of the sale. In the Amended Complaint, plaintiffs allege that prior to the sale of the Policy, defendant marketed and sold a type of life insurance policy known as "The Executive VIP Policy," to fund a "multi-employer welfare benefit plan[] under IRC § 419A . . . ." (Am. Compl. at ¶19.) Plaintiffs further claim that in 2000, the IRS categorized the use of policies such as The Executive VIP Policy in § 419A plans as "'listed transactions,' a transaction that is the same as, or substantially similar to, one that the IRS has determined to be an illegal or 'abusive' tax avoidance transaction." (Id. at ¶19.)

The Amended Complaint alleges that the type of life insurance sold to Kushnir, a "Vista PenPro Policy," was identical to the Executive VIP Policy, and that "419A Plans are similar to 412(i) Plans in their use of insurance and annuity products to fund the payment of future retirement and death benefits of participating employees." (Id. at ¶20, 34.) Plaintiffs conclude that the use of the Vista PenPro policy sold to Kushnir "to fund 412(i) Plans was as abusive as the use of such

5

policies to fund 419(A) Plans," and that the IRS "definitively" declared such § 412(i) plans illegal in 2004. (Id. at ¶35.)

In sum, plaintiffs aver that defendant and its agents were aware that using the Policy to fund a § 412(i) plan was abusive at the time of the sale, while defendant rejects this claim and argues that the IRS rulings pertaining to § 419A plans had no relevance to the products at issue. (Repl. at 5.) At this stage in the proceedings, the Court is required to accept as true all plausible factual allegations in the Amended Complaint, such as those facts pertaining to the knowledge of defendant and its agents. Defendant's motion on this ground is accordingly denied.

Defendant also argues that plaintiffs' common law fraud claim should be dismissed on the ground that plaintiffs cannot establish justifiable reliance on the misrepresentations alleged as they are only opinions or predictions concerning the future tax treatment of the § 412(i) plan. Plaintiffs again respond that the Amended Complaint alleges misrepresentations related to the then-current legality and tax consequences of the Policy. As noted above, the Court must accept as true all plausible factual allegations in the Amended Complaint.

Defendant separately argues that plaintiffs cannot justifiably rely upon a misrepresentation of law. The Court rejects this argument. Under Pennsylvania law, a plaintiff may justifiably rely upon a misrepresentation of the tax consequences of a transaction. See Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 614 (3d Cir. 1991). Accordingly, defendant's motion on this ground is denied.

### C. Count III- Equitable Rescission/Unjust Enrichment

Defendant argues that plaintiffs' claims for equitable rescission and unjust enrichment in Count III should be dismissed. First, defendant argues that equitable rescission is not a separate cause of action, but rather "is a remedy for fraud . . . ." Fulton Bank, N.A. v. UBS Sec., LLC,

2011 WL 5386376, at *16 (E.D. Pa. Nov. 7, 2011) (collecting cases). The Court agrees. Thus, defendant's motion is granted to the extent that plaintiffs assert a separate cause of action for equitable recession. This dismissal does not affect plaintiffs' prayer for relief in the form of equitable rescission in Counts I and II.

Defendant also argues that plaintiffs' unjust enrichment count should be dismissed on the ground that such a claim is precluded by the existence of a written contract. "[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract . . . ." Wilson Area Sch. Dist. v. Skepton, 586 Pa. 513, 520 (2006). Plaintiffs respond that their claim of unjust enrichment is proper at this stage because they are permitted to plead in the alternative.

"Courts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." Montanez v. HSBC Mortgage Corp. (USA), 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012). In this case, there is no dispute that a valid insurance contract exists and that the contract forms the basis for certain of plaintiffs' claims. As such, "plaintiffs may not assert an unjust-enrichment claim premised on the absence of a contract." Id. The Court therefore grants defendant's motion on this ground.

D. Federal Rule of Civil Procedure 9(b)

Defendant finally argues that the fraud-based claims in the Amended Complaint pertaining to the legality and effectiveness of the § 412(i) plan should be dismissed for failure to satisfy the heightened particularity requirement of Fed. R. Civ. P. 9(b). Specifically, defendant contends that the Amended Complaint fails to identify which persons or entities made the alleged

misrepresentations, the dates and locations of those misrepresentations, and how those misrepresentations were false.

"Rule 9(b) requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). "Although the requirement that a party state the circumstances constituting fraud may be fulfilled by alleging the date, place, and time of the fraudulent behavior, the plaintiff is free to use alternative means to inject precision and substantiation into its allegations." Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp. 2d 535, 538-39 (D.N.J. 2008).

Plaintiffs state that they have pled their fraud claims with sufficient particularity, noting, inter alia, that the Amended Complaint identifies "the Defendant's agents who dealt with Plaintiffs and the location of their meetings (Philadelphia) . . . . " (Resp. at 34.) However, critical factual allegations pertaining to the § 412(i) plan are absent from the Amended Complaint. Plaintiffs fail to specify which of defendant's agents, or whether defendant itself, represented that "the PenPro product was a safe, lawful and effective product," and when such representations were made. (Am. Compl. at ¶128.) Further, the Amended Complaint fails to describe any circumstances surrounding the alleged misrepresentation by defendant and its agents concerning the tax consequences of using the Policy to fund the § 412(i) plan at issue.

Plaintiffs also argue that the particularity requirement of Rule 9(b) should be relaxed because "factual information is peculiarly within the defendant's knowledge or control." In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002). However, the particularity requirement is relaxed only where plaintiffs allege facts explaining why such

information is within the defendant's control, and plaintiffs have not done so in this case. See F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994).

The Court concludes that the Amended Complaint does not place defendant "on notice of the precise misconduct with which they are charged," and thus fails to satisfy the particularity requirement of Fed. R. Civ. P. 9(b). Seville, 742 F.2d at 791. Defendant's motion is accordingly granted pursuant to Fed. R. Civ. P. 9(b) as to those parts of Counts I and II of the Amended Complaint which address the legality and effectiveness of the use of the Policy to fund the § 412(i) plan. This dismissal is without prejudice to plaintiffs' right to file a second amended complaint consistent with this Memorandum as to those parts of Counts I and II on or before September 4, 2013 if warranted by the facts.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion is granted in part and denied in part. Those parts of Counts I and II of the Amended Complaint which address the legality and effectiveness of the use of the Policy to fund the § 412(i) plan are dismissed without prejudice to plaintiffs' right to file a second amended complaint consistent with this Memorandum as to those parts of the Amended Complaint on or before September 4, 2013 if warranted by the facts. Count III of the Amended Complaint is dismissed with prejudice. Those parts of Counts I and II which address the payment schedule for the Policy, and Counts IV and V remain in the case. An appropriate order follows.